CLOSED, DISCMAG, JURY, PATENT

# U.S. District Court [LIVE]     – 0 7 -CV 4 0 2
## Eastern District of TEXAS LIVE (Marshall)
## CIVIL DOCKET FOR CASE #: 2:06-cv-00369-TJW-CE

Rembrandt Technologies, LP. v. Time Warner Cable Inc.,
Assigned to: Judge T. John Ward
Referred to: Magistrate Judge Charles Everingham
Cause: 35:271 Patent Infringement

Date Filed: 09/13/2006
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

## Plaintiff

**Rembrandt Technologies, LP.**                  represented by **Max Lalon Tribble, Jr**
Susman Godfrey LLP
1000 Louisiana Street
Ste 5100
Houston, TX 77002-5096
713/651-9366
Fax: 17136546666
Email:
mtribble@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brooke Ashley-May Taylor**
Susman Godfrey, LLP - Seattle
1201 Third Avenue
Suite 3800
Seattle, WA 98101
206/516-3880
Fax: 206/516-3883
Email: btaylor@susmangodfrey.com

*ATTORNEY TO BE NOTICED*

**Edgar G Sargent**
Susman Godfrey, LLP - Seattle
1201 Third Avenue
Suite 3800
Seattle, WA 98101
206/516-3804
Fax: 206/516-3883
Email:

esargent@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

**Matthew R Berry**
Susman Godfrey, LLP - Seattle
1201 Third Avenue
Suite 3800
Seattle, WA 98101
206/373-7394
Fax: 206/516-3883
Email: mberry@susmangodfrey.com

*ATTORNEY TO BE NOTICED*

**Tibor L. Nagy**
Susman Godfrey - Houston
1000 Louisiana Street
Ste 5100
Houston, TX 77002-5096
713/653-7850
Fax: 713/654-6102
Email: tnagy@susmangodfrey.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Time Warner Cable Inc.,**              represented by **Allen Franklin Gardner**
Potter Minton PC
110 N College
Suite 500
PO Box 359
Tyler, TX 75710-0359
903/597-8311
Email:
allengardner@potterminton.com
*ATTORNEY TO BE NOTICED*

**Daniel Reisner**
Kaye Scholer - New York
425 Park Avenue
New York, NY 10022
212/836-8132
Fax: 212/836-6432
Email: dreisner@kayescholer.com

*ATTORNEY TO BE NOTICED*

**David S Benyacar**
Kaye Scholer - New York
425 Park Avenue
New York, NY 10022
212/836-8000
Fax: 212/836-8689
Email: dbenyacar@kayescholer.com

*ATTORNEY TO BE NOTICED*

**Diane DeVasto**
Potter Minton
110 N. College Street, Suite 500
Tyler, Tx 75702
US
903-597-8311
Fax: 903-593-0846
Email:
dianedevasto@potterminton.com
*ATTORNEY TO BE NOTICED*

**Michael Edwin Jones**
Potter Minton PC
110 N College
Suite 500
PO Box 359
Tyler, TX 75710-0359
903/597/8311
Fax: 9035930846
Email:
mikejones@potterminton.com
*ATTORNEY TO BE NOTICED*

**Movant**

**Coxcom, Inc.,**

**Counter Claimant**

**Time Warner Cable Inc.,**          represented by **Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
(See above for address)

.

*ATTORNEY TO BE NOTICED*

`V.

**Counter Defendant**
**Rembrandt Technologies, LP.**

**Counter Claimant**
**Time Warner Cable LLC**

represented by **Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**
**Time Warner Entertainment**
**Company LP**

represented by **Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**
**Time Warner Entertainment-**
**Advance/Newhouse Partnership**

represented by **Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner New York Cable**
**LLC**

represented by **Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner Cable Inc.,**

represented by **Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Rembrandt Technologies, LP.**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/13/2006 | 1 | ORIGINAL COMPLAINT WITH JURY TRIAL REQUESTED against Time Warner Cable Inc., (Filing fee $ 350.) , filed by Rembrandt Technologies, LP.. (Attachments: # 1 Exhibit A - E# 2 Civil Cover Sheet)(ch, ) (Entered: 09/13/2006) |
| 09/13/2006 | | Summons Issued as to Time Warner Cable Inc.,. (ch, ) (Entered: 09/13/2006) |
| 09/13/2006 | 2 | Form mailed to Commissioner of Patents and Trademarks. (ch, ) (Entered: 09/13/2006) |
| 09/13/2006 | | Filing fee: $ 350.00, receipt number 2-1-1857 (ch, ) (Entered: 09/14/2006) |
| 09/20/2006 | 3 | NOTICE of Attorney Appearance by Brooke Ashley-May Taylor on behalf of Rembrandt Technologies, LP. (Taylor, Brooke) (Entered: 09/20/2006) |

| 09/22/2006 | 4 | APPLICATION to Appear Pro Hac Vice by Attorney Edgar G Sargent for Rembrandt Technologies, LP.. (ch, ) (Entered: 09/25/2006) |
|---|---|---|
| 09/22/2006 | | Pro Hac Vice Filing fee paid by Sargent; Fee: $25, receipt number: 2-1-1903 (ch, ) (Entered: 09/25/2006) |
| 09/25/2006 | 5 | E-GOV SEALED SUMMONS Returned Executed by Rembrandt Technologies, LP.. Time Warner Cable Inc., served on 9/18/2006, answer due 10/10/2006. (ehs, ) (Entered: 09/26/2006) |
| 09/27/2006 | 6 | NOTICE of Attorney Appearance by Edgar G Sargent on behalf of Rembrandt Technologies, LP. (Sargent, Edgar) (Entered: 09/27/2006) |
| 09/29/2006 | 7 | MOTION for Extension of Time to File Answer re 1 Complaint *or Otherwise Respond (Unopposed)* by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(DeVasto, Diane) (Entered: 09/29/2006) |
| 10/04/2006 | 8 | ORDER granting 7 Motion for Extension of Time to Answer. Deadline extended to 11/9/06 . Signed by Judge T. John Ward on 10/3/06. (ehs, ) (Entered: 10/04/2006) |
| 10/04/2006 | | Answer Due Deadline Updated for Time Warner Cable Inc., to 11/9/2006. (ehs, ) (Entered: 10/04/2006) |
| 10/04/2006 | 9 | NOTICE of Attorney Appearance by Michael Edwin Jones on behalf of Time Warner Cable Inc., (Jones, Michael) (Entered: 10/04/2006) |
| 10/12/2006 | 10 | ***FILED IN ERROR. SEE CORRECTED DOCUMENT #11***<br><br>MOTION for Leave to Appear by Rembrandt Technologies, LP.. (Nagy, Tibor) Modified on 10/12/2006 (ch, ). (Entered: 10/12/2006) |
| 10/12/2006 | 11 | ***REPLACES DOCUMENT #10 WHICH WAS FILED IN ERROR***<br><br>NOTICE of Attorney Appearance by Tibor L. Nagy on behalf of Rembrandt Technologies, LP. (Nagy, Tibor) Modified on 10/12/2006 (ch, ). (Entered: 10/12/2006) |
| 11/09/2006 | 12 | ANSWER to Complaint, COUNTERCLAIM against Rembrandt Technologies, LP. by Time Warner Cable Inc.,.(DeVasto, Diane) (Entered: 11/09/2006) |
| 11/09/2006 | 13 | CORPORATE DISCLOSURE STATEMENT filed by Time Warner Cable Inc., identifying Adelphia Communications Corporation as Corporate Parent. (DeVasto, Diane) (Entered: 11/09/2006) |

| 11/10/2006 | 14 | NOTICE of Attorney Appearance by Matthew R. Berry on behalf of Rembrandt Technologies, LP. (Berry, Matthew) (Entered: 11/10/2006) |
|---|---|---|
| 11/21/2006 | 15 | *Plaintiff's Reply to Defendant's* ANSWER to Counterclaim by Rembrandt Technologies, LP..(Tribble, Max) (Entered: 11/21/2006) |
| 02/23/2007 | 16 | MOTION for Leave to File *Amended Complaint* by Rembrandt Technologies, LP.. (Taylor, Brooke) (Entered: 02/23/2007) |
| 02/23/2007 | 17 | Additional Attachments *Text of Proposed Order* to Main Document: 16 MOTION for Leave to File *Amended Complaint*.. (Taylor, Brooke) Modified on 2/26/2007 (mpv, ). Modified on 2/26/2007 (mpv, ). (Entered: 02/23/2007) |
| 02/23/2007 | 18 | Additional Attachments to Main Document: 16 MOTION for Leave to File *Amended Complaint; Text of Amended Complaint*.. (Taylor, Brooke) Modified on 2/26/2007 (mpv, ). (Entered: 02/23/2007) |
| 02/23/2007 | 19 | Additional Attachments to Main Document:16 MOTION for Leave to File *Amended Complaint; Exhibits A-E to Amended Complaint*.. (Attachments: # 1 Exhibit B to complaint# 2 Exhibit C to complaint# 3 Exhibit D to complaint# 4 Exhibit E to complaint)(Taylor, Brooke) Modified on 2/26/2007 (mpv, ). (Entered: 02/23/2007) |
| 02/23/2007 | 20 | Additional Attachments to Main Document: 16 MOTION for Leave to File *Amended Complaint; Declaration of Brooke Taylor w/Exhibits 1-4*.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4)(Taylor, Brooke) Modified on 2/26/2007 (mpv, ). (Entered: 02/23/2007) |
| 03/08/2007 | 21 | NOTICE of Hearing: Scheduling Conference set for 4/3/2007 at 2:30 PM in Ctrm 106 (Marshall) before Judge T. John Ward. (shd, ) (Entered: 03/08/2007) |
| 03/09/2007 | 22 | NOTICE by Coxcom, Inc., *of Filing Motion for Transfer and Consolidation of Rembrandt Technologies, LP Patent Litigation Pursuant to 28 U.S.C. 1407* (Attachments: # 1 MDL Motion for Transfer and Consolidation# 2 Motion Ex.A# 3 Motion Ex. B# 4 MDL Memorandum# 5 MDL Exhibit List# 6 MDL Notice of Appearance# 7 MDL Corporate Disclosure# 8 MDL Certificate of Service)(Stockwell, Mitchell) (Entered: 03/09/2007) |
| 03/09/2007 | 23 | Additional Attachments to Main Document: 22 Notice (Other), Notice (Other).. (Attachments: # 1 MDL Ex. 1# 2 MDL Ex. 2# 3 MDL Ex. 3# 4 MDL Ex. 4# 5 MDL Ex. 5# 6 MDL Ex. 6# 7 MDL Ex. 7# 8 MDL Ex. 8# 9 MDL Ex. 9# 10 MDL Ex. 10# 11 MDL Ex. 10# 12 MDL Ex. 12# 13 MDL Ex. 13# 14 MDL Ex. 14# 15 MDL Ex. 15# 16 MDL Ex. 16# 17 MDL Ex. 17# 18 MDL Ex. 18# 19 |

| | | |
|---|---|---|
| · | | MDL Ex. 19# 20 MDL Ex. 20# 21 MDL Ex. 21# 22 MDL Ex. 22# 23 MDL Ex. 23# 24 MDL Ex. 24# 25 MDL Ex. 25# 26 MDL Ex. 26# 27 MDL Ex. 27# 28 MDL Ex. 28# 29 MDL Ex. 29# 30 # 31 MDL Ex. 31# 32 MDL Ex. 32# 33 MDL Ex. 33# 34 MDL Ex. 34# 35 MDL Ex. 35# 36 MDL Ex. 36# 37 MDL Ex. 37# 38 MDL Ex. 38# 39 MDL Ex. 39# 40 MDL Ex. 40# 41 MDL Ex. 41# 42 MDL Ex. 42# 43 MDL Ex. 43)(Stockwell, Mitchell) (Entered: 03/09/2007) |
| 03/14/2007 | 24 | NOTICE of scheduling conference, proposed deadlines for docket control order and discovery order. Scheduling Conference set for 4/3/2007 02:30 PM before Judge T. John Ward in Marshall, Tx (djh, ) (Entered: 03/14/2007) |
| 03/14/2007 | 25 | NOTICE by Time Warner Cable Inc., re 16 MOTION for Leave to File *Amended Complaint (Non-Opposition)* (DeVasto, Diane) (Entered: 03/14/2007) |
| 03/29/2007 | 26 | NOTICE by Time Warner Cable Inc., *of Developments in Related Cases* (Attachments: # 1 Order Staying Civil Actions)(Jones, Michael) (Entered: 03/29/2007) |
| 03/30/2007 | 27 | NOTICE by Rembrandt Technologies, LP., Time Warner Cable Inc., *Joint Notice of Conference Regarding Proposed Discovery Order and Docket Control Order* (Attachments: # 1 Discovery Order and Docket Control Order)(DeVasto, Diane) (Entered: 03/30/2007) |
| 04/02/2007 | 28 | ORDER REFERRING CASE to Magistrate Judge Charles Everingham to conduct pre-trial proceedings pursuant to 28 USC 636. Signed by Judge T. John Ward on 4/2/07. (djh, ) (Entered: 04/03/2007) |
| 04/05/2007 | 29 | NOTICE by Rembrandt Technologies, LP. re 23 Additional Attachments to Main Document,,,, 22 Notice (Other), Notice (Other) *Notice of Filing Opposition to CoxComs Motion for Transfer and Consolidation* (Attachments: # 1 Exhibit Rembrants Brief in Opposition to CoxComs Motion for Transfer and Consolidation# 2 Exhibit Exhibit List# 3 Exhibit Opposition Brief Exh 1# 4 Exhibit Opposition Brief Exh 2# 5 Exhibit Opposition Brief Exh 3# 6 Exhibit Opposition Brief Exh 4# 7 Exhibit Opposition Brief Exh 5# 8 Exhibit Opposition Brief Exh 6# 9 Exhibit Opposition Brief Exh 7# 10 Exhibit Opposition Brief Exh 8# 11 Exhibit Opposition Brief Exh 9# 12 Exhibit Opposition Brief Exh 10# 13 Exhibit Opposition Brief Exh 11# 14 Exhibit Opposition Brief Exh 12# 15 Exhibit Opposition Brief Exh 13# 16 Exhibit Response to CoxComs Motion for Transfer and Consolidation# 17 Exhibit Reasons Why Oral Argument Should Be Heard# 18 Exhibit Proof of Service)(Taylor, Brooke) (Entered: 04/05/2007) |
| | | |

| 04/10/2007 | 30 | NOTICE of Attorney Appearance by Allen Franklin Gardner on behalf of Time Warner Cable Inc., (Gardner, Allen) (Entered: 04/10/2007) |
|---|---|---|
| 04/18/2007 | 31 | NOTICE by Time Warner Cable Inc.,, Coxcom, Inc., *Notice of Development* (Attachments: # 1 Notice of Development)(Gardner, Allen) (Entered: 04/18/2007) |
| 04/19/2007 | 32 | ORDER - REGARDING THE PROTECTIVE ORDER AND DOCUMENT PRODUCTION. Signed by Judge Charles Everingham on 4/19/07. (ch, ) (Entered: 04/19/2007) |
| 04/19/2007 | 33 | DOCKET CONTROL ORDER Respond to Amended Pleadings 11/30/07. Amended Pleadings due by 11/16/2007. Discovery due by 5/14/2008. Joinder of Parties due by 5/3/2007. Claims Construction Hearing set for 2/13/2008 - 2/14/08 9:00 AM before Judge T. John Ward. Motions in limine due by 7/21/2008. Proposed Pretrial Order due by 7/21/2008. Jury Selection set for 8/4/2008 9:00AM before Judge T. John Ward. Pretrial Conference set for 7/24/2008 9:30 AM before Judge T. John Ward. Privilege Logs to be exchanged by parties 6/4/07. All other deadlines are set forth herein. Signed by Judge Charles Everingham on 4/19/07. (ch, ) (Entered: 04/19/2007) |
| 04/24/2007 | 34 | NOTICE by Rembrandt Technologies, LP. *Of Proposed Protective Order* (Attachments: # 1 Text of Proposed Order Protective Order) (Taylor, Brooke) CORRECTED PROPOSED PROTECTIVE ORDER added on 4/25/2007 (mpv, ). Modified on 4/25/2007 (mpv, ). (Entered: 04/24/2007) |
| 04/24/2007 | 35 | NOTICE by Rembrandt Technologies, LP. *Re Electronic Production* (Taylor, Brooke) (Entered: 04/24/2007) |
| 04/25/2007 |  | NOTICE re 34 Notice (Other) CORRECTED PROPOSED PROTECTIVE ORDER NOW ATTACHED BY CLERK (mpv, ) (Entered: 04/25/2007) |
| 04/25/2007 | 36 | ORDER granting 16 Motion for Leave to Amend to add additional entities to the instant action. Signed by Judge Charles Everingham on 4/25/07. (ch, ) (Entered: 04/25/2007) |
| 04/26/2007 | 37 | AMENDED COMPLAINT *First Amended Complaint* against Time Warner Cable Inc.,, filed by Rembrandt Technologies, LP.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E)(Taylor, Brooke) (Entered: 04/26/2007) |
| 04/30/2007 | 38 | Minute Entry for proceedings held before Judge Charles Everingham : Scheduling Conference held on 4/30/2007. (Court Reporter Debbie Latham.)(delat, ) (Entered: 04/30/2007) |

| 05/03/2007 | | TRANSCRIPT of Proceedings held on 4/3/07 before Judge Chad Everingham. Court Reporter: Transcriber/Susan Simmons. (lss) (Entered: 05/03/2007) |
|---|---|---|
| 05/03/2007 | 40 | NOTICE by Time Warner Cable Inc., *of Initial Disclosures* (Gardner, Allen) (Entered: 05/03/2007) |
| 05/04/2007 | 41 | PROTECTIVE ORDER. Signed by Judge Charles Everingham on 5/4/07. (ehs, ) (Entered: 05/04/2007) |
| 05/07/2007 | 42 | NOTICE of Disclosure by Rembrandt Technologies, LP. (Berry, Matthew) (Entered: 05/07/2007) |
| 05/11/2007 | 43 | **PLEASE IGNORE - ATTY WILL REFILE*** Consent MOTION for Extension of Time to File Answer re 37 Amended Complaint by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order) (Gardner, Allen) Modified on 5/11/2007 (rml, ). (Entered: 05/11/2007) |
| 05/11/2007 | | ***FILED IN ERROR. Document # 43, Consent Motion. PLEASE IGNORE.***<br><br>(rml, ) (Entered: 05/11/2007) |
| 05/11/2007 | 44 | Consent MOTION for Extension of Time to File Answer re 37 Amended Complaint *(Replaces Dkt. 43)* by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(Gardner, Allen) (Entered: 05/11/2007) |
| 05/15/2007 | 45 | ORDER granting 44 Motion for Extension of Time to Answer. Answer deadline extended to 5/16/07 for deft Time Warner Cable Inc . Signed by Judge Charles Everingham on 5/15/07. (ehs, ) (Entered: 05/15/2007) |
| 05/15/2007 | | Answer Due Deadline Updated for Time Warner Cable Inc., to 5/16/2007; Time Warner Cable Inc., to 5/16/2007. (ehs, ) (Entered: 05/15/2007) |
| 05/16/2007 | 46 | *TWC's* ANSWER to Amended Complaint *and*, COUNTERCLAIM against Rembrandt Technologies, LP. by Time Warner Cable LLC, Time Warner Entertainment Company LP, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc.,.(Gardner, Allen) (Entered: 05/16/2007) |
| 05/16/2007 | 47 | CORPORATE DISCLOSURE STATEMENT filed by Time Warner Cable LLC, Time Warner Entertainment Company LP, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc., identifying Time Warner |

| | | |
|---|---|---|
| • | | Cable Inc. and Time Warner Inc. as Corporate Parent. (Gardner, Allen) (Entered: 05/16/2007) |
| 05/23/2007 | 48 | *Plaintiffs Reply to Counterclaims in TWC's Answer To Rembrandt's First Amended Complaint* ANSWER to Counterclaim by Rembrandt Technologies, LP..(Tribble, Max) (Entered: 05/23/2007) |
| 05/23/2007 | 49 | NOTICE of Disclosure by Rembrandt Technologies, LP. (Taylor, Brooke) (Entered: 05/23/2007) |
| 06/04/2007 | 50 | Joint MOTION to Amend/Correct *Docket Control Order* by Rembrandt Technologies, LP.. (Attachments: # 1 Text of Proposed Order Order Granting Motion to Amend)(Taylor, Brooke) (Entered: 06/04/2007) |
| 06/06/2007 | 51 | ORDER granting 50 Motion to Amend/Correct. Docket Control Order is amended to move date to exchange privilege logs to 7/10/07. Signed by Judge Charles Everingham on 6/5/07. (ch, ) (Entered: 06/06/2007) |
| 06/12/2007 | 52 | NOTICE of Disclosure by Rembrandt Technologies, LP. *Regarding Compliance with Paragraph 3(b) of the Discovery Order* (Berry, Matthew) (Entered: 06/12/2007) |
| 06/14/2007 | 53 | NOTICE of Disclosure by Time Warner Cable LLC, Time Warner Entertainment Company LP, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc., (Attachments: # 1 Exhibit A) (Gardner, Allen) (Entered: 06/14/2007) |
| 06/15/2007 | 54 | APPLICATION to Appear Pro Hac Vice by Attorney Daniel Reisner for Time Warner Cable LLC and Time Warner Entertainment Company LP.(FEE PAID) 6-1-10082 (ehs, ) (Entered: 06/15/2007) |
| 06/19/2007 | 55 | APPLICATION to Appear Pro Hac Vice by Attorney David S Benyacar for Time Warner Cable LLC and Time Warner Entertainment Company LP.(Fee Paid) 6-1-0010111 (ch, ) (Entered: 06/19/2007) |
| 06/21/2007 | 56 | NOTICE by Time Warner Cable Inc., *of Multi-District Litigation Developments Pursuant to Local Rule CV-42* (Attachments: # 1 Exhibit A)(Gardner, Allen) (Entered: 06/21/2007) |
| 06/25/2007 | 57 | Interdistrict transfer to the District of Delaware, Wilmington, DE. Purusant to letter Elizabeth Dinan was notified. Certified copy of Docket Sheet, Complaint, Transfer Order and letter were mailed to the Federal Blding, Lockbox 18, 844 N. King Street, Wilmington, DE (ch, ) Additional attachment(s) added on 6/28/2007 (ch, ). Modified on 6/28/2007 (ch, ). (Entered: 06/27/2007) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CASE NO. 2:06-cv-369 [TJW] |
| | § | JURY DEMANDED |
| TIME WARNER CABLE INC. | § | |

## NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL FOR DEFENDANT TIME WARNER CABLE INC.

Defendant Time Warner Cable Inc. (hereinafter "TWC"), files this its Notice of Appearance of Additional Counsel, and hereby notifies the Court that Allen F. Gardner of the law firm Potter Minton, A Professional Corporation, 110 N. College, Suite 500, Tyler, Texas 75702, is appearing as additional counsel for TWC in the above-referenced matter. All pleadings, discovery, correspondence and other material should be served upon counsel at the address referenced above.

Respectfully submitted,

**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
(903) 597 8311
(903) 593 0846 (Facsimile)

By: ___*/s/ Allen F. Gardner*___
       Allen F. Gardner
       State Bar No. 24043679
       allengardner@potterminton.com

**ATTORNEYS FOR DEFENDANT
TIME WARNER CABLE INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 10, 2007. Any other counsel of record will be served by first class mail on this same date.

/s/Allen F. Gardner

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:05-CV-443-TJW |
| | ) | |
| COMCAST CORPORATION, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | | |
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-506-TJW |
| | ) | |
| COMCAST CORPORATION, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | | |
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-369-TJW |
| | ) | |
| TIME WARNER CABLE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| | | |
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-224-TJW |
| | ) | |
| TIME WARNER CABLE, INC. | ) | |

|                                         |     |                            |
|-----------------------------------------|-----|----------------------------|
|                                         | )   |                            |
| Defendant.                              | )   |                            |
| —————————————————————                   | )   |                            |
|                                         |     |                            |
| REMBRANDT TECHNOLOGIES, LP              | )   |                            |
|                                         | )   |                            |
|     Plaintiff,      | )   |                            |
|                                         | )   |                            |
| v.                                      | )   | Case No. 2:06-CV-507-TJW   |
|                                         | )   |                            |
| CHARTER COMMUNICATIONS, INC.,           | )   |                            |
| ET AL.                                  | )   |                            |
|                                         | )   |                            |
|     Defendants.     | )   |                            |
| —————————————————————                   | )   |                            |
|                                         |     |                            |
| REMBRANDT TECHNOLOGIES, LP              | )   |                            |
|                                         | )   |                            |
|     Plaintiff,      | )   |                            |
|                                         | )   |                            |
| v.                                      | )   | Case No. 2:06-CV-223-TJW   |
|                                         | )   |                            |
| CHARTER COMMUNICATIONS, INC.,           | )   |                            |
| ET AL.                                  | )   |                            |
|                                         | )   |                            |
|     Defendants.     | )   |                            |
| —————————————————————                   | )   |                            |

## <u>NOTICE OF DEVELOPMENT</u>

Defendants Charter Communications, Inc., Charter Communications Operating, LLC.,

CoxCom, Inc., and Time Warner Cable, Inc. provide this notice of development.  Attached is a

Notice of Hearing issued by the Judicial Panel on Multidistrict Litigation, calendaring for

hearing on May 31, 2007, the motion of CoxCom, Inc. for transfer and consolidation of the

Rembrandt Technologies, LP, patent litigation pursuant to 28 U.S.C. §1407.

Dated: April 18th, 2007.

Respectfully Submitted

*/s/ Allen F. Gardner*
Michael E. Jones
Texas State Bar No. 10929400
mikejones@potterminton.com
Diane V. DeVasto
Texas State Bar No. 05784100
dianedevasto@potterminton.com
Allen F. Gardner
Texas State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Telephone:    (903) 597-8311
Facsimile:    (903) 593-0846

**ATTORNEYS FOR CHARTER
COMMUNICATIONS, INC., LLP,
CHARTER COMMUNICATIONS
OPERATING, LLC, COXCOM, INC.,
AND TIME WARNER CABLE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 18th day of April, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by first class mail on this same date.

*/s/ Allen F. Gardner*
Allen F. Gardner

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

CHAIRMAN:
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

MEMBERS:
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

DIRECT REPLY TO:

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:       [202] 502-2888

http://www.jpml.uscourts.gov

April 12, 2007

## NOTICE OF HEARING SESSION

Dear Counsel:

Pursuant to the order of the Judicial Panel on Multidistrict Litigation filed today, you are hereby notified that a hearing session has been scheduled to consider various matters pursuant to 28 U.S.C. § 1407.

DATE OF HEARING SESSION:          May 31, 2007

LOCATION OF HEARING SESSION:      Lloyd D. George United States Courthouse
                                  Courtroom 7C, 7th Floor
                                  333 Las Vegas Boulevard South
                                  Las Vegas, Nevada  89101

TIME OF HEARING SESSION: In those matters designated for oral argument, counsel presenting oral argument must be present at **8:30 a.m.** in order for the Panel to allocate the amount of time for oral argument. Oral argument will commence at **9:30 a.m.**

Please direct your attention to the enclosed Hearing Session Order and Schedule of Matters for Hearing Session for a listing of the matters scheduled for consideration at this hearing session.

- Section A of this Schedule lists the matters designated for oral argument.
- Section B of this Schedule lists the matters that the Panel has determined to consider **without oral argument,** pursuant to Rule 16.1(c), R.P.J.P.M.L., 199 F.R.D. 425, 439 (2001).

For those matters listed on Section A of the Schedule, the enclosed blue "Notice of Presentation or Waiver of Oral Argument" must be returned to this office no later than **May 14, 2007.** Note the procedures governing Panel oral argument which are outlined on the enclosed "Procedures for Oral Argument before the Judicial Panel on Multidistrict Litigation." These procedures are strictly adhered to and your cooperation is appreciated.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

c:  Clerk, U.S. District Court for the District of Nevada

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

APRIL 12, 2007

JEFFERY N. LÜTHI
CLERK OF THE PANEL

# *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN AND ANTHONY J. SCIRICA, JUDGES OF THE PANEL*

## HEARING SESSION ORDER

IT IS ORDERED that on May 31, 2007, a hearing session will be held in Las Vegas, Nevada, to consider the matters on the attached Schedule under 28 U.S.C. § 1407.

IT IS FURTHER ORDERED that at said hearing session the Panel may, on its own initiative, consider transfer of any or all of the actions in those matters to any district or districts.

IT IS FURTHER ORDERED that at said hearing session the matters listed on Section A of the attached Schedule shall be designated for oral argument.

IT IS FURTHER ORDERED that at said hearing session the matters listed on Section B of the attached Schedule shall be considered without oral argument, pursuant to Rule 16.1(c), R.P.J.P.M.L., 199 F.R.D. 425, 439 (2001). The Panel reserves the prerogative, on any basis including submissions of parties pursuant to Panel Rule 16.1(b), to issue a subsequent notice designating any of those matters for oral argument.

IT IS FURTHER ORDERED that the Clerk of the Judicial Panel on Multidistrict Litigation shall direct notice of this hearing session to counsel for all parties involved in the matters on the attached Schedule.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

SCHEDULE OF MATTERS FOR HEARING SESSION
May 31, 2007 -- Las Vegas, Nevada

### SECTION A
### MATTERS DESIGNATED FOR ORAL ARGUMENT

MDL-1835 -- In re Brian L. Roberts Litigation

Motion of plaintiff Brian L. Roberts for centralization of the following actions in the United States District Court for the Southern District of New York:

Southern District of New York

*Brian L. Roberts v. Sony Corp., et al.*, C.A. No. 1:06-6337

District of Utah

*Brian L. Roberts v. Sony, et al.*, C.A. No. 2:04-673

MDL-1836 -- In re Mirapex Products Liability Litigation

Motion of defendants Boehringer Ingelheim Pharmaceuticals, Inc., and Pfizer Inc. for centralization of the following actions in the United States District Court for the Southern District of New York or, in the alternative, the United States District Court for the District of Connecticut or other suitable United States district court:

Northern District of California

*Therese Bottiglieri v. Pfizer Inc., et al.*, C.A. No. 3:06-3248

District of Maryland

*William David Livingston, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, C.A. No. 1:06-1887

District of Minnesota

*Gary Selinsky, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, C.A. No. 0:06-873
*Robert M. Zwayer, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, C.A. No. 0:06-874

MDL-1836 (Continued)

District of Minnesota (Continued)

*Michael A. Dubaich, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-875
*Donald J. Nelsen v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-876
*Larry Webb, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-898
*Timothy Harms v. Boehringer Ingelheim Pharmaceuticals, Inc., et al., C.A. No. 0:06-899*
*Timothy L. Estep v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-900
*Mary Conway v. Boehringer Ingelheim Pharmaceuticals, Inc., et al., C.A. No. 0:06-901*
*Dennis M. Scharpen, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-1206
*Gary E. Charbonneau, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-1215
*Todd R. Cain v. Boehringer Ingelheim Pharmaceuticals, Inc., et al., C.A. No. 0:06-1582*
*Manuel A. Quintela, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-1675
*Thaddeus R. Fayard v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2144
*Hylton H. Dodd v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2145
*Michael W. Averitt, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2194
*William F. Courtney, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2546
*Richard I. Bloom, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2577
*Joyce A. Anderson v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2578
*Kathleen R. Frye, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-2662
*Cynthia Harris, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3009

Schedule of Matters for Hearing Session, Section A                    p. 3
Las Vegas, Nevada


MDL-1836 (Continued)


### District of Minnesota (Continued)

*Daniel M. Hayward, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3180
*Daniel F. Neal v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,* C.A. No. 0:06-3182
*Peggy J. Bronson v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3254
*Theresa R. Seaman, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3255
*Madeline J. Vingers v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3284
*Irene M. Conejo v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3519
*Melody S. Erickson v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3526
*Alan Kite, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3527
*George P. Wagner v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3537
*Gordon J. Haughey, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3539
*Stella C. Rush, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3544
*Carl M. Milam, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3778
*Floyd Wayne Kanuch v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-3839
*Rick James Berger v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-4358
*Mark Mayer v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,* C.A. No. 0:06-4366
*Resa King, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-4502
*George Konrad v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-4699
*Steven Purser, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
    C.A. No. 0:06-4783

MDL-1836 (Continued)

District of Minnesota (Continued)

*Barbara Goldman, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4784
*James Holmes, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4785
*Florene D. Saracco v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4827
*Greg Stutz v. Boehringer Ingelheim Pharmaceuticals, Inc., et al., C.A. No. 0:06-4828*
*Thomas M. Celorie v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4868
*Maryann J. Deleo, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4869
*William Chamberlain, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4870
*Ronald P. Markel, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4871
*Hilarie Pearce v. Boehringer Ingelheim Pharmaceuticals, Inc., et al., C.A. No. 0:06-4944*
*Linda Michels, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4945
*David Emery, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4946
*Richard Scott Brown v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4947
*William Gage, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4948
*Carolyn Paulette Shows, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-4949
*Michele C. Glancy, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:06-5123
*Tza Ping Aliya Lee, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 0:07-39

MDL-1836 (Continued)

### Western District of Missouri

*Wayne Jackson, et al. v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.,*
   C.A. No. 4:06-969

### Western District of Washington

*Matthew Andresen, et al. v. Pfizer Inc., et al.*, C.A. No. 2:06-1413

MDL-1837 -- In re BMW Subframe Marketing and Sales Practices Litigation

Motion of plaintiff Scott Halperin for centralization of the following actions in the United States District Court for the District of New Jersey:

### Central District of California

*Eric Bacca, et al. v. BMW of North America, LLC*, C.A. No. 2:06-6753

### Middle District of Florida

*Frances Perrone v. BMW of North America, LLC*, C.A. No. 8:06-2045

### Southern District of Mississippi

*Jaime Moore v. BMW of North America, LLC*, C.A. No. 4:06-139

### District of New Jersey

*Lyndsay Alpert, et al. v. BMW of North America, LLC*, C.A. No. 2:06-5198

MDL-1838 -- In re TJX Companies, Inc., Customer Data Security Breach Litigation

Motion of plaintiffs Julie Buckley, et al., for centralization of the following actions in the United States District Court for the District of Massachusetts:

### Northern District of Alabama

*Jo Wood, et al. v. TJX, Inc., et al.*, C.A. No. 2:07-147

### District of Massachusetts

*Paula G. Mace v. TJX Companies, Inc.*, C.A. No. 1:07-10162
*Amerifirst Bank v. TJX Companies, Inc., et al.*, C.A. No. 1:07-10169
*Julie Buckley, et al. v. TJX Companies, Inc.*, C.A. No. 1:07-10209
*Thomas J. Gaydos v. TJX Companies, Inc., et al.*, C.A. No. 1:07-10217

### District of Puerto Rico

*Patricia Miranda, et al. v. TJX, Inc., et al.*, C.A. No. 3:07-1075

MDL-1839 -- In re Pro Tem Partners, Inc., and Semico Research Corp. Contract Litigation

Motion of Pro Tem Partners, Inc., for centralization of the following actions in the United States District Court for the District of Massachusetts:

### District of Arizona

*Semico Research Corp. v. Jan-Charles Fine, et al.*, C.A. No. 2:06-2475

### District of Massachusetts

*Pro Tem Partners, Inc. v. Semico Research Corp.*, C.A. No. 1:05-11822

MDL-1840 -- In re Motor Fuel Temperature Sales Practices Litigation

Motion of defendants Exxon Mobil Corp.; Hess Corp.; and Motiva Enterprises LLC for centralization of the following actions in the United States District Court for the District of New Jersey:

### Northern District of California

*Mark Rushing, et al. v. Alon USA, Inc., et al.*, C.A. No. 3:06-7621

### District of Kansas

*Zachary Wilson, et al. v. Ampride, Inc., et al.*, C.A. No. 2:06-2582
*American Fiber & Cabling LLC., et al. v. BP Corp. North America, Inc., et al.*,
    C.A. No. 2:07-2053

### Western District of Kentucky

*Keen Exploration, LLC, et al. v. Amoco Oil Co., et al.*, C.A. No. 5:07-14

### Western District of Missouri

*Victor VanDyne v. Murphy Oil USA, Inc., et al.*, C.A. No. 2:06-4302
*Ditzfeld Transfer, Inc. v. Pilot Travel Centers, LLC., et al.*, C.A. No. 2:07-4025
*James Vanderbilt v. BP Corp. North America, Inc., et al.*, C.A. No. 4:06-1052
*Brent Donaldson, et al. v. BP Corp. North America, Inc., et al.*, C.A. No. 4:07-93

### District of New Jersey

*Richard Galauski, et al. v. Amerada Hess Corp., et al.*, C.A. No. 3:06-6005

### Western District of Oklahoma

*Craig Massey, et al. v. BP Corp. North America, Inc., et al.*, C.A. No. 5:07-102
*Cynthia J. Cary, et al. v. BP Corp. North America, Inc., et al.*, C.A. No. 5:07-155

### Western District of Tennessee

*Diane Foster, et al. v. BP North America Petroleum, Inc., et al.*, C.A. No. 2:07-2059

MDL-1841 -- In re Wells Fargo Loan Processor Overtime Pay Litigation

Motion of defendant Wells Fargo Home Mortgage for centralization of the following actions in the United States District Court for the District of Kansas:

### Northern District of California

*Mary Basore, et al. v. Wells Fargo Home Mortgage, et al.*, C.A. No. 3:07-461

### District of Kansas

*Trudy Bowne, et al. v. Wells Fargo Home Mortgage*, C.A. No. 2:06-2020

MDL-1842 -- In re Kugel Mesh Hernia Patch Products Liability Litigation

Motion of plaintiffs Sonia Montiel, et al., for centralization of certain of the following actions in the United States District Court for the District of Rhode Island and motion of plaintiffs Lilyan Kathleen Hall, et al., for centralization of the following actions in the United States District Court for the Northern District of Alabama:

### Northern District of Alabama

*Lilyan Kathleen Hall, et al. v. Davol, Inc., et al.*, C.A. No. 3:07-480

### Eastern District of Arkansas

*Carolene Jean Carter v. Davol, Inc., et al.*, C.A. No. 4:06-1012

### Western District of Arkansas

*Mary Jane Campbell v. Davol, Inc., et al.*, C.A. No. 5:06-5154

### Eastern District of California

*Daniel Poston, et al. v. Davol, Inc.*, C.A. No. 2:07-32

### Northern District of Florida

*Jane R. Wilson v. Davol, Inc., et al.*, C.A. No. 3:06-541

MDL-1842 (Continued)

### Central District of Illinois

*James Daniel Mathien v. Davol, Inc., et al.*, C.A. No. 2:07-2031

### Eastern District of Missouri

*Timothy J. Edgar v. Davol, Inc.*, C.A. No. 4:06-1471

### District of New Jersey

*Jenine Von Essen v. C.R. Bard, Inc., et al.*, C.A. No. 2:06-4786

### Eastern District of New York

*Thomas D. Hyland, et al. v. Davol, Inc., et al.*, C.A. No. 2:07-1054

### Southern District of New York

*Sophia Katechis, et al. v. Davol, Inc., et al.*, C.A. No. 1:07-2098

### Northern District of Ohio

*Richard H. Sayler, et al. v. Davol, Inc., et al.*, C.A. No. 1:07-765

### District of Rhode Island

*Sonia Montiel, et al. v. Davol, Inc., et al.*, C.A. No. 1:07-64

### Middle District of Tennessee

*George Andrew Luffman v. C.R. Bard, Inc., et al.*, C.A. No. 3:07-243

Schedule of Matters for Hearing Session, Section A                    p. 10
Las Vegas, Nevada


MDL-1843 -- In re Schering Marketing and Sales Practices Litigation

Motion of plaintiff United American Insurance Company for centralization of the
following actions in the United States District Court for the Eastern District of Pennsylvania:

District of New Jersey

*International Brotherhood of Teamsters Local No. 331 Health & Welfare Trust Fund v.
Schering-Plough Corp.*, C.A. No. 2:06-5774

Eastern District of Pennsylvania

*Blue Cross & Blue Shield of Alabama v. Schering-Plough Corp., et al.*,
C.A. No. 2:07-568
*United American Insurance Co. v. Schering-Plough Corp., et al.*, C.A. No. 2:07-702


MDL-1844 -- In re Air Crash Near Peixoto de Azeveda, Brazil, on September 29, 2006

Motion of plaintiff Zita Swensson de Mattos for centralization of the following actions in
a single United States district court:

Central District of California

*Maria Jose Miranda Bermudes Abreu, et al. v. ExcelAire Service, Inc., et al.*,
C.A. No. 2:07-1296

Middle District of Florida

*Suely de Castro Alves Miranda, etc. v. Joseph Lepore, et al.*, C.A. No. 6:07-283

Eastern District of Missouri

*Bianca Pi Hancock, etc. v. ExcelAire Services, Inc., et al.*, C.A. No. 4:07-372

Eastern District of New York

*Patricia Abrahim Barbosa Garcia, et al. v. ExcelAire Service, Inc., et al.*,
C.A. No. 1:06-5964
*Mario De Abreu Lleras, et al. v. ExcelAire Service, Inc., et al.*, C.A. No. 2:06-6083

MDL-1844 (Continued)


### Southern District of New York

*Zita Swensson de Mattos, etc. v. ExcelAire Services, Inc., et al.*, C.A. No. 1:07-948


## MDL-1845 -- In re ConAgra Peanut Butter Products Liability Litigation

Motion of plaintiffs Grady Ware, et al., for centralization of certain of the following actions in the United States District Court for the Northern District of Georgia; motion of plaintiffs Thomas B. Price, Annie Blackwell, and Jamie S. Jeffords for centralization of certain of the following actions in the United States District Court for the District of South Carolina; and motion of plaintiff Pamela Gateley, etc., for centralization of certain of the following actions in a single United States district court:

### Middle District of Florida

*Marion Caldarera v. ConAgra Foods, Inc., et al.*, C.A. No. 8:07-384

### Southern District of Florida

*Charles Stafford v. ConAgra Foods, Inc.*, C.A. No. 9:07-80178

### Middle District of Georgia

*Karen Klepsig, et al. v. ConAgra Foods, Inc.*, C.A. No. 1:07-37
*Geoffrey Midler v. ConAgra Foods, Inc.*, C.A. No. 1:07-42

### Northern District of Georgia

*Anne Cease, et al. v. ConAgra Foods, Inc.*, C.A. No. 1:07-425
*John Harper v. ConAgra Foods, Inc.*, C.A. No. 1:07-538
*Grady Ware, et al. v. ConAgra Foods, Inc.*, C.A. No. 4:07-40

### Northern District of Mississippi

*Pamela Gateley, etc. v. ConAgra Foods, Inc.*, C.A. No. 2:07-35

MDL-1845 (Continued)

### Western District of Missouri

*Brian Cox, et al. v. ConAgra Foods, Inc.*, C.A. No. 5:07-6027

### Western District of New York

*Mark Avalone, et al. v. ConAgra Foods, Inc.*, C.A. No. 6:07-6084

### Eastern District of Oklahoma

*Irene Clandord v. ConAgra Foods, Inc.*, C.A. No. 6:07-56

### Eastern District of Pennsylvania

*Lucille A. Knight v. ConAgra Foods, Inc.*, C.A. No. 2:07-818

### Middle District of Pennsylvania

*Kathleen Nieves, et al. v. ConAgra Foods, Inc.*, C.A. No. 3:07-327

### District of South Carolina

*Annie Blackwell v. ConAgra Foods, Inc.*, C.A. No. 0:07-529
*Thomas B. Price v. ConAgra Foods, Inc.*, C.A. No. 3:07-536
*Jerry Shawn Medford v. ConAgra Foods, Inc.*, C.A. No. 3:07-611
*Jamie S. Jeffords v. ConAgra Foods, Inc.*, C.A. No. 4:07-530
*Jennifer Ann Hoey, et al. v. ConAgra Foods, Inc.*, C.A. No. 7:07-544

### Eastern District of Tennessee

*Cynthia Woodlee, et al. v. ConAgra Foods, Inc.*, C.A. No. 4:07-15

### Western District of Washington

*James Winston Daniels, II, et al. v. ConAgra, Inc.*, C.A. No. 2:07-259

## MDL-1846 -- In re Trade Partners, Inc., Investors Litigation

Motion of defendants Macatawa Bank Corp. and Macatawa Bank for centralization of the following actions in the United States District Court for the Western District of Michigan or, in the alternative, the United States District Court for the Western District of Oklahoma:

### Central District of California

*James Lee, et al. v. Macatawa Bank Corp., et al.*, C.A. No. 2:06-8009

### Western District of Michigan

*Forrest W. Jenkins, et al. v. Macatawa Bank Corp., et al.*, C.A. No. 1:03-321

### Western District of Oklahoma

*Steven M. Adamson, et al. v. Macatawa Bank Corp., et al.*, C.A. No. 5:06-1267
*Eddie Elkins, et al. v. Macatawa Bank Corp.*, C.A. No. 5:07-109

### Northern District of Texas

*Frank V. Bailey, et al. v. Macatawa Bank Corp.*, C.A. No. 3:06-2193

## MDL-1847 -- In re Tayssoun Transportation, Inc., and Dallas & Mavis Specialized Carrier Co., LLC, Contract Litigation

Motion of plaintiff Tayssoun Transportation, Inc., for centralization of the following actions in the United States District Court for the Southern District of Texas:

### Northern District of Texas

*Dallas & Mavis Specialized Carrier Co., LLC v. Pacific Motor Transport Co., et al.*, C.A. No. 3:06-1922

### Southern District of Texas

*Tayssoun Transportation, Inc. v. Dallas & Mavis Specialized Carrier Co., LLC*, C.A. No. 4:06-3463

MDL-1848 -- In re Rembrandt Technologies, LP, Patent Litigation

Motion of defendant CoxCom, Inc., for centralization of the following actions in the United States District Court for the District of Delaware:

### District of Delaware

*Rembrandt Technologies, LP v. Cablevision Systems Corp., et al.*, C.A. No. 1:06-635
*Coxcom, Inc. v. Rembrandt Technologies, LP*, C.A. No. 1:06-721
*Rembrandt Technologies, LP v. CBS Corp.*, C.A. No. 1:06-727
*Rembrandt Technologies, LP v. NBC Universal, Inc.*, C.A. No. 1:06-729
*Rembrandt Technologies, LP v. ABC, Inc.*, C.A. No. 1:06-730
*Rembrandt Technologies, LP v. Fox Entertainment Group, Inc., et al.*, C.A. No. 1:06-731

### Southern District of New York

*Rembrandt Technologies, LP v. Adelphia Communications Corp., et al.*,
  Bky. Advy. No. 1:06-1739
*Rembrandt Technologies, LP v. Adelphia Communications Corp.*, C.A. No. 1:07-214

### Eastern District of Texas

*Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443
*Rembrandt Technologies, LP v. Sharp Corp., et al.*, C.A. No. 2:06-47
*Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, C.A. No. 2:06-223
*Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-224
*Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-369
*Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:06-506
*Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, C.A. No. 2:06-507

MDL-1849 -- In re C.H. Robinson Worldwide, Inc., Overtime Pay Litigation

Motion of plaintiffs for centralization of the following actions in the United States District Court for the Northern District of Illinois or, in the alternative, the United States District Court for the District of Minnesota:

### Northern District of Alabama

*Donna Eddy, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 2:06-4926

Schedule of Matters for Hearing Session, Section A                    p. 15
Las Vegas, Nevada


MDL-1849 (Continued)


### Central District of California

*Mimi Vuong v. C.H. Robinson Worldwide, Inc.*, C.A. No. 2:07-1428
*Nancy Austin, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 8:07-301

### Eastern District of California

*Gladys Garcia, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:07-157

### Northern District of California

*Kimberly Elam, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 4:07-475

### Northern District of Georgia

*Terri Kuvach, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:07-328

### Northern District of Illinois

*Evelyn Sparks, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6461
*Cheryl D. Braithwaite, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6462
*Lynn A. Amorose, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6463
*Angela L. Jacobson v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6465
*Scott D. Hyder, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6503
*Anne K. Ciaglia, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6507
*Joann M. McGill, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6510
*Richard Cahn, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6512
*Jason K. Bergquist, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6515
*Craig Bowen, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6516
*Christopher L. Sims, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6520
*Shannon D. Anderson, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6527
*Nora Hageman, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6530
*Brenda Mitchell, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6538
*Lynette DiNova, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6545
*Joanna Elke, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6552

MDL-1849 (Continued)

### Northern District of Illinois (Continued)

*Roy Rogenic, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6553
*LaToya R. McCants, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6556
*Michael Blackburn v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6563
*Sharon K. Dodson-McDonald, et al. v. C.H. Robinson Worldwide, Inc.*,
    C.A. No. 1:06-6564
*Patricia A. Parrish, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6568
*Brendan M. Clarke, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6581
*Amber Vandersommen, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6582
*Leslie Nemelka, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6623
*Kari S. Johnson, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6629
*Ariel B. Crotty, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6630
*Wendy L. Ferger, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6632
*Laura J. Jeneault, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6634
*Heidi Michelle Poepsel v. C.H. Robinson Worldwide, Inc.*, C.A. No. 1:06-6664

### Southern District of Indiana

*Catherine A. Wilcox v. C.H. Robinson Worldwide, Inc.*, C.A. No. 3:06-197

### District of Kansas

*Kimberly K. Bethel, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 2:07-2129
*Lisa M. Quigley, et al v. C.H. Robinson Worldwide, Inc.*, C.A. No. 6:07-1063

### Eastern District of Louisiana

*Morgan J. Wood, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 2:07-1269

### Eastern District of Michigan

*Carla M. Strugala v. C.H. Robinson Worldwide, Inc.*, C.A. No. 5:07-10767

Schedule of Matters for Hearing Session, Section A          p. 17
Las Vegas, Nevada


MDL-1849 (Continued)


### District of Minnesota

*Jamie L. Benner, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4640
*Justin Accola, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4643
*Jeffrey Cichosz, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4644
*William F. Holmberg, Jr. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4645
*Elizabeth Marianne Buck, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4646
*Penny M. Cantazaro, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4647
*Kathy Cota, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4648
*Jill K. East, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4649
*Kathleen L. Hambleton, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4650
*Elizabeth Hopp v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4651
*Joann F. Larson v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4652
*Kelley S. Lyons, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4653
*Kimberly M. Martineau, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4654
*Sandra Steinmetz, et al. v.C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4655
*John Gino Giovannoni v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:06-4960
*Sally J. Dowden, et al., C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-89
*Amelia M. Alfaro, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-90
*Jennifer L. Alfano, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-251
*Claudia Alicia Martinez, et al. v.C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-542
*Jennifer N. Mcinnis v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-544
*Beth Shaw, et al v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-595
*Shannon Davis v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-1119
*Esther Nevarez, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 0:07-1563


### Eastern District of Missouri

*Heather Lee Markle, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 4:07-428


### Northern District of Ohio

*Julie Gallagher, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 5:07-846

Schedule of Matters for Hearing Session, Section A          p. 18
Las Vegas, Nevada


MDL-1849 (Continued)


### Western District of Oklahoma

*Timothy J. Bumgarner, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 5:07-278

### District of Oregon

*Allison M. Cassie, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 3:07-333

### District of South Carolina

*Rodney Brewer, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 3:06-3595

### District of South Dakota

*Angela K. Smoot v. C.H. Robinson Worldwide, Inc.*, C.A. No. 4:07-4038

### Eastern District of Tennessee

*Carolyn Baker Hall, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 3:07-46

### Eastern District of Texas

*Aaron Smith, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 4:07-1

### Northern District of Texas

*Stephanie Smith, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 3:07-409

### Western District of Texas

*Adelita Dickson, et al. v. C.H. Robinson Worldwide, Inc.*, C.A. No. 5:07-186

### Eastern District of Wisconsin

*Kelly K. Hoell v. C.H. Robinson Worldwide, Inc.*, C.A. No. 2:07-267

## MDL-1850 -- In re Pet Food Products Liability Litigation

Motion of plaintiff Shirley Sexton for centralization of certain of the following actions in the United States District Court for the Central District of California; motion of plaintiff Christina Troiano for centralization of certain of the following actions in the United States District Court for the Southern District of Florida; and motion of plaintiffs Tom Whaley; Stacey Heller, et al.; Audrey Kornelius, et al.; Suzanne E. Johnson, et al.; and Michele Suggett, et al., for centralization of the following actions in the United States District Court for the Western District of Washington:

### Western District of Arkansas

*Charles Ray Sims, et al. v. Menu Foods Income Fund, et al.*, C.A. No. 5:07-5053
*Richard Scott Widen, et al. v. Menu Foods, Inc., et al.*, C.A. No. 5:07-5055

### Central District of California

*Shirley Sexton v. Menu Foods Income Fund, et al.*, C.A. No. 2:07-1958

### District of Connecticut

*Lauri A. Osborne v. Menu Foods, Inc.*, C.A. No. 3:07-469

### Southern District of Florida

*Christina Troiano v. Menu Foods, Inc., et al.*, C.A. No. 0:07-60428

### Northern District of Illinois

*Dawn Majerczyk v. Menu Foods, Inc.*, C.A. No. 1:07-1543

### District of New Jersey

*Jared Workman, et al. v. Menu Foods Ltd., et al.*, C.A. No. 1:07-1338

### Eastern District of Tennessee

*Lizajean Holt v. Menu Foods, Inc.*, C.A. No. 3:07-94

Schedule of Matters for Hearing Session, Section A                                p. 20
Las Vegas, Nevada

MDL-1850 (Continued)

### Western District of Washington

*Tom Whaley v. Menu Foods, Inc., et al.*, C.A. No. 2:07-411
*Stacey Heller, et al. v. Menu Foods*, C.A. No. 2:07-453
*Audrey Kornelius, et al. v. Menu Foods*, C.A. No. 2:07-454
*Suzanne E. Johnson, et al. v. Menu Foods*, C.A. No. 2:07-455
*Michele Suggett, et al. v. Menu Foods, et al.*, C.A. No. 2:07-457

## SECTION B
## MATTERS DESIGNATED FOR CONSIDERATION WITHOUT ORAL ARGUMENT

MDL-875 -- In re Asbestos Products Liability Litigation (No. VI)

Oppositions of plaintiffs and defendant Rowan Companies, Inc., to transfer of their respective following actions to the United States District Court for the Eastern District of Pennsylvania:

Western District of Arkansas

*Eddie Joe Wooten, et al. v. CertainTeed Corp., et al.*, C.A. No. 2:07-2004

Northern District of California

*Carla Groce, et al. v. Todd Shipyards Corp., et al.*, C.A. No. 3:07-241
*Geraldine Burton, et al. v. A.W. Chesterton Co., et al.*, C.A. No. 3:07-702

Southern District of Illinois

*Jack Franklin v. CSX Transportation, Inc.*, C.A. No. 3:06-1058

Eastern District of Louisiana

*Melvin Raymond v. Borden, Inc., et al.*, C.A. No. 2:06-11140

Middle District of Louisiana

*Teressa Bell, etc. v. Rowan Companies, Inc., et al.*, C.A. No. 3:06-785
*Aurelie Breau Waguespack, et al. v. Anco Insulations, Inc., et al.*, C.A. No. 3:06-965

Western District of Louisiana

*Daniel Jarrell v. Franks Petroleum, Inc., et al.*, C.A. No. 6:06-2190

MDL-875 (Continued)

### District of Maryland

*Linda Hudson, et al. v. Rapid-American Corp., et al.*, C.A. No. 1:06-3319

### Southern District of New York

*Talbot P. Frawley, et al. v. General Electric Co., et al.*, C.A. No. 1:06-15395

MDL-1335 -- In re Tyco International, Ltd., Securities, Derivative & "ERISA" Litigation

Opposition of plaintiffs Scott Davis, et al., to transfer of the following action to the United States District Court for the District of New Hampshire:

### Northern District of Illinois

*Scott Davis, et al. v. Dennis Kozlowski, et al.*, C.A. No. 1:07-227

MDL-1373 -- In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation

Opposition of plaintiff Leonie Moise, etc., to transfer of the following action to the United States District Court for the Southern District of Indiana:

### Middle District of Florida

*Leonie Moise, etc. v. Bridgestone/Firestone North American Tire, LLC,*
   C.A. No. 2:06-675

MDL-1373 (Continued)

Oppositions of defendants Bridgestone Firestone North American Tire, LLC and Ford Motor Company to remand, under 28 U.S.C. § 1407(a), of the following action to the United States District Court for the Western District of Arkansas:

### Southern District of Indiana

*Susan Janssen, etc. v. Bridgestone/Firestone North American Tire, LLC, et al.*, C.A. No. 1:04-5811 (W.D. Arkansas, C.A. No. 2:04-2164)

### MDL-1409 -- In re Currency Conversion Fee Antitrust Litigation

Opposition of plaintiff Kyle Sandera to transfer of the following action to the United States District Court for the Southern District of New York:

### Northern District of California

*Kyle Sandera v. Bank of America Corp., et al.*, C.A. No. 3:07-34

### MDL-1456 -- In re Pharmaceutical Industry Average Wholesale Price Litigation

Opposition of plaintiff The State of Idaho to transfer of the following action to the United States District Court for the District of Massachusetts:

### District of Idaho

*State of Idaho v. Abbott Laboratories*, C.A. No. 1:07-93

MDL-1566 -- In re Western States Wholesale Natural Gas Antitrust Litigation

Motion of defendant Reliant Energy Services, Inc., to transfer the following action to the United States District Court for the District of Nevada:

Western District of Wisconsin

*Arandell Corp., et al. v. Xcel Energy, Inc., et al.*, C.A. No. 3:07-76

MDL-1596 -- In re Zyprexa Products Liability Litigation

Motions of defendant Eli Lilly & Company to transfer the following actions to the United States District Court for the Eastern District of New York:

District of South Carolina

*Samuel Davis v. Eli Lilly & Co.*, C.A. No. 3:06-2312
*Kimberly J. Johnson, et al. v. Ricardo Jose Fermo, M.D., et al.*, C.A. No. 4:06-2994

MDL-1604 -- In re Ocwen Federal Bank FSB Mortgage Servicing Litigation

Oppositions of plaintiffs Mary Brown; Linda Fleshman; David Waters, Sr., et al.; Donald Moden, et al.; Annette Miranda; and Stanley C. Beardslee, et al., to transfer of their respective following actions to the United States District Court for the Northern District of Illinois:

Eastern District of Texas

*Mary Brown v. Ocwen Loan Servicing, LLC, et al.*, C.A. No. 1:07-92

Northern District of Texas

*Linda Fleshman v. Ocwen Loan Servicing, LLC, et al.*, C.A. No. 4:07-108

Western District of Texas

*David Waters, Sr., et al. v. Ocwen Financial Corp., et al.*, C.A. No. 1:07-61
*Donald Moden, et al. v. Ocwen Financial Corp., et al.*, C.A. No. 1:07-62

Schedule of Matters for Hearing Session, Section B                    p. 25
Las Vegas, Nevada


MDL-1604 (Continued)


### Western District of Texas (Continued)

*Annette Miranda v. Ocwen Financial Corp., et al.*, C.A. No. 5:07-34
*Stanley C. Beardslee, et al. v. Ocwen Loan Servicing, LLC, et al.*, C.A. No. 5:07-137


## MDL-1626 -- In re Accutane Products Liability Litigation

Opposition of defendant Hoffman-La Roche, Inc., to transfer of the following action to the United States District Court for the Middle District of Florida:

### Eastern District of Pennsylvania

*Darrell W. Borum, Jr. v. Hoffmann-La Roche, Inc., et al.*, C.A. No. 2:07-94


## MDL-1657 -- In re Vioxx Marketing, Sales Practices and Products Liability Litigation

Oppositions of plaintiffs to transfer of their respective following actions to the United States District Court for the Eastern District of Louisiana:

### Central District of California

*Ruby Lois Moore Estate, etc. v. Merck & Co., Inc.*, C.A. No. 2:06-7548

### Eastern District of California

*Mosetta Bernstine v. Merck & Co., Inc., et al.*, C.A. No. 2:07-34
*Katherine Harrison v. Merck & Co., Inc., et al.*, C.A. No. 2:07-42
*James Daniels, Jr. v. Merck & Co., Inc., et al.*, C.A. No. 2:07-48
*Barbara Ford-Daniels v. Merck & Co., Inc., et al.*, C.A. No. 2:07-51
*Lynn Franklin v. Merck & Co., Inc., et al.*, C.A. No. 2:07-57
*Irma Franklin v. Merck & Co., Inc., et al.*, C.A. No. 2:07-58
*Carolyn Lee Wilson v. Merck & Co., Inc., et al.*, C.A. No. 2:07-61
*Mary Ann Harris v. Merck & Co., Inc., et al.*, C.A. No. 2:07-67
*John Wilson v. Merck & Co., Inc., et al.*, C.A. No. 2:07-68

Schedule of Matters for Hearing Session, Section B                    p. 26
Las Vegas, Nevada


MDL-1657 (Continued)


### Eastern District of California (Continued)

*Ishmael Haqq v. Merck & Co., Inc., et al.*, C.A. No. 2:07-73
*David Tenn, etc. v. Merck & Co., Inc., et al.*, C.A. No. 2:07-75
*Estate of Juanita Battle v. Merck & Co., Inc., et al.*, C.A. No. 2:07-77
*Denise Denison v. Merck & Co., Inc., et al.*, C.A. No. 2:07-79


### Northern District of California

*Dorothy Shanks v. Merck & Co., Inc., et al.*, C.A. No. 3:07-65
*Stanford Johnson v. Merck & Co., Inc., et al.*, C.A. No. 3:07-67
*Estate of Robert Badke, et al. v. Merck & Co., Inc., et al.*, C.A. No. 3:07-69
*Fred Hardin v. Merck & Co., Inc., et al.*, C.A. No. 3:07-75
*Jeffrey Nielsen v. Merck & Co., Inc., et al.*, C.A. No. 3:07-76
*Juliana Nielsen v. Merck & Co., Inc., et al.*, C.A. No. 3:07-77
*Jacquelyn Johnson v. Merck & Co., Inc., et al.*, C.A. No. 3:07-78
*Arthur Shanks v. Merck & Co., Inc., et al.*, C.A. No. 4:07-68
*Earnestine Hardin v. Merck & Co., Inc., et al.*, C.A. No. 4:07-70
*Shahla Jaferian v. Merck & Co., Inc., et al.*, C.A. No. 5:07-66
*Estate of Sandra Ellis v. Merck & Co., Inc.*, C.A. No. 5:07-74
*Nader Jaferian v. Merck & Co., Inc., et al.*, C.A. No. 5:07-79
*Randolph Dossett v. Merck & Co., Inc., et al.*, C.A. No. 5:07-80
*Suzanne Dante v. Merck & Co., Inc., et al.*, C.A. No. 5:07-81


### Southern District of California

*Genevieve Tadman v. Merck & Co., Inc., et al.*, C.A. No. 3:06-2151
*Del Rorer v. Merck & Co., Inc., et al.*, C.A. No. 3:07-10
*Carol Krepp v. Merck & Co., Inc., et al.*, C.A. No. 3:07-11
*Charles Krepp v. Merck & Co., Inc., et al.*, C.A. No. 3:07-12
*Teresa Rorer v. Merck & Co., Inc., et al.*, C.A. No. 3:07-14
*Arlene Purvis v. Merck & Co., Inc., et al.*, C.A. No. 3:07-15


### Northern District of West Virginia

*Helen Jean Anderson, etc. v. Merck & Co., Inc., et al.*, C.A. No. 5:06-151

Schedule of Matters for Hearing Session, Section B                    p. 27
Las Vegas, Nevada


MDL-1657 (Continued)


### Southern District of West Virginia

*Paul Noe, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-1004
*Leota Faye Dickens v. Merck & Co., Inc., et al.*, C.A. No. 2:06-1005
*Madonna Armentrout, etc. v. Rite Aid of West Virginia, Inc.*, C.A. No. 3:06-1058


### MDL-1657 -- In re Vioxx Marketing, Sales Practices and Products Liability Litigation
### MDL-1699 -- In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation

Oppositions of plaintiffs to transfer of their respective following actions to the United States District Court for the Eastern District of Louisiana in MDL-1657 and to the United States District Court for the Northern District of California in MDL-1699:

### Northern District of Alabama

*William D. McCluskey, etc. v. Merck & Co., Inc., et al.*, C.A. No. 2:07-232

### Eastern District of California

*Carol Ann Davies, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2768
*Lois Hornsby, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2776
*Bertha Townsend, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2780
*Arthur Bluett, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2787
*Lisa Mathews, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2807
*Geneva Styles, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2812
*Ali Muhilddine, et al. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2814
*Elizabeth A. Cochran v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2817
*Kevin L. Chaney v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2826
*Wendel Vantine, etc. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2851
*Barry Dohner, etc. v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2853
*Jerry Strange v. Merck & Co., Inc., et al.*, C.A. No. 2:06-2875

### Southern District of Illinois

*Robert J. Smith, Jr., etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:06-964
*Wilburn Williamson, etc. v. Merck & Co., Inc., et al.*, C.A. No. 3:06-1023

## MDL-1700 -- In re FedEx Ground Package System, Inc., Employment Practices Litigation (No. II)

Opposition of plaintiff Carlos Quintin Gonzalez to transfer of the following action to the United States District Court for the Northern District of Indiana:

### Southern District of Florida

*Carlos Quintin Gonzalez v. FedEx Home Delivery, et al.*, C.A. No. 1:06-22964

## MDL-1708 -- In re Guidant Corp. Implantable Defibrillators Products Liability Litigation

Oppositions of plaintiffs Mary Alice Miller, etc., and Estefana Silva, et al., to transfer of their respective following actions to the United States District Court for the District of Minnesota:

### Middle District of Florida

*Mary Alice Miller, etc. v. Guidant Corp., et al.*, C.A. No. 3:07-41

### Southern District of Texas

*Estefana Silva, et al. v. Guidant Corp., et al.*, C.A. No. 7:07-2

## MDL-1715 -- In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation

Oppositions of plaintiffs Rodney S. Means and David L. Murphy, et al., and defendants Dream House Mortgage Corp., Northwest Title & Escrow Corp., and Litton Loan Servicing LP to transfer of their respective following actions to the United States District Court for the Northern District of Illinois:

### Northern District of Indiana

*Rodney S. Means v. Ameriquest Mortgage Co., et al.*, C.A. No. 2:06-409

### District of Massachusetts

*Kelly Ann I. Graham, et al. v. Ameriquest Mortgage Co., et al.*, C.A. No. 4:06-40195

MDL-1715 (Continued)

### Eastern District of Missouri

*Paul W. Derda, et al. v. Ameriquest Mortgage Co., et al.*, C.A. No. 4:06-1649

### Eastern District of Texas

*David L. Murphy, et al. v. Argent Mortgage Co., LLC*, C.A. No. 1:06-781

MDL-1718 -- In re Ford Motor Co. Speed Control Deactivation Switch Products Liability
        Litigation

Oppositions of plaintiffs Florida Farm Bureau Casualty Insurance Company, etc.; David
Giorgini, et al.; and Oscar Reyes, et al., to transfer of their respective following actions to the
United States District Court for the Eastern District of Michigan:

### Middle District of Florida

*Florida Farm Bureau Casualty Insurance Co., etc. v. Ford Motor Co., Inc.*,
   C.A. No. 8:06-2307

### Eastern District of Pennsylvania

*David Giorgini, et al. v. Ford Motor Co.*, C.A. No. 2:06-968

### Southern District of Texas

*Oscar Reyes, et al. v. Ford Motor Co., et al.*, C.A. No. 4:07-165

Schedule of Matters for Hearing Session, Section B        p. 30
Las Vegas, Nevada


MDL-1726 -- In re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation

Oppositions of plaintiff Patricia Kavalir and defendant Medtronic, Inc., to transfer of their respective following actions to the United States District Court for the District of Minnesota:

   Middle District of Florida

*Hazel E. Ricciotti, etc. v. Medtronic, Inc.,* C.A. No. 8:07-233

   Northern District of Georgia

*Claudeena Watt-Austin, et al. v. Boston Scientific Corp., et al.,* C.A. No. 1:07-293

   Northern District of Illinois

*Patricia Kavalir v. Medtronic, Inc.,* C.A. No. 1:07-835


MDL-1742 -- In re Ortho Evra Products Liability Litigation

Opposition of plaintiffs Jacci Morrison, et al., to transfer of the following action to the United States District Court for the Northern District of Ohio:

   Northern District of California

*Jacci Morrison, et al. v. Ortho-McNeil Corp., et al.,* C.A. No. 3:07-8


MDL-1760 -- In re Aredia and Zometa Products Liability Litigation

Oppositions of plaintiffs Joan LeCompte, et al., and Beatrice Rios to transfer of their respective following actions to the United States District Court for the Middle District of Tennessee:

   District of New Jersey

*Joan LeCompte, et al. v. Novartis Pharmaceuticals Corp.,* C.A. No. 2:07-357

   Southern District of Texas

*Beatrice Rios v. Novartis Pharmaceuticals Corp., et al.,* C.A. No. 6:07-2

MDL-1763 -- In re Human Tissue Products Liability Litigation

        Opposition of plaintiff Sherryl Jean Thornton to transfer of the following action to the United States District Court for the District of New Jersey:

        Northern District of Alabama

        *Sherryl Jean Thornton v. Michael Mastromarino, et al.*, C.A. No. 1:06-4899

MDL-1781 -- In re Cintas Corp. Overtime Pay Arbitration Litigation

        Opposition of respondents in all actions to remand, under 28 U.S.C. § 1407(a), of the following actions to their respective transferor courts:

        Northern District of California

*Cintas Corp. v. Randall M. Cornelius, et al.*, C.A. No. 4:06-5078 (M.D. Alabama, C.A. No. 2:06-227)
*Cintas Corp. v. Darren Mitchell Anderson, et al.*, C.A. No. 4:06-5079 (N.D. Alabama, C.A. No. 2:06-492)
*Cintas Corp. v. Ramon J. Baudier, Jr., et al.*, C.A. No. 4:06-5080 (S.D. Alabama, C.A. No. 1:06-148)
*Cintas Corp. v. Robert J. Abel, et al.*, C.A. No. 4:06-5081 (D. Arizona, C.A. No. 2:06-693)
*Cintas Corp. v. Roberto Carlos Alegria, et al.*, C.A. No. 4:06-5082 (C.D. California, C.A. No. 2:06-1750)
*Cintas Corp. v. Ronald Arvizu, et al.*, C.A. No. 4:06-5083 (E.D. California, C.A. No. 2:06-611)
*Cintas Corp. v. Daniel E. Ainsworth, et al.*, C.A. No. 4:06-5084 (S.D. California, C.A. No. 3:06-632)
*Cintas Corp. v. John D. Bickham, et al.*, C.A. No. 4:06-5085 (D. Colorado, C.A. No. 1:06-427)
*Cintas Corp. v. Eugene Christensen, et al.*, C.A. No. 4:06-5086 (D. Connecticut, C.A. No. 3:06-360)
*Cintas Corp. v. Charles Leroy Gray, et al.*, C.A. No. 4:06-5087 (D. Delaware, C.A. No. 1:06-162)
*Cintas Corp. v. Alice Allen, et al.*, C.A. No. 4:06-5088 (M.D. Florida, C.A. No. 8:06-400)
*Cintas Corp. v. Joseph Frazier, et al.*, C.A. No. 4:06-5089 (N.D. Florida, C.A. No. 3:06-103)

Schedule of Matters for Hearing Session, Section B          p. 32
Las Vegas, Nevada

MDL-1781 (Continued)

### Northern District of California (Continued)

*Cintas Corp. v. David J. Abrahamsen, et al.*, C.A. No. 4:06-5090 (S.D. Florida, C.A. No. 0:06-60310)

*Cintas Corp. v. Matthew J. DeFelix, et al.*, C.A. No. 4:06-5091 (M.D. Georgia, C.A. No. 1:06-38)

*Cintas Corp. v. Jeffrey Aybar, et al.*, C.A. No. 4:06-5092 (N.D. Georgia, C.A. No. 1:06-569)

*Cintas Corp. v. Joe L. Banks, et al.*, C.A. No. 4:06-5093 (S.D. Georgia, C.A. No. 1:06-35)

*Cintas Corp. v. David DeBilzan, et al.*, C.A. No. 4:06-5094 (D. Idaho, C.A. No. 1:06-104)

*Cintas Corp. v. James Allen Burress, et al.*, C.A. No. 4:06-5095 (C.D. Illinois, C.A. No. 1:06-1068)

*Cintas Corp. v. Vince Agozzino, et al.*, C.A. No. 4:06-5096 (N.D. Illinois, C.A. No. 1:06-1343)

*Cintas Corp. v. James Atkins, et al.*, C.A. No. 4:06-5097 (N.D. Indiana, C.A. No. 2:06-85)

*Cintas Corp. v. Ryan Albright, et al.*, C.A. No. 4:06-5098 (S.D. Indiana, C.A. No. 1:06-401)

*Cintas Corp. v. Donald Allen Griffin, et al.*, C.A. No. 4:06-5099 (S.D. Iowa, C.A. No. 4:06-91)

*Cintas Corp. v. Matthew L. Blackman, et al.*, C.A. No. 4:06-5100 (D. Kansas, C.A. No. 2:06-2091)

*Cintas Corp. v. Danny L. Brown, et al.*, C.A. No. 4:06-5101 (E.D. Kentucky, C.A. No. 2:06-52)

*Cintas Corp. v. Jason Agostini, et al.*, C.A. No. 4:06-5102 (W.D. Kentucky, C.A. No. 3:06-131)

*Cintas Corp. v. Jack Addison, et al.*, C.A. No. 4:06-5103 (E.D. Louisiana, C.A. No. 2:06-1247)

*Cintas Corp. v. Gustave Fontenot, Jr., et al.*, C.A. No. 4:06-5104 (M.D. Louisiana, C.A. No. 3:06-188)

*Cintas Corp. v. Ivan Edward Avery, et al.*, C.A. No. 4:06-5105 (W.D. Louisiana, C.A. No. 6:06-391)

*Cintas Corp. v. Randall Bowles, et al.*, C.A. No. 4:06-5106 (D. Maine, C.A. No. 2:06-55)

Schedule of Matters for Hearing Session, Section B     p. 33
Las Vegas, Nevada

MDL-1781 (Continued)

Northern District of California (Continued)

*Cintas Corp. v. Joe Andrews, et al.*, C.A. No. 4:06-5107 (D. Maryland,
 C.A. No. 8:06-641)
*Cintas Corp. v. Philip Daniel Blaisdell, et al.*, C.A. No. 4:06-5108 (D. Massachusetts,
 C.A. No. 1:06-10442)
*Cintas Corp. v. Brandon Alioto, et al.*, C.A. No. 4:06-5109 (E.D. Michigan,
 C.A. No. 2:06-11043)
*Cintas Corp. v. Travis M. Ault, et al.*, C.A. No. 4:06-5110 (W.D. Michigan,
 C.A. No. 1:06-180)
*Cintas Corp. v. John Callahan, et al.*, C.A. No. 4:06-5111 (D. Minnesota,
 C.A. No. 0:06-1012)
*Cintas Corp. v. Gregory Cole Bigbee, et al.*, C.A. No. 4:06-5112 (S.D. Mississippi,
 C.A. No. 3:06-137)
*Cintas Corp. v. Relton Barnes, et al.*, C.A. No. 4:06-5113 (E.D. Missouri,
 C.A. No. 4:06-450)
*Cintas Corp. v. Randall Adams, et al.*, C.A. No. 4:06-5114 (W.D. Missouri,
 C.A. No. 4:06-208)
*Cintas Corp. v. Jeffrey Anderson, et al.*, C.A. No. 4:06-5115 (D. Nebraska,
 C.A. No. 8:06-262)
*Cintas Corp. v. Anthony Dean Hamby, et al.*, C.A. No. 4:06-5116 (D. Nevada,
 C.A. No. 2:06-300)
*Cintas Corp. v. Joseph Allen, et al.*, C.A. No. 4:06-5117 (D. New Jersey,
 C.A. No. 2:06-1164)
*Cintas Corp. v. Tony L. Bostick, et al.*, C.A. No. 4:06-5119 (D. New Mexico,
 C.A. No. 1:06-185)
*Cintas Corp. v. Troy Amott, et al.*, C.A. No. 4:06-5120 (E.D. New York,
 C.A. No. 1:06-1105)
*Cintas Corp. v. Hugh J. Kingsley, et al.*, C.A. No. 4:06-5121 (N.D. New York,
 C.A. No. 5:06-311)
*Cintas Corp. v. Louis Alves, et al.*, C.A. No. 4:06-5122 (S.D. New York,
 C.A. No. 1:06-1933)
*Cintas Corp. v. Robert F. Bowles, Jr., et al.*, C.A. No. 4:06-5123 (W.D. New York,
 C.A. No. 6:06-6147)
*Cintas Corp. v. Matthew Anderson, et al.*, C.A. No. 4:06-5124 (E.D. North Carolina,
 C.A. No. 5:06-113)

MDL-1781 (Continued)

### Northern District of California (Continued)

*Cintas Corp. v. Gus Aranegui, et al.*, C.A. No. 4:06-5126 (M.D. North Carolina,
   C.A. No. 1:06-225)
*Cintas Corp. v. Jonathan Allred, et al.*, C.A. No. 4:06-5127 (W.D. North Carolina,
   C.A. No. 3:06-114)
*Cintas Corp. v. Bradley Agler, et al.*, C.A. No. 4:06-5128 (N.D. Ohio,
   C.A. No. 3:06-7083)
*Cintas Corp. v. Donald Adkins, et al.*, C.A. No. 4:06-5129 (S.D. Ohio,
   C.A. No. 1:06-126)
*Cintas Corp. v. Robert Hall, et al.*, C.A. No. 4:06-5130 (E.D. Oklahoma,
   C.A. No. 6:06-97)
*Cintas Corp. v. Brent Berna, et al.*, C.A. No. 4:06-5131 (N.D. Oklahoma,
   C.A. No. 4:06-148)
*Cintas Corp. v. Raymond Mac Harris, Jr., et al.*, C.A. No. 4:06-5132 (W.D. Oklahoma,
   C.A. No. 5:06-247)
*Cintas Corp. v. Dennis Bassett, et al.*, C.A. No. 4:06-5133 (D. Oregon,
   C.A. No. 6:06-335)
*Cintas Corp v. Kenneth W. Baptist, et al.*, C.A. No. 4:06-5134 (E.D. Pennsylvania,
   C.A. No. 2:06-1053)
*Cintas Corp. v. Brian Ash, et al.*, C.A. No. 4:06-5135 (M.D. Pennsylvania,
   C.A. No. 3:06-517)
*Cintas Corp. v. Christopher Derenzo, et al.*, C.A. No. 4:06-5136 (W.D. Pennsylvania,
   C.A. No. 2:06-324)
*Cintas Corp. v. Joseph E. Edwards, et al.*, C.A. No. 4:06-5137 (D. Rhode Island,
   C.A. No. 1:06-112)
*Cintas Corp. v. Thomas Eugene Alert, et al.*, C.A. No. 4:06-5138 (D. South Carolina,
   C.A. No. 3:06-762)
*Cintas Corp. v. Stephen Barlow, et al.*, C.A. No. 4:06-5139 (E.D. Texas,
   C.A. No. 1:06-137)
*Cintas Corp. v. Bryan Armstrong, et al.*, C.A. No. 4:06-5140 (N.D. Texas,
   C.A. No. 3:06-432)
*Cintas Corp. v. Judd Allen, et al.*, C.A. No. 4:06-5141 (S.D. Texas, C.A. No. 4:06-824)
*Cintas Corp. v. Issac Anaya, et al.*, C.A. No. 4:06-5142 (W.D. Texas, C.A. No. 5:06-216)
*Cintas Corp. v. Wade Bell, et al.*, C.A. No. 4:06-5143 (D. Utah, C.A. No. 2:06-205)

MDL-1781 (Continued)

### Northern District of California (Continued)

*Cintas Corp. v. John O. Ansink, Jr., et al.*, C.A. No. 4:06-5144 (E.D. Virginia,
   C.A. No. 1:06-267)
*Cintas Corp. v. Nelson Carter, Jr.*, C.A. No. 4:06-5145 (W.D. Virginia,
   C.A. No. 5:06-23)
*Cintas Corp. v. Scott Burgess, et al.*, C.A. No. 4:06-5146 (E.D. Washington,
   C.A. No. 2:06-3023)
*Cintas Corp. v. Michael Anderson, et al.*, C.A. No. 4:06-5147 (W.D. Washington,
   C.A. No. 2:06-332)
*Cintas Corp. v. Nathan J. Andree, et al.*, C.A. No. 4:06-5148 (E.D. Wisconsin,
   C.A. No. 2:06-303)
*Cintas Corp. v. Chris Brown, et al.*, C.A. No. 4:06-5149 (W.D. Wisconsin,
   C.A. No. 3:06-133)

### MDL-1789 -- In re Fosamax Products Liability Litigation

Opposition of plaintiff Mary Ellen Potgieter to transfer of the following action to the United States District Court for the Southern District of New York:

### District of New Jersey

*Mary Ellen Potgieter v. Merck & Co., Inc.*, C.A. No. 2:07-2

PROCEDURES FOR ORAL ARGUMENT BEFORE THE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

All oral argument is governed by the provisions of Rule 16.1 of the <u>Rules of Procedure of the
Judicial Panel on Multidistrict Litigation</u> (effective April 2, 2001). Rule 16.1(g) allows a
maximum of twenty minutes for oral argument in each matter. In most cases, however, less time
is necessary for the expression of all views and the Panel reserves the prerogative of reducing the
time requested by counsel. Accordingly, counsel should be careful not to overstate the time
requested for oral argument.

The Panel insists that counsel limit all oral argument to the appropriate criteria. <u>See generally</u> <u>In
re "East of the Rockies"</u> Concrete Pipe Antitrust Cases, 302 F. Supp. 244, 255-56 (J.P.M.L.
1969) (concurring opinion) (discussion concerning criteria for transfer).

Rule 16.1 is duplicated in its entirety hereafter for your convenience.

## RULE 16.1:    HEARING SESSIONS AND ORAL ARGUMENT

(a)    Hearing sessions of the Panel for the presentation of oral argument and consideration of matters taken under submission without oral argument shall be held as ordered by the Panel. The Panel shall convene whenever and wherever desirable or necessary in the judgment of the Chairman. The Chairman shall determine which matters shall be considered at each hearing session and the Clerk of the Panel shall give notice to counsel for all parties involved in the litigation to be so considered of the time, place and subject matter of such hearing session.

(b)    Each party filing a motion or a response to a motion or order of the Panel under Rules 7.2, 7.3, 7.4 or 7.6 of these Rules may file simultaneously therewith a separate statement limited to one page setting forth reasons why oral argument should, or need not, be heard. Such statements shall be captioned "Reasons Why Oral Argument Should [Need Not] Be Heard," and shall be filed and served in conformity with Rules 5.12 and 5.2 of these Rules.

(c)    No transfer or remand determination regarding any action pending in the district court shall be made by the Panel when any party timely opposes such transfer or remand unless a hearing session has been held for the presentation of oral argument except that the Panel may dispense with oral argument if it determines that:
    (i)    the dispositive issue(s) have been authoritatively decided; or
    (ii)    the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.
Unless otherwise ordered by the Panel, all other matters before the Panel, such as a motion for reconsideration, shall be considered and determined upon the basis of the papers filed.

(d)    In those matters in which oral argument is not scheduled by the Panel, counsel shall be promptly advised. If oral argument is scheduled in a matter the Clerk of the Panel may require counsel for all parties who wish to make or to waive oral argument to file and serve notice to that effect within a stated time in conformity with Rules 5.12 and 5.2 of these Rules. Failure to do so shall be deemed a waiver of oral argument by that party. If oral argument is scheduled but not attended by a party, the matter shall not be rescheduled and that party's position shall be treated as submitted for decision by the Panel on the basis of the papers filed.

(e)    Except for leave of the Panel on a showing of good cause, only those parties to actions scheduled for oral argument who have filed a motion or written response to a motion or order shall be permitted to appear before the Panel and present oral argument.

(f)    Counsel for those supporting transfer or remand under Section 1407 and counsel for those opposing such transfer or remand are to confer separately prior to the oral argument for the purpose of organizing their arguments and selecting representatives to present all views without duplication.

(g)    Unless otherwise ordered by the Panel, a maximum of twenty minutes shall be allotted for oral argument in each matter. The time shall be divided equally among those with varying viewpoints. Counsel for the moving party or parties shall generally be heard first.

- 2 -

(h)     So far as practicable and consistent with the purposes of Section 1407, the offering of oral testimony before the Panel shall be avoided.  Accordingly, oral testimony shall not be received except upon notice, motion and order of the Panel expressly providing for it.

(i)     After an action or group of actions has been set for a hearing session, consideration of such action(s) may be continued only by order of the Panel on good cause shown.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

**ORDER**
**REGARDING**
**THE PROTECTIVE ORDER AND DOCUMENT PRODUCTION**

At the Scheduling Conference in the above five captioned cases, the Parties informed the Court that they were continuing to discuss the form of protective order to be entered in all five cases as well as the form of production for documents produced electronically and requested additional time to reach agreement or inform the Court of their disagreements.  Pursuant to the Parties request, the Court hereby grants the Parties twenty-one (21) days from the date of Scheduling Conference, which is until Tuesday, April 24, 2007, to:

1.      file an agreed upon Protective Order with the Court or inform the Court of the provisions in a proposed Protective Order on which the Parties cannot reach agreement and

2.      inform the Court that the Parties have reached agreement on the form of production for documents produced electronically or inform the Court of the Parties' disagreements regarding electronic production.

 SIGNED this 19th day of April, 2007.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| ET AL. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| ET AL. | § | |

## DOCKET CONTROL ORDER

| | |
|---|---|
| **Monday,<br>August 4, 2008** | Jury Selection - 9:00 a.m. in **Marshall, Texas** for the initial case to be tried. |
| **July 24, 2008** | Pretrial Conference - 9:30 a.m. in **Marshall, Texas** |
| **July 21, 2008** | Joint Pretrial Order, Joint Proposed Jury Instructions and Form of the Verdict. |
| **July 21, 2008** | **Motions in Limine (due three days before final Pre-Trial Conference).**<br>Three (3) days prior to the pre-trial conference provided for herein, the parties shall furnish a copy of their respective Motions in Limine to the Court by facsimile transmission, **903/935-2295**. The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. **The parties shall limit their motions in limine to those issues which, if improperly introduced into the trial of the cause, would be so prejudicial that the Court could not alleviate the prejudice with appropriate instruction(s).** |
| **July 14, 2008** | Response to Dispositive Motions (including *Daubert* motions) |
| **July 7, 2008** | **Notice of Request for Daily Transcript or Real Time Reporting of Court Proceedings.** If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Susan Simmons, at lssimmons@yahoo.com. |
| **June 27, 2008** | For Filing Dispositive Motions and any other motions that may require a hearing (including *Daubert* motions) **Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e). Motions for Summary Judgment shall comply with Local Rule CV56.** |

2

**May 28, 2008**               Defendants to Identify Trial Witnesses

**May 14, 2008**               Plaintiff to Identify Trial Witnesses

**May 14, 2008**               Discovery Deadline

**April 15, 2008**             Conference to determine the case that will be tried August 4,
                               2008, the order in which the remainder of the cases will be
                               tried and, if possible, a trial setting for the remaining cases.

**April 7, 2008**              or **30** Days after the claim construction ruling,
                               whichever occurs later,
                               Designate Rebuttal Expert Witnesses other than claims
                               construction
                               Expert witness report due
                               Refer to Discovery Order for required information.

**April 3, 2008**              Status Report to Court in lieu of mediation

_____              **15** Days after claim construction ruling
                               Comply with P.R. 3-8.

**March 24, 2008**             or **15** Days after claim construction ruling,
                               whichever occurs later,
                               Party with the burden of proof to designate Expert Witnesses
                               other than claims construction
                               Expert witness report due
                               Refer to Discovery Order for required information.

**February 13 and 14, 2008**   Claim construction hearing or hearings 9:00 a.m., **Marshall,
                               Texas**.

**February 1, 2008**           Parties submit technology tutorials to the Court.

3

**January 21, 2008**            Comply with P.R. 4-5(c).

**January 11, 2008**            Comply with P.R. 4-5(b).

**December 24, 2007**           Comply with P.R. 4-5(a).

**December 7, 2007**            Discovery deadline-claims construction issues

**November 30, 2007**           Respond to Amended Pleadings

**November 16, 2007**           Amend Pleadings
                                **(It is not necessary to file a Motion for Leave to Amend
                                before the deadline to amend pleadings except to the
                                extent the amendment seeks to add a new patent in suit.
                                It is necessary to file a Motion for Leave to Amend after
                                November 16, 2007).**

**November 16, 2007**           Comply with P.R. 4-3.

**October 16, 2007**            Comply with P.R. 4-2.

**September 26, 2007**          Comply with P.R. 4-1.

**August 3, 2007**              Letter to the Court stating that there are no
                                disputes as to claims of privileged documents.

**June 11, 2007**               Comply with Paragraph 3(b) of the Discovery Order

**June 4, 2007**                Privilege Logs to be exchanged by parties

**June 11, 2007**               Comply with P.R. 3-3.

**May 3, 2007**                Join Additional Parties

**April 28, 2007**          Comply with P.R. 3-1

**April 3, 2007**            Scheduling Conference (All attorneys are directed to Local Rule CV-16 for scope of the Scheduling Conference).

The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the court will assume that the party has no opposition." Local Rule CV-7(e) provides that a party opposing a motion has **12 days, in addition to any added time permitted under Fed. R. Civ. P. 6(e)**, in which to serve and file a response and any supporting documents, after which the court will consider the submitted motion for decision.

## OTHER LIMITATIONS

1.    All depositions to be read into evidence as part of the parties' case-in-chief shall be **EDITED** so as to exclude all unnecessary, repetitious, and irrelevant testimony; **ONLY** those portions which are relevant to the issues in controversy shall be read into evidence.

2.    The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter. <u>See</u> Eastern District of Texas Local Rule CV-7(h).

3.    The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

    (a)    The fact that there are motions for summary judgment or motions to dismiss pending;

    (b)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

    (c)    The failure to complete discovery prior to trial, unless the parties can

demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

SIGNED this 19th day of April, 2007.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |

## <u>NOTICE REGARDING THE PROTECTIVE ORDER</u>

At the Scheduling Conference, the Parties requested an additional three weeks to work on

reaching an agreement with respect to a Protective Order in this case.  In its April 19, 2007 Order

Regarding Protective Order and Document Production (Doc. No. 68), the Court gave the parties

three weeks to reach agreement on a Protective Order or inform the Court of any remaining disputes regarding the Protective Order.  The Parties have reached agreement on a Protective Order and respectfully request that the Court enter the agreed upon Protective Order, which is attached hereto as Attachment A.

DATED: April 24, 2007                    Respectfully submitted,


                                         /s/ Sam Baxter
                                         Sam Baxter
                                         State Bar No. 01938000
                                         **McKOOL SMITH, P.C.**
                                         505 E. Travis, Suite 105
                                         Marshall, Texas  75670
                                         Telephone:  (903) 927-2111
                                         Telecopier:  (903) 927-2622
                                         sbaxter@mckoolsmith.com

                                         Jeffrey A. Carter
                                         State Bar No. 03919400
                                         **McKOOL SMITH, P.C.**
                                         300 Crescent Court, Suite 1500
                                         Dallas, Texas  75201
                                         Telephone:  (214) 978-4006
                                         Telecopier:  (214) 978-4044
                                         jcarter@mckoolsmith.com

                                         Travis Gordon White
                                         State Bar No. 21333000
                                         **McKOOL SMITH, P.C.**
                                         300 W. 6th Street, Suite 1700
                                         Austin, Texas  78701
                                         Telephone:  (512) 692-8700
                                         Telecopier:  (512) 692-8744
                                         gwhite@mckoolsmith.com

/s/  Brooke A. M. Taylor
Max L. Tribble, Jr.
State Bar No. 20213950
Tibor L. Nagy
State Bar 24041562
Email: mtribble@susmangodfrey.com
Email: tnagy@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel: 713-651-9366
Fax: 713-654-6666

**OF COUNSEL:**
Edgar Sargent
WA State Bar No. 28283
Email: esargent@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: 206-516-3880
Fax: 206-516-3883

Brooke A.M. Taylor
WA State Bar No. 33190
Email: btaylor@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: 206-516-3880
Fax: 206-516-3883

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Calvin Capshaw
State Bar No. 03783900
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
aspangler@mailbmc.com

Franklin Jones, Jr.
State Bar No. 00000055
**JONES & JONES, INC.**
201 W. Houston Street
P. O. Drawer 1249
Marshall, TX  75670
Telephone:  903-938-4395
Telecopier:  903-938-3360
maizieh@millerfirm.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

/s/ Michael E. Jones
Michael E. Jones
State Bar No. 10929400
Diane DeVasto
**POTTER MINTON, P.C.**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
Telephone:  (903) 597-8311
Telecopier:  (903) 593-0846
mikejones@potterminton.com

David S. Benyacar
Michael A. Rogoloff
**KAYE SCHOLER**
425 Park Avenue
New York, NY 10022
Tel: 212-836-8000
Fax: 212-836-8689
dbenyacar@kayescholer.com

**ATTORNEYS FOR DEFENDANT
TIME WARNER CABLE INC.**

/s/ Jennifer Haltom Doan
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
**HALTOM & DOAN, LLP**
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Tel: 903-255-1000
Fax: 903-255-0800

Brian Ferral
Leo Lam
Asim M. Bhansali
Matthias A. Kamber
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 9411-1704
Tel: 415-676-2235
Fax: 415-397-7188

**ATTORNEYS FOR DEFENDANTS
COMCAST CORPORATION,
COMCAST CABLE,
COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP**

/s/ Michael E. Jones
Bradford P. Lyerla, Attorney in Charge
blyerla@marshallip.com
Kevin D. Hogg
khogg@marshallip.com
William J. Kramer
wkramer@marhsllip.com
Paul B. Stephens
pstephens@marshallip.com
**MARSHALL, GERSTEIN & BORUN LLP**
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: 312-474-6300
Fax: 312-474-0448

Michael E. Jones
State Bar No. 10929400
**POTTER MINTON, PC**
110 North College
500 Plaza Tower
Tyler, TX 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANTS
CHARTER COMMUNICATIONS, INC.
CHARTER COMMUNICATIONS
OPERATING, LLC**

<div style="text-align:center"></div>

/s/ Michael E. Jones
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
**KILPATRICK STOCKTON LLP**
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309-4530
Tel: 404-815-6214
Fax: 404-815-6555

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
**POTTER MINTON, P.C.**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, TX 75710
Tel: 903-597-8311
Fax: 903-593-0846

**ATTORNEYS FOR DEFENDANT
COXCOM, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 24th day of April 2007.

/s/ Sam Baxter
Sam Baxter

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 24th day of April 2007.

/s/ Brooke A.M. Taylor
Brooke A.M. Taylor

# Attachment A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |

## **PROTECTIVE ORDER**

WHEREAS, Plaintiff Rembrandt Technologies, LP ("Rembrandt"), and Defendants

Charter Communications, Inc., Charter Communications Operating, LLC (collectively,

"Charter"), and CoxCom, Inc. ("CoxCom") in the 223 and 507 cases, Defendants Time Warner

Cable Inc., Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner

Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse Partnership

(collectively, "Time Warner") in the 224 and 369 cases, and Defendants Comcast Corporation,

Comcast Cable Communications, LLC, and Comcast of Plano LP (collectively, "Comcast") in

the 506 case, through counsel, stipulate to entry of this Protective Order ("Order") in their

respective case or cases pursuant to Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or

dissemination of confidential information; and

      **WHEREAS**, Rembrandt, Charter, CoxCom, Time Warner, and Comcast are collectively

referred to herein as the "parties;" and

      **WHEREAS,** the parties recognize that confidential information is being produced for

use in this civil action;

      IT IS HEREBY ORDERED that the following provisions of this Order shall govern the

treatment of confidential information produced by a party ("Producing Party")[1] to any other

party ("Receiving Party") in the course of this civil action:

      1.     The term "Confidential Information" as used in this Order includes all

information and tangible things that constitute or disclose trade secrets or other confidentia1 or

proprietary information of one of the parties.  Confidential Information may be contained in

discovery information or materials produced or obtained in this action by or through any means

and by or through any person or entity. The Confidential Information contained therein and all

copies, recordings, abstracts, excerpts, analyses or other writings that contain, reveal or

otherwise disclose such Confidential Information shall also be deemed Confidential Information.

---

[1] The parties agree that all references to "Producing Party" in this Protective Order be construed to include third
parties producing documents in one or more of these cases.

2.      Confidential Information shall be disclosed, disseminated and used by the Receiving Party only for purposes of litigation between the parties to this action.  Except with the prior written consent of the Producing Party or upon prior order of this Court, Confidential Information shall not be disclosed except in accordance with the terms, conditions, and restrictions of this Order

3**.**      Produced documents, interrogatory responses, responses to requests for admission and other documents containing "Confidential Information" shall be marked by conspicuously affixing a legend, which includes the words "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY", as appropriate, on each page containing Confidential Information at the time such documents are produced or such information is disclosed (or on the cover or container of computer storage media, such as discs or tapes).  The parties may designate material other than the produced documents as containing Confidential Information in the following manner:

(a)      Testimony or information disclosed at a deposition that contains Confidential Information or Highly Confidential Information may be designated by indicating on the record at the deposition the portions of the testimony which contain such information that is to be made subject to the provisions of this Order.  Alternatively, a Producing Party may designate testimony or information disclosed at a deposition, including exhibits, that contains Confidential Information or Highly Confidential Information by notifying all parties in writing, within fifteen (15) days after the Producing Party's receipt of the transcript, of the specific pages and lines of the transcript that contain such information.  Whether or not designation is made at the time of a deposition, accessibility to each transcript (and the information contained therein) of any deposition in its entirety shall be limited to outside counsel of record and designated in-

house counsel only, from the taking of the deposition until fifteen (15) days after the actual

receipt of the transcript by the Producing Party, or until receipt of the notice referred to in this

paragraph, whichever occurs sooner.  At the expiration of the said fifteen (15) day period, unless

notice hereunder to the contrary is given at the time of the deposition or prior to the expiration of

said period, the entire transcript shall be deemed non-confidential.

        (b)      Confidential Information or Highly Confidential Information contained in

any affidavits, briefs, memoranda or other papers filed with the Court in this action may be

designated as Confidential Information or Highly Confidential Information by indicating on the

face of such documents that one or more parties considers them to contain such information.

        4.      The parties may designate as HIGHLY CONFIDENTIAL--ATTORNEYS' EYES

ONLY any materials that qualify for protection under the standards developed under Fed. R.

Civ. P. 26(c) and which comprises (a) technical information that the producing party reasonably

deems highly confidential, including but not limited to proprietary technical information and

trade secrets; or (b) business or financial information that the producing party reasonably deems

highly confidential, such as, for example, business plans or forecasts, cost or pricing

information, sales volume or revenue information, profit margin information, marketing plans or

strategy, the identity of current or potential customers or suppliers, accounting information not of

public record, information subject to a confidentiality agreement with a third party, or the like.

The foregoing categories are by way of example only and shall not limit the categories of

information a party may designate HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY

under this order; provided, however, that any such designation must be made by the producing

party in good faith and with reasonable justification.  Subject to the provisions of paragraphs 6

and 7 herein, material designated as HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY,

and any summary, description or report of the information contained in such materials, may be disclosed only to the following persons:

(a)       the Court, persons employed by the Court, and stenographers transcribing the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b)       technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)       graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d)       source code escrow agents, photocopy, document imaging and database services, and consultants retained by counsel to set up, maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases;

(e)       John Meli, Executive Vice President and General Counsel of Rembrandt, Andrew T. Block, Esq. of Time Warner, Kirill Y. Abramov, Esq. of Charter, Marcus Delgado, Esq. of CoxCom and David Marcus, Esq. of Comcast; and two (2) paralegals and/or clerical employees assisting each of the identified in-house counsel; and

(f)       the parties' outside counsel of record in this action as specifically set forth below and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action. Any individual outside counsel of record who receives information designated HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY may not participate in patent prosecution for the Receiving Party, and the individual outside counsel who receives any

5

such information may not discuss the information with anyone involved in patent prosecution for

the Receiving Party.  Outside counsel of record for the parties are as follows:

**For Rembrandt in the 223 case**:

> McKool Smith P.C.
> 300 Crescent Court, Suite 1500
> Dallas, Texas 75201

> Parker & Bunt
> 100 E. Ferguson, Suite 1114
> Tyler, Texas 75702

> Jones & Jones, Inc., P.C.
> 201 West Houston St., Drawer 1249
> Marshall, Texas 75671-1249

**For Rembrandt in the 224 case**:

> McKool Smith P.C.
> 300 Crescent Court, Suite 1500
> Dallas, Texas 75201

> Parker & Bunt
> 100 E. Ferguson, Suite 1114
> Tyler, Texas 75702

> Ireland, Carroll & Kelly, P.C.
> 61101 S. Broadway, Suite 500
> Tyler, Texas 75703

> Brown McCarroll LLP
> 1127 Judson Road, Suite 220
> P.O. Box 3999 (75606-3999)
> Longview, Texas 75601-5157

**For Rembrandt in the 369 Case:**

> Susman Godfrey LLP
> 1000 Louisiana Street, Suite 5100
> Houston, TX  77002-5096

> Parker & Bunt
> 100 E. Ferguson, Suite 1114
> Tyler, Texas 75702

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

**For Rembrandt in the 506 Case:**

Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

**For Rembrandt in the 507 Case:**

Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

7

**For Charter in the 223 and 507 cases:**

> Marshall, Gerstein & Borun LLP
> 6300 Sears Tower
> 233 South Wacker Drive
> Chicago, Illinois 60606-6357

> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Coxcom in the 223 and 507 cases:**

> Kilpatrick Stockton LLP
> 1100 Peachtree Street NE, Suite 2800
> Atlanta, Georgia 30309-4530

> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Time Warner in the 224 and 369 cases:**

> Kaye Scholer LLP
> 425 Park Avenue
> New York, New York 10022

> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Comcast in the 506 case:**

> Keker & Van Nest, LLP
> 710 Sansome Street
> San Francisco, California 94111-1704

> Halton & Doan, LLP
> 6500 N. Summerhill Road, Suite 1A
> P.O. Box 6227
> Texarkana, Texas 75505-6277

Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX  75670

5.     The parties may designate as CONFIDENTIAL any materials that qualify for protection under the standards developed under Fed. R. Civ. P. 26(c).  Subject to the provisions of paragraphs 6 and 7 herein, material designated as CONFIDENTIAL, and any summary, description or report of the information contained in such materials, may be disclosed only to the following persons:

(a)     the Court, persons employed by the Court, and stenographers transcribing the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b)     technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)     graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d)     photocopy, document imaging and database services and consultants retained by counsel to set up, maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases;

(e)     John Meli,  and Paul Schneck, Chief Executive Officer of Rembrandt, Andrew T. Block, Esq. of Time Warner, Kirill Y. Abramov, Esq. of Charter, Marcus Delgado, Esq. of CoxCom and David Marcus, Esq. of Comcast and one other employee for each of Charter, CoxCom, Time Warner, and Comcast (following identification of each other employee

9

to each of the other parties and approval by the other parties, such approval not to be unreasonably withheld); and two (2) clerical employees assisting each party's in-house counsel and other employee; and

(f)     the parties' outside counsel of record in this action and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action

6.     (a)     A party may exclude from a deposition any person who is not entitled to view Confidential Information or Highly Confidential Information when such information is the subject of examination.

(b)     No Confidential Information or Highly Confidential Information shall be revealed or disclosed, in whole or in part, directly or indirectly, to any individual described in subparagraphs 4(b)-(e) and 5(b)-(e) until that individual has been given a copy of this Order and has duly completed and signed an undertaking in the form attached hereto as Exhibit A, the original of which shall be retained, until the conclusion of this action including all appeals, by counsel for each party who intends to or does disclose to such individual any Confidential Information or Highly Confidential Information.

(c)     Before individuals under subparagraphs 4(b) and 5(b) may have access to Confidential Information or Highly Confidential Information, the Receiving Party must submit to the Producing Party the individual's signed undertaking as well as the individual's curriculum vitae setting forth his or her name, address, qualifications and relevant work experience, including, but not limited to, the identity of any company in the telecommunications industry for whom said individual has consulted or worked during the last five (5) years.  If the Producing Party does not object in writing, within five (5) business days from receipt of the undertaking,

Confidential Information or Highly Confidential Information may then be disclosed to the retained consultant or former employee. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue. If the issue cannot be resolved, the Producing Party has fifteen (15) days from receipt of the undertaking to bring a motion to preclude the retained consultant or former employee from viewing the Producing Party's Confidential Information or Highly Confidential Information. If the Producing Party does not bring such a timely motion, Confidential Information or Highly Confidential Information may be disclosed to the retained consultant or former employee.

(d)     Pursuant to subparagraph 6(c), the disclosure of the identity of a consulting expert will not be a waiver of any privilege or right to withhold from production that applies to communications or work product. Furthermore, the parties agree that by stipulating to the entry of this Protective Order; the parties do not intend to modify in any way the normal discovery rules applicable to consulting experts, or other agreements reached between the parties regarding such discovery.

7.     In addition to the terms set forth in paragraphs 4 through 6 herein governing the disclosure of Confidential Information or Highly Confidential Information, information or materials that contain, embody, or otherwise reflect source code of a party or a third party subpoenaed for such source code in one or more of the above captioned cases shall be provided the following further protections:

(a)     Any and all such source code, except for hard (non-electronic) copies, shall be stored and viewed only at the offices of one (1) agreed-upon source code custodian ("Source Code Custodian"). The source code shall initially be deposited at a facility in the Los Angeles metropolitan region. After 45 days, the source code shall be transferred to a facility in

11

the Dallas metropolitan region.  Where source code is deposited by a third party, this subparagraph may be modified by written agreement of the parties and the third party depositing source code; in all other cases, this subparagraph may be modified by written agreement of the parties.

(b)     Subject to subparagraphs (c) and (d), any source code produced in electronic form shall be stored and viewed only at the offices of the Source Code Custodian and shall be maintained in a secured, locked area.  No electronic copies of source code shall be made.  Any such source code shall only be viewed or analyzed on a stand-alone computer (a computer that is not connected to any internal or external computer or computer network) located within the above-described locations.  The Source Code Custodian shall maintain a Source Code Access Log identifying, for each and every time any source code is viewed, accessed or analyzed: (1) the name of each person who accessed the code; (2) the date and time of access; (3) the length of time of access; and (4) whether any hard (non-electronic) copies of any portion of the code were copied and the portion of the code copied.  The Receiving Party reviewing source code shall be allowed to make hard (non-electronic) copies of material that they, in good faith, consider relevant.  The parties shall negotiate reasonable limitations on the amount of source code that is released by Producing Party at any given time.

(c)     Any hard (non-electronic) copies of source code shall be stored and viewed only within the United States at:

(i)     a secured, locked area in one of the offices of the Source Code Custodian, each such location within the United States, provided the hard (non-electronic) copies are marked with the designation "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY";

(ii)     the Court;

12

(iii)     the site where any deposition relating to the source code is taken;

(iv)     any intermediate location reasonably necessary to transport the information (e.g., a hotel prior to the deposition.)

(d)     For each and every hard (non-electronic) copy of any source code, or any portion of any source code, the Source Code Custodian shall maintain a log detailing the location of the copy.  Excessive reproduction of source code should be avoided.

(e)     Prior to the Receiving Party taking possession of a hard (non-electronic) copy of source code as provided for under this paragraph, the Receiving Party shall inform the Producing Party as to specifically what portions of source code it plans to take into its possession.  The Producing Party shall then have twenty-four (24) hours if informed on a weekday, or seventy two (72) hours if informed on a weekend in which to object in writing to the Receiving Party as to the extent or relevance of the source code the reviewing party seeks to possess.  If objection is made, the parties shall meet and confer in good faith within three (3) business days and attempt to resolve the objection.  If the objection is not resolved, the Producing Party shall have five (5) business days after the conference to file a motion with the Court for relief from production of the subject portions of source code.  The subject portions of source code shall be retained by the Producing Party, pending the court's resolution of the motion.

(f)     To the extent any source code becomes an exhibit to a deposition, one copy of the exhibit may be maintained at the U.S. office of outside counsel of record for each party in a secure, locked area.  Counsel shall not designate source code as an exhibit solely for authentication purposes and shall only designate as an exhibit that portion of source code reasonably necessary for questioning.

13

8.      Designation of confidential Information or Highly Confidential Information as "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" shall constitute a representation that such information has been reviewed by an attorney for the Producing Party and that there is a valid basis for such designation.  Subject to the conditions set forth in Paragraph 7, Confidential Information or Highly Confidential Information shall be maintained by the Receiving Party under the overall supervision of outside counsel.  The attorneys of record for the parties shall exercise best efforts to ensure that the information and documents governed by this Protective order are (i) used only for the purposes set forth herein, and (ii) disclosed only to authorized persons.  Moreover, any person in possession of Confidential Information or Highly Confidential Information shall exercise reasonably appropriate care with regard to the storage, custody or use of such Confidential Information or Highly Confidential Information in order to ensure that the confidential or restricted nature of the same is maintained.

9.      It is the intention of this Protective Order that the following categories of information shall not be and should therefore not be designated as Confidential Information or Highly Confidential Information: (a) any information that at the time of its disclosure in this action is part of the public domain by reason of publication or otherwise; (b) any information that after its disclosure in this action has become part of the public domain by reason of publication or otherwise though no act, omission or fault of the Receiving Party; (c) any information that at the time of its disclosure in this action is rightfully in the possession of the Receiving Party, its trial counsel or any expert retained by or for the Receiving Party under no obligations of confidence to any third party with respect to that information; or (d) any information that after its disclosure in this action is rightfully received by the Receiving Party, its

trial counsel or any expert retained by or for the Receiving Party under no obligations of

confidence or otherwise from any third party having the right to make such disclosure. During

the pendency of this action, any disputes as to whether information is confidential under the

terms of this Order shall be resolved according to the procedure set forth in paragraph 10 hereof.

10.    If a party disagrees with any Confidential Information or Highly Confidential

Information designation, such party shall first make its objection known to the Producing Party

and request a change of designation. The parties shall first try to dispose of such dispute in good

faith on an informal basis. If the dispute cannot be resolved, the party challenging the

designation may request appropriate relief from the Court no sooner than five (5) days following

the service of a written notice of disagreement. The burden of proving that information has been

properly designated as Confidential Information or Highly Confidential Information is on the

party making such designation. Until a determination by the Court, the information in issue shall

be treated as Confidential Information or Highly Confidential Information and subject to the

terms of this Order. Any failure to object to any material being designated as Confidential

Information or Highly Confidential Information shall not be construed as an admission by any

non-designating party that the material constitutes or contains a trade secret or other confidential

information.

11.    During the course of preparing for a deposition or testimony, unless otherwise

entitled to access under this Protective Order, a fact deponent/witness may be shown

Confidential Information or Highly Confidential Information from another party's documents

strictly limited to those documents which on their face reveal that they were authored or received

by the deponent/witness in the normal course of business and outside the context of this

litigation. This shall not preclude a Producing Party from showing documents that it has

15

produced to its own witnesses and deponents, regardless whether the Producing Party has designated the document(s) it produced as Confidential and regardless whether such person was the author or a recipient of the document.

12.     At the deposition of a third party or former employee of a Producing Party, such third party or former employee of a Producing Party may be shown documents designated as Confidential only if the document was authored by or received by that third party or former employee.

13.     Any person receiving Confidential Information or Highly Confidential Information shall not disclose such information to any person who is not entitled to receive such information under this Order.  If Confidential Information or Highly Confidential Information is disclosed to any person not entitled to receive disclosure of such information under this Order, the person responsible for the disclosure will inform counsel for the Producing Party and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort to receive such material and to prevent further disclosure by the person who received such information.

14.     Written material constituting or revealing Confidential Information or Highly Confidential Information, when filed with the Court in this action for any reason, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an indication of the nature of the contents of such sealed envelope or other container, a designation in the form set forth in paragraphs 4 or 5 hereof, and a statement substantially in the following form:

> HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
> FILED UNDER SEAL PURSUANT TO COURT ORDER

Civil Action No. [appropriate case number][TJW ]

15.     The Clerk of the Court is directed to place and maintain under seal in accordance with this Order any such pleading or other document filed with or delivered to this Court pursuant to Paragraph 14 or any other provision thereof.

16.     Nothing herein shall prevent disclosure beyond the terms of this Order if the party producing Confidential Information or Highly Confidential Information consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders or permits such disclosure

17.     The inadvertent production in discovery of any privileged or otherwise protected or exempted information, as well as the inadvertent production in discovery of information without an appropriate designation of confidentiality, shall not be deemed a waiver or impairment of any claim or privilege or protection including but not limited to the attorney-client privilege, the protection afforded to work-product materials or the subject matter thereof, or the confidential nature of any such information, provided that the Producing Party shall promptly notify the Receiving Party in writing when inadvertent production is discovered. Upon receiving written notice from the Producing Party that privileged information or work-product material has been inadvertently produced, all such information, and all copies thereof, shall be returned to counsel for the Producing Party and the Receiving Party shall not use such information for any purpose until further Order of the Court.

18.     Any violation of the terms of this Protective Order shall be punishable by money damages, interim or final injunctive or other equitable relief, sanctions, contempt of court citation, or such other or additional relief as deemed appropriate by the Court.

17

19.     Until such time as this Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

20.     Third parties who produce information in this action may avail themselves of the provisions of this Protective Order, and discovery materials produced by third parties shall then be treated by the parties in conformance with this Protective Order.

21.     By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case.  Any person or party subject to this order that may be subject to a motion to disclose another party's information designated Confidential or Highly Confidential pursuant to this order, shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether that information should be disclosed.

22.     In the event that any of the parties (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a party, or (c) is served with any other legal process by a person not a party to this litigation, and is requested to produce or otherwise disclose discovery material that is designated as Confidential by another party, the party subpoenaed or served in accordance with this paragraph shall object to production of the Confidential material and shall give prompt written notice to the Producing Party.   Should the person seeking access to the Confidential material take action against the party covered by this Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Order.  Nothing in this Order shall be construed as requiring production of Confidential material covered by this Order

23.    (a)    Within sixty (60) days after filing of the final judgment in this action, or if such judgment is appealed from, entry of a mandate affirming such final judgment, all Confidential Information or Highly Confidential Information shall be destroyed by all Receiving Parties or shall be returned to the Producing Party at the written election of the Producing Party which election shall be made within twenty days of the filing of the aforementioned final judgment or mandate.  If any Receiving Party destroys any such Confidential Information or Highly Confidential Information, that party shall inform the Producing Party in writing.

(b)    Notwithstanding the foregoing, one designated outside counsel of record for each party may maintain in its files one copy of each affidavit, affirmation, certification, declaration, expert report, brief, record on appeal, notice of motion, deposition transcript, exhibit to a deposition or affidavit (or the like), exhibit at a hearing or trial, pleading, discovery request, stipulation, correspondence between counsel for the parties, written response to a discovery request or any other document filed with the Court and the court transcript, consisting of or containing Confidential Information or Highly Confidential Information.

24.    This Order may be amended with leave of the Court by the agreement of counsel for the parties in the form of a stipulation that shall be filed in this action.

25.    This Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an Order of the Court.

26.    At the conclusion of the present action, the Court shall retain jurisdiction to enforce the terms of this Order.

SO ORDERED this _____ day of _____, 2007.

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |

I, _____, hereby declare that:

1.      I have carefully read and understand the foregoing Protective Order (the "Order") of the United States District Court for the Eastern District of Texas, in the above-captioned matters.

Dallas 236804v1

2.     I agree that I will be bound by and will comply with all of the provisions of this Order and I will make no disclosures of Confidential Information or Highly Confidential Information to any person who is not permitted to have access to such Confidential Information or Highly Confidential Information by this Order, as applicable.

3.     Upon final determinant of this action, I will destroy all Confidential Information or Highly Confidential Information received by me within sixty (60) days after filing of the final order or mandate as described in paragraph 21(a), or I will return such Confidential Information or Highly Confidential Information within sixty (60) days to the Producing Party.  If I destroy such Confidential Information or Highly Confidential Information, I agree to send a letter to the Producing Party confirming the same.

4.     I understand that a violation of this undertaking is punishable as a contempt of court and hereby submit to the jurisdiction of this Court for the purpose of enforcement of this order.

5.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____        _____

                                         [signature]

                                         _____

                                         [print or type name]

                                           Title:

                                           Business Affiliation

:

                                           Address:

                                           Phone:

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

## PROTECTIVE ORDER

WHEREAS, Plaintiff Rembrandt Technologies, LP ("Rembrandt"), and Defendants

Charter Communications, Inc., Charter Communications Operating, LLC (collectively,

"Charter"), and CoxCom, Inc. ("CoxCom") in the 223 and 507 cases, Defendants Time Warner

Cable, Inc., Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner

Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse Partnership

(collectively, "Time Warner") in the 224 and 369 cases, and Defendants Comcast Corporation,

Comcast Cable Communications, LLC, and Comcast of Plano LP (collectively, "Comcast") in

the 506 case, through counsel, stipulate to entry of this Protective Order ("Order") in their

respective case or cases pursuant to Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or

dissemination of confidential information; and

     **WHEREAS**, Rembrandt, Charter, CoxCom, Time Warner, and Comcast are collectively

referred to herein as the "parties;" and

     **WHEREAS,** the parties recognize that confidential information is being produced for

use in this civil action;

     IT IS HEREBY ORDERED that the following provisions of this Order shall govern the

treatment of confidential information produced by a party ("Producing Party")[1] to any other

party ("Receiving Party") in the course of this civil action:

     1.     The term "Confidential Information" as used in this Order includes all

information and tangible things that constitute or disclose trade secrets or other confidential or

proprietary information of one of the parties.  Confidential Information may be contained in

discovery information or materials produced or obtained in this action by or through any means

and by or through any person or entity. The Confidential Information contained therein and all

copies, recordings, abstracts, excerpts, analyses or other writings that contain, reveal or

otherwise disclose such Confidential Information shall also be deemed Confidential Information.

---

[1] The parties agree that all references to "Producing Party" in this Protective Order be construed to include third parties producing documents in one or more of these cases.

2.      Confidential Information shall be disclosed, disseminated and used by the Receiving Party only for purposes of litigation between the parties to this action.  Except with the prior written consent of the Producing Party or upon prior order of this Court, Confidential Information shall not be disclosed except in accordance with the terms, conditions, and restrictions of this Order

3**.**      Produced documents, interrogatory responses, responses to requests for admission and other documents containing "Confidential Information" shall be marked by conspicuously affixing a legend, which includes the words "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY", as appropriate, on each page containing Confidential Information at the time such documents are produced or such information is disclosed (or on the cover or container of computer storage media, such as discs or tapes).  The parties may designate material other than the produced documents as containing Confidential Information in the following manner:

(a)      Testimony or information disclosed at a deposition that contains Confidential Information or Highly Confidential Information may be designated by indicating on the record at the deposition the portions of the testimony which contain such information that is to be made subject to the provisions of this Order.  Alternatively, a Producing Party may designate testimony or information disclosed at a deposition, including exhibits, that contains Confidential Information or Highly Confidential Information by notifying all parties in writing, within fifteen (15) days after the Producing Party's receipt of the transcript, of the specific pages and lines of the transcript that contain such information.  Whether or not designation is made at the time of a deposition, accessibility to each transcript (and the information contained therein) of any deposition in its entirety shall be limited to outside counsel of record and designated in-

3

house counsel only, from the taking of the deposition until fifteen (15) days after the actual

receipt of the transcript by the Producing Party, or until receipt of the notice referred to in this

paragraph, whichever occurs sooner.  At the expiration of the said fifteen (15) day period, unless

notice hereunder to the contrary is given at the time of the deposition or prior to the expiration of

said period, the entire transcript shall be deemed non-confidential.

(b)      Confidential Information or Highly Confidential Information contained in

any affidavits, briefs, memoranda or other papers filed with the Court in this action may be

designated as Confidential Information or Highly Confidential Information by indicating on the

face of such documents that one or more parties considers them to contain such information.

4.      The parties may designate as HIGHLY CONFIDENTIAL--ATTORNEYS' EYES

ONLY any materials that qualify for protection under the standards developed under Fed. R.

Civ. P. 26(c), but not including those materials which qualify for the designation

"CONFIDENTIAL" under paragraph 5.  Subject to the provisions of paragraphs 6 and 7 herein,

material designated as HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY, and any

summary, description or report of the information contained in such materials, may be disclosed

only to the following persons:

(a)      the Court, persons employed by the Court, and stenographers transcribing

the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b)      technical and damages consultants and experts who are not current

employees of any party in this matter and who have been retained by counsel to provide

assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)     graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d)     source code escrow agents, photocopy, document imaging and database services, and consultants retained by counsel to set up**,** maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases;

(e)     John Meli, Executive Vice President and General Counsel of Rembrandt, and one in-house counsel for each of Charter, CoxCom, Time Warner, and Comcast (following identification of each in-house counsel to each of the other parties and approval by the other parties, such approval not to be unreasonably withheld); and two (2) paralegals and/or clerical employees assisting each of the identified in-house counsel; and

(f)     the parties' outside counsel of record in this action as specifically set forth below and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action. Any individual outside counsel of record who receives information designated HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY may not participate in patent prosecution for the Receiving Party, and the individual outside counsel who receives any such information may not discuss the information with anyone involved in patent prosecution for the Receiving Party.  Outside counsel of record for the parties are as follows:

**For Rembrandt in the 223 case**:

McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

**For Rembrandt in the 224 case**:

McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

**For Rembrandt in the 369 Case:**

Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

**For Rembrandt in the 506 Case:**

Susman Godfrey LLP

Dallas 236804v1

1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

**For Rembrandt in the 507 Case:**

Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

**For Charter in the 223 and 507 cases:**

Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357

Potter Minton, PC
1100 North College
500 Plaza Tower
Tyler, Texas 75702

**For Coxcom in the 223 and 507 cases:**

> Kilpatrick Stockton LLP
> 1100 Peachtree Street NE, Suite 2800
> Atlanta, Georgia 30309-4530
>
> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Time Warner in the 224 and 369 cases:**

> Kaye Scholer
> 425 Park Avenue
> New York, New York 10022
>
> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Comcast in the 506 case:**

> Keker & Van Nest, LLP
> 710 Sansome Street
> San Francisco, California 94111-1704
>
> Halton & Doan, LLP
> 6500 N. Summerhill Road, Suite 1A
> P.O. Box 6227
> Texarkana, Texas 75505-6277

5.    The parties may designate as CONFIDENTIAL any materials of a financial or accounting nature that qualify for protection under the standards developed under Fed. R. Civ. P. 26(c).  Subject to the provisions of paragraphs 6 and 7 herein, material designated as CONFIDENTIAL, and any summary, description or report of the information contained in such materials, may be disclosed only to the following persons:

(a)     the Court, persons employed by the Court, and stenographers transcribing the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b)     technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)     graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d)     photocopy, document imaging and database services and consultants retained by counsel to set up, maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases;

(e)     John Meli,  and Paul Schneck, Chief Executive Officer of Rembrandt, one in-house counsel and one other employee for each of Charter, CoxCom, Time Warner, and Comcast (following identification of each in-house counsel and each other employee to each of the other parties and approval by the other parties, such approval not to be unreasonably withheld); and two (2) clerical employees assisting each party's in-house counsel and other employee; and

(f)     the parties' outside counsel of record in this action and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action

6.     (a)     A party may exclude from a deposition any person who is not entitled to view Confidential Information or Highly Confidential Information when such information is the subject of examination.

(b)     No Confidential Information or Highly Confidential Information shall be revealed or disclosed, in whole or in part, directly or indirectly, to any individual described in subparagraphs 4(b)-(f) and 5(b)-(f) until that individual has been given a copy of this Order and has duly completed and signed an undertaking in the form attached hereto as Exhibit A, the original of which shall be retained, until the conclusion of this action including all appeals, by counsel for each party who intends to or does disclose to such individual any Confidential Information or Highly Confidential Information.

(c)     Before individuals under subparagraphs 4(b) and 5(b) may have access to Confidential Information or Highly Confidential Information, the Receiving Party must submit to the Producing Party the individual's signed undertaking as well as the individual's curriculum vitae setting forth his or her name, address, qualifications and relevant work experience, including, but not limited to, the identity of any company in the telecommunications industry for whom said individual has consulted or worked during the last five (5) years.  If the Producing Party does not object in writing, within five (5) business days from receipt of the undertaking, Confidential Information or Highly Confidential Information may then be disclosed to the retained consultant or former employee. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue.  If the issue cannot be resolved, the Producing Party has fifteen (15) days from receipt of the undertaking to bring a motion to preclude the retained consultant or former employee from viewing the Producing Party's Confidential Information or Highly Confidential Information.  If the Producing Party does not bring such a timely motion, Confidential Information or Highly Confidential Information may be disclosed to the retained consultant or former employee.

(d)    Pursuant to subparagraph 6(c), the disclosure of the identity of a consulting expert will not be a waiver of any privilege or right to withhold from production that applies to communications or work product.  Furthermore, the parties agree that by stipulating to the entry of this Protective Order; the parties do not intend to modify in any way the normal discovery rules applicable to consulting experts, or other agreements reached between the parties regarding such discovery.

7**.**    In addition to the terms set forth in paragraphs 4 through 6 herein governing the disclosure of Confidential Information or Highly Confidential Information, information or materials that contain, embody, or otherwise reflect source code of a party or a third party subpoenaed for such source code in one or more of the above captioned cases shall be provided the following further protections:

(a)    Any and all such source code, except for hard (non-electronic) copies, shall be stored and viewed only at the offices of one (1) agreed-upon source code custodian ("Source Code Custodian").  The source code shall initially be deposited at a facility in the Los Angeles metropolitan region.  After 45 days, the source code shall be transferred to a facility in the Dallas metropolitan region.  Where source code is deposited by a third party, this subparagraph may be modified by written agreement of the parties and the third party depositing source code; in all other cases, this subparagraph may be modified by written agreement of the parties.

(b)    Subject to subparagraphs (c) and (d), any source code produced in electronic form shall be stored and viewed only at the offices of the Source Code Custodian and shall be maintained in a secured, locked area.  No electronic copies of source code shall be made.  Any such source code shall only be viewed or analyzed on a stand-alone computer (a

computer that is not connected to any internal or external computer or computer network) located within the above-described locations. The Source Code Custodian shall maintain a Source Code Access Log identifying, for each and every time any source code is viewed, accessed or analyzed: (1) the name of each person who accessed the code; (2) the date and time of access; (3) the length of time of access; and (4) whether any hard (non-electronic) copies of any portion of the code were copied and the portion of the code copied. The Receiving Party reviewing source code shall be allowed to make hard (non-electronic) copies of material that they, in good faith, consider relevant. The parties shall negotiate reasonable limitations on the amount of source code that is released by Producing Party at any given time.

(c)  Any hard (non-electronic) copies of source code shall be stored and viewed only within the United States at:

(i)  a secured, locked area in one of the offices of the Source Code Custodian, each such location within the United States, provided the hard (non-electronic) copies are marked with the designation "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY";

(ii)  the Court;

(iii)  the site where any deposition relating to the source code is taken;

(iv)  any intermediate location reasonably necessary to transport the information (e.g., a hotel prior to the deposition.)

(d)  For each and every hard (non-electronic) copy of any source code, or any portion of any source code, the Source Code Custodian shall maintain a log detailing the location of the copy. Excessive reproduction of source code should be avoided.

12

(e)     Prior to the Receiving Party taking possession of a hard (non-electronic) copy of source code as provided for under this paragraph, the Receiving Party shall inform the Producing Party as to specifically what portions of source code it plans to take into its possession.  The Producing Party shall then have twenty-four (24) hours if informed on a weekday, or seventy two (72) hours if informed on a weekend in which to object in writing to the Receiving Party as to the extent or relevance of the source code the reviewing party seeks to possess.  If objection is made, the parties shall meet and confer in good faith within three (3) business days and attempt to resolve the objection.  If the objection is not resolved, the Producing Party shall have five (5) business days after the conference to file a motion with the Court for relief from production of the subject portions of source code.  The subject portions of source code shall be retained by the Producing Party, pending the court's resolution of the motion.

(f)     To the extent any source code becomes an exhibit to a deposition, one copy of the exhibit may be maintained at the U.S. office of outside counsel of record for each party in a secure, locked area.  Counsel shall not designate source code as an exhibit solely for authentication purposes and shall only designate as an exhibit that portion of source code reasonably necessary for questioning.

8.     Designation of confidential Information or Highly Confidential Information as "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" shall constitute a representation that such information has been reviewed by an attorney for the Producing Party and that there is a valid basis for such designation.  Subject to the conditions set forth in Paragraph 7, Confidential Information or Highly Confidential Information shall be maintained by the Receiving Party under the overall supervision of outside counsel.  The

13

attorneys of record for the parties shall exercise best efforts to ensure that the information and

documents governed by this Protective order are (i) used only for the purposes set forth herein,

and (ii) disclosed only to authorized persons.  Moreover, any person in possession of

Confidential Information or Highly Confidential Information shall exercise reasonably

appropriate care with regard to the storage, custody or use of such Confidential Information or

Highly Confidential Information in order to ensure that the confidential or restricted nature of

the same is maintained.

9.      It is the intention of this Protective Order that the following categories of

information shall not be and should therefore not be designated as Confidential Information or

Highly Confidential Information: (a) any information that at the time of its disclosure in this

action is part of the public domain by reason of publication or otherwise; (b) any information

that after its disclosure in this action has become part of the public domain by reason of

publication or otherwise though no act, omission or fault of the Receiving Party; (c) any

information that at the time of its disclosure in this action is rightfully in the possession of the

Receiving Party, its trial counsel or any expert retained by or, for the Receiving Party under no

obligations of confidence to any third party with respect to that information; or (d) any

information that after its disclosure in this action is rightfully received by the Receiving Party, its

trial counsel or any expert retained by or for the Receiving Party under no obligations of

confidence or otherwise from any third party having the right to make such disclosure.  During

the pendency of this action, any disputes as to whether information is confidential under the

terms of this Order shall be resolved according to the procedure set forth in paragraph 10 hereof.

10.     If a party disagrees with any Confidential Information or Highly Confidential

Information designation, such party shall first make its objection known to the Producing Party

and request a change of designation. The parties shall first try to dispose of such dispute in good faith on an informal basis. If the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court no sooner than five (5) days following the service of a written notice of disagreement. The burden of proving that information has been properly designated as Confidential Information or Highly Confidential Information is on the party making such designation. Until a determination by the Court, the information in issue shall be treated as Confidential Information or Highly Confidential Information and subject to the terms of this Order. Any failure to object to any material being designated as Confidential Information or Highly Confidential Information shall not be construed as an admission by any non-designating party that the material constitutes or contains a trade secret or other confidential information.

11. During the course of preparing for a deposition or testimony, unless otherwise entitled to access under this Protective Order, a fact deponent/witness may be shown Confidential Information or Highly Confidential Information from another party's documents strictly limited to those documents which on their face reveal that they were authored or received by the deponent/witness in the normal course of business and outside the context of this litigation. This shall not preclude a Producing Party from showing documents that it has produced to its own witnesses and deponents, regardless whether the Producing Party has designated the document(s) it produced as Confidential and regardless whether such person was the author or a recipient of the document.

12. At the deposition of a third party or former employee of a Producing Party, such third party or former employee of a Producing Party may be shown documents designated as

Confidential only if the document was authored by or received by that third party or former employee.

13.     Any person receiving Confidential Information or Highly Confidential Information shall not disclose such information to any person who is not entitled to receive such information under this Order.  If Confidential Information or Highly Confidential Information is disclosed to any person not entitled to receive disclosure of such information under this Order, the person responsible for the disclosure will inform counsel for the Producing Party and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort to receive such material and to prevent further disclosure by the person who received such information.

14.     Written material constituting or revealing Confidential Information or Highly Confidential Information, when filed with the Court in this action for any reason, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an indication of the nature of the contents of such sealed envelope or other container, a designation in the form set forth in paragraphs 4 or 5 hereof, and a statement substantially in the following form:

<div align="center">

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO COURT ORDER
Civil Action No. [appropriate case number][TJW ]

</div>

15.     The Clerk of the Court is directed to place and maintain under seal in accordance with this Order any such pleading or other document filed with or delivered to this Court pursuant to Paragraph 14 or any other provision thereof.

16.     Nothing herein shall prevent disclosure beyond the terms of this Order if the party producing Confidential Information or Highly Confidential Information consents in writing to

<div align="center">16</div>

such disclosure, or if the Court, after notice to all affected parties, orders or permits such

disclosure

17.     The inadvertent production in discovery of any privileged or otherwise protected

or exempted information, as well as the inadvertent production in discovery of information

without an appropriate designation of confidentiality, shall not be deemed a waiver or

impairment of any claim or privilege or protection including but not limited to the attorney-

client privilege, the protection afforded to work-product materials or the subject matter thereof,

or the confidential nature of any such information, provided that the Producing Party shall

promptly notify the Receiving Party in writing when inadvertent production is discovered. Upon

receiving written notice from the Producing Party that privileged information or work-product

material has been inadvertently produced, all such information, and all copies thereof, shall be

returned to counsel for the Producing Party and the Receiving Party shall not use such

information for any purpose until further Order of the Court.

18.     Any violation of the terms of this Protective Order shall be punishable by money

damages, interim or final injunctive or other equitable relief, sanctions, contempt of court

citation, or such other or additional relief as deemed appropriate by the Court.

19.     Until such time as this Protective Order has been entered by the Court, the parties

agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

20.     Third parties who produce information in this action may avail themselves of the

provisions of this Protective Order, and discovery materials produced by third parties shall then

be treated by the parties in conformance with this Protective Order.

17

21.     By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case.  Any person or party subject to this order that may be subject to a motion to disclose another party's information designated Confidential or Highly Confidential pursuant to this order, shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether that information should be disclosed.

22.     In the event that any of the parties (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a party, or (c) is served with any other legal process by a person not a party to this litigation, and is requested to produce or otherwise disclose discovery material that is designated as Confidential by another party, the party subpoenaed or served in accordance with this paragraph shall object to production of the Confidential material and shall give prompt written notice to the Producing Party.   Should the person seeking access to the Confidential material take action against the party covered by this Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Order.  Nothing in this Order shall be construed as requiring production of Confidential material covered by this Order

23.     (a)     Within sixty (60) days after filing of the final judgment in this action, or if such judgment is appealed from, entry of a mandate affirming such final judgment, all Confidential Information or Highly Confidential Information shall be destroyed by all Receiving Parties or shall be returned to the Producing Party at the written election of the Producing Party which election shall be made within twenty days of the filing of the aforementioned final

judgment or mandate. If any Receiving Party destroys any such Confidential Information or Highly Confidential Information, that party shall inform the Producing Party in writing.

(b) Notwithstanding the foregoing, one designated outside counsel of record for each party may maintain in its files one copy of each affidavit, affirmation, certification, declaration, brief, record on appeal, notice of motion, deposition transcript, exhibit to a deposition or affidavit (or the like), exhibit at a hearing or trial, pleading, discovery request, stipulation, correspondence between counsel for the parties, written response to a discovery request or any other document filed with the Court and the court transcript, consisting of or containing Confidential Information or Highly Confidential Information. The Receiving Party shall be entitled to retain one copy, and outside counsel of record for each party shall be entitled to retain copies of any expert report containing any Confidential Information or Highly Confidential Information of the Producing Party, which is not in the public docket file. All such material shall remain subject to the terms of this Order.

24.     This Order may be amended with leave of the Court by the agreement of counsel for the parties in the form of a stipulation that shall be filed in this action.

25.     This Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an Order of the Court.

26.     At the conclusion of the present action, the Court shall retain jurisdiction to enforce the terms of this Order.

SO ORDERED this _____ day of _____, 2007.

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

I, _____, hereby declare that:

1.     I have carefully read and understand the foregoing Protective Order (the "Order") of the United States District Court for the Eastern District of Texas, in the above-captioned matters.

1

2.      I agree that I will be bound by and will comply with all of the provisions of this Order and I will make no disclosures of Confidential Information or Highly Confidential Information to any person who is not permitted to have access to such Confidential Information or Highly Confidential Information by this Order, as applicable.

3.      Upon final determinant of this action, I will destroy all Confidential Information or Highly Confidential Information received by me within sixty (60) days after filing of the final order or mandate as described in paragraph 21(a), or I will return such Confidential Information or Highly Confidential Information within sixty (60) days to the Producing Party.  If I destroy such Confidential Information or Highly Confidential Information, I agree to send a letter to the Producing Party confirming the same.

4.      I understand that a violation of this undertaking is punishable as a contempt of court and hereby submit to the jurisdiction of this Court for the purpose of enforcement of this order.

5.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____

_____

[signature]

_____

[print or type name]

Title:

:

Business Affiliation

Address:

Phone:

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |

## NOTICE REGARDING ELECTRONIC PRODUCTION

At the Scheduling Conference, the Parties requested an additional three weeks to reach an

agreement on the form of production for documents produced electronically. In its April 19,

2007 Order Regarding Protective Order and Document Production (Doc. No. 68), the Court gave

the parties three weeks to reach agreement on the form of electronic production or inform the

Court of any remaining disputes.  The Parties have reached agreement on how they will produce

documents electronically.

DATED: April 24, 2007                          Respectfully submitted,


/s/ Brooke A.M. Taylor
Max L. Tribble, Jr.
State Bar No. 20213950
Tibor L. Nagy
State Bar 24041562
Email: mtribble@susmangodfrey.com
Email: tnagy@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel: 713-651-9366
Fax: 713-654-6666

**OF COUNSEL:**
Edgar Sargent
WA State Bar No. 28283
Email: esargent@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: 206-516-3880
Fax: 206-516-3883

Brooke A.M. Taylor
WA State Bar No. 33190
Email: btaylor@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: 206-516-3880
Fax: 206-516-3883

Dallas 237132v1

/s/ Sam Baxter
Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopier:  (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4006
Telecopier:  (214) 978-4044
jcarter@mckoolsmith.com

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

3

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Calvin Capshaw
State Bar No. 03783900
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
aspangler@mailbmc.com

Franklin Jones, Jr.
State Bar No. 00000055
**JONES & JONES, INC.**
201 W. Houston Street
P. O. Drawer 1249
Marshall, TX  75670
Telephone:  903-938-4395
Telecopier:  903-938-3360
maizieh@millerfirm.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

Dallas 237132v1

<u>/s/ Michael E. Jones</u>
Michael E. Jones
State Bar No. 10929400
Diane DeVasto
**POTTER MINTON, P.C.**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
Telephone:  (903) 597-8311
Telecopier:  (903) 593-0846
mikejones@potterminton.com

David S. Benyacar
Michael A. Rogoloff
**KAYE SCHOLER**
425 Park Avenue
New York, NY 10022
Tel: 212-836-8000
Fax: 212-836-8689
dbenyacar@kayescholer.com

**ATTORNEYS FOR DEFENDANT
TIME WARNER CABLE INC.**

5

<u>/s/ Jennifer Haltom Doan</u>
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
**HALTOM & DOAN, LLP**
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Tel: 903-255-1000
Fax: 903-255-0800

Brian Ferral
Leo Lam
Asim M. Bhansali
Matthias A. Kamber
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 9411-1704
Tel: 415-676-2235
Fax: 415-397-7188

**ATTORNEYS FOR DEFENDANTS
COMCAST CORPORATION,
COMCAST CABLE,
COMMUNICATIONS, LLC, and
COMCAST OF PLANO, LP**

6

<u>/s/ Michael E. Jones</u>
Bradford P. Lyerla, Attorney in Charge
blyerla@marshallip.com
Kevin D. Hogg
khogg@marshallip.com
William J. Kramer
wkramer@marhsllip.com
Paul B. Stephens
pstephens@marshallip.com
**MARSHALL, GERSTEIN & BORUN LLP**
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: 312-474-6300
Fax: 312-474-0448

Michael E. Jones
State Bar No. 10929400
**POTTER MINTON, PC**
110 North College
500 Plaza Tower
Tyler, TX 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANTS
CHARTER COMMUNICATIONS, INC.
CHARTER COMMUNICATIONS
OPERATING, LLC**

7

/s/ Michael E. Jones
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
**KILPATRICK STOCKTON LLP**
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309-4530
Tel: 404-815-6214
Fax: 404-815-6555

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
**POTTER MINTON, P.C.**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, TX 75710
Tel: 903-597-8311
Fax: 903-593-0846

**ATTORNEYS FOR DEFENDANT
COXCOM, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 24th day of April 2007.

/s/ Brooke A.M. Taylor
Brooke A.M. Taylor

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 24th day of April 2007.


<u>/s/ Sam Baxter</u>
Sam Baxter

Dallas 237132v1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:06cv00369-TJW |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| TIME WARNER CABLE, INC., | § | |
| | § | |
| Defendant, | § | |

## [PROPOSED] ORDER ON REMBRANDT'S MOTION FOR LEAVE TO AMEND

This Court, having considered the pleadings, hereby GRANTS Rembrandt's Motion for

Leave to Amend to add additional entities to the instant action.

SIGNED this 25th day of April, 2007.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TIME WARNER CABLE INC., TIME )<br>WARNER CABLE LLC, TIME )<br>WARNER NEW YORK CABLE LLC, TIME )<br>WARNER ENTERTAINMENT )<br>COMPANY, LP, and TIME WARNER )<br>ENTERTAINMENT-ADVANCE/NEWHOUSE )<br>PARTNERSHIP, )<br>)<br>Defendants. )<br>_____ ) | Case No. 2:06-CV-369-TJW-CE<br><br>**JURY TRIAL REQUESTED** |

## FIRST AMENDED COMPLAINT

Plaintiff Rembrandt Technologies, LP ("Rembrandt") files this complaint for infringement of United States Patent Nos. 5,008,903; 5,710,761; 5,778,234; 6,131,159 and 6,950,444 under 35 U.S.C. § 271, and in support thereof would respectfully show the Court the following:

## THE PARTIES

1.  Plaintiff Rembrandt is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, PA 19004 and offices at 214 W. Fanin, Marshall, TX 75670.

2.  Defendant Time Warner Cable Inc. ("TWC") is a corporation organized under the laws of the state of Delaware with its principal place of business at 7910 Crescent Executive Drive, Suite 56, Charlotte, North Carolina 28217. TWC's registered agent for service of process in Texas is CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201. TWC is a

national provider of cable television and internet products and services, and regularly conducts and transacts business in Texas and within this judicial district itself (both as Time Warner Cable and/or Road Runner).

3.    Defendant Time Warner Cable LLC ("TWCL"), is a corporation organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, CT 06902.  TWCL's registered agent for service of process is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.    Defendant Time Warner New York Cable LLC ("TWNY") is a corporation organized under the laws of the state of Delaware with its principal place of  business at 7910 Crescent Executive Drive, Suite 56, Charlotte, North Carolina 28217-5511.  TWNY's registered agent for service of process in Texas is CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201.

5.    Defendant Time Warner Entertainment Company, L.P. ("TWE") is a limited partnership organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, Connecticut 06902 in care of Time Warner Cable.  TWE's registered agent for service of process in Texas is CT Corporation Systems at 1021 Main Street, Suite 1150, Houston, Texas 77002.

6.    Defendant Time Warner Entertainment-Advance/Newhouse Partnership ("TWEAN") is a partnership organized under the laws of the state of New York with its principal place of business at 7910 Crescent Executive Drive, Suite 56, Charlotte, North Carolina 28217 in care of TWEAN Texas Cable Partners General Partner LLC.  TWEAN's registered agent for service of process in Texas is CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201.

7.     TWC is the direct or indirect parent of each of TWCL, TWNY, TWE, and TWEAN.  Through one or more of its subsidiaries, affiliates, partners, or other related parties, TWC owns and/or operates cable systems throughout the United States and in the State of Texas (as Time Warner Cable and/or Road Runner).  TWCL, TWNY, TWE, and TWEAN, each directly or through one or more subsidiaries, affiliates, partners, or other related parties own and operate cable systems in Texas and elsewhere.  TWC, TWCL, TWNY, TWE, and TWEAN (collectively, the "Defendants"), directly or through one or more subsidiaries, affiliates, partners, or other related parties, as set forth herein, have each committed and continue to commit tortious acts of patent infringement within and outside of Texas and within this judicial district.

## JURISDICTION AND VENUE

8.     This is an action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1, et seq.  This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a).

9.     This Court has personal jurisdiction over Defendants TWC, TWCL, TWNY, TWE, and TWEAN.  Defendants have conducted and continue to conduct business in the State of Texas. Defendants directly or through subsidiaries or intermediaries, offer for sale, sell, advertise, and market products and services that infringe the patents-in-suit as described more specifically below. Therefore, because Defendants have committed acts of patent infringement in this district, or are otherwise present or doing business in this district, this Court has personal jurisdiction over Defendants.

10.     Venue is proper in this judicial district under 28 U.S.C. §§1391(b), (c), and 1400(b).

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 5,008,903

11.    Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-10 above.

12.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,008,903, entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" ("the '903 patent"). A true copy of the '903 patent is attached as Exhibit A.

13.    The '903 patent was duly and legally issued by the United States Patent and Trademark Office on April 16, 1991, after full and fair examination.

14.    Defendants have directly or indirectly infringed, and are continuing to directly or indirectly infringe, the '903 patent by practicing or causing others to practice, by inducement and contributorily, the inventions claimed in the '903 patent, in this district or otherwise within the United States. For example, Defendants have infringed and continues to infringe the '903 patent by providing high-speed cable modem internet products and services to subscribers.

15.    Upon information and belief, Defendants will continue to infringe the '903 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 5,710,761

16.    Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-10 above.

17.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,710,761, entitled "Error

Control Negotiation Based on Modulation" ("the '761 patent"). A true copy of the '761 patent is attached as Exhibit B.

18.     The '761 patent was duly and legally issued by the United States Patent and Trademark Office on January 20, 1998, after full and fair examination.

19.     Defendants have directly or indirectly infringed, and are continuing to directly or indirectly infringe, the '761 patent by practicing or causing others to practice, by inducement and contributorily, the inventions claimed in the '761 patent, in this district or otherwise within the United States. For example, Defendants have infringed and continues to infringe the '761 patent by providing high-speed cable modem internet products and services to subscribers.

20.     Upon information and belief, Defendants will continue to infringe the '761 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 5,778,234

21.     Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-10 above.

22.     Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,778,234, entitled "Method for Downloading Programs" ("the '234 patent."). A true copy of the '234 patent is attached as Exhibit C.

23.     The '234 patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 1998, after full and fair examination.

24.     Defendants have directly or indirectly infringed, and are continuing to directly or indirectly infringe, the '234 patent by practicing or causing others to practice, by inducement and contributorily, the inventions claimed in the '234 patent, in this district or otherwise within the United States. For example, Defendants have infringed and continues to infringe the '234 patent by providing high-speed cable modem internet products and services to subscribers.

25.     Upon information and belief, Defendants will continue to infringe the '234 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 6,131,159

26.     Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-10 above.

27.     Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 6,131,159, entitled "System for Downloading Programs" ("the '159 patent."). A true copy of the '159 patent is attached as Exhibit D.

28.     The '159 patent was duly and legally issued by the United States Patent and Trademark Office on October 10, 2000, after full and fair examination.

29.     Defendants have directly or indirectly infringed, and are continuing to directly or indirectly infringe, the '159 patent by practicing or causing others to practice, by inducement and contributorily, the inventions claimed in the '159 patent, in this district or otherwise within the United States. For example, Defendants has infringed and continues to infringe the '159 patent by providing high-speed cable modem internet products and services to subscribers.

30. Upon information and belief, Defendants will continue to infringe the '159 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 6,950,444**

31. Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-10 above.

32. Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 6,950,444, entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" ("the '444 patent"). A true copy of the '444 patent is attached as Exhibit E.

33. The '444 patent was duly and legally issued by the United States Patent and Trademark Office on September 27, 2005, after full and fair examination.

34. Defendants have directly or indirectly infringed, and are continuing to directly or indirectly infringe, the '444 patent by practicing or causing others to practice, by inducement and contributorily, the inventions claimed in the '444 patent, in this district or otherwise within the United States. For example, Defendants have infringed and continues to infringe the '444 patent by providing high-speed cable modem internet products and services to subscribers.

35. Upon information and belief, Defendants will continue to infringe the '444 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Rembrandt prays that it have judgment against Defendants TWC, TWCL, TWNY, TWE and TWEAN for the following:

(1) An order that TWC, TWCL, TWNY, TWE and TWEAN have infringed the patents-in-suit;

(2) A permanent injunction enjoining and restraining TWC, TWCL, TWNY, TWE and TWEAN and their agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association therewith, from making, using, offering to sell, selling, and importing into the United States any product, or using, offering to sell, or selling any service, which falls within the scope of any claim of the patents-in-suit;

(3) An award of damages;

(4) An award of increased damages pursuant to 35 U.S.C. § 284;

(5) An award of all costs of this action, including attorneys' fees and interest; and

(6) Such other and further relief, at law or in equity, to which Rembrandt is justly entitled.

## JURY DEMAND

Rembrandt hereby demands a jury trial on all issues appropriately triable by a jury.


Dated: April 26, 2007     Respectfully submitted,

         **SUSMAN GODFREY L.L.P.**


         /s/ Brooke A. M. Taylor
         Max L. Tribble, Jr.
         Lead Attorney
         State Bar No. 20213950
         1000 Louisiana Street, Suite 5100
         Houston, Texas 77002-5096

Telephone: (713) 651-9366
Fax: (713) 654-6666
E-mail: mtribbble@susmangodfrey.com

Brooke A.M. Taylor
State Bar No. 33190 (Washington)
E-mail: btaylor@susmangodfrey.com
Edgar Sargent
State Bar No. 28283 (Washington)
E-mail: esargent@susmangodfrey.com
Matthew R. Berry
State Bar No. 37364 (Washington)
E-mail: mberry@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Fax: (206) 516-3883

Tibor L. Nagy
State Bar No. 24041562
E-mail: tnagy@susmangodfrey.com
SUSMAN GODFREY L.L.P.
590 Madison Avenue
New York, NY 10022-8521
Telephone: (212) 336-8330
Fax: (212) 516-3883

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Brooke A. M. Taylor
Brooke A. M. Taylor

# United States Patent [19]

## Betts et al.

[11] **Patent Number:** 5,008,903

[45] **Date of Patent:** Apr. 16, 1991

[54] **ADAPTIVE TRANSMIT PRE-EMPHASIS FOR DIGITAL MODEM COMPUTED FROM NOISE SPECTRUM**

[75] Inventors: **William L. Betts**, St. Petersburg; **James J. DesRosiers**, Tampa, both of Fla.

[73] Assignee: **A.T. & T. Paradyne**, Largo, Fla.

[21] Appl. No.: **357,056**

[22] Filed: **May 25, 1989**

[51] Int. Cl.⁵ ................................................ H04L 7/00

[52] U.S. Cl. ..................................... **375/60**; 375/14

[58] Field of Search ............... 375/7, 8, 12, 13, 14, 375/15, 60, 109; 333/18, 28 R; 364/724; 371/64, 34; 455/24

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,593,142 | 7/1971 | Freeny | 375/43 |
| 4,053,837 | 10/1977 | Ryan et al. | 375/15 |
| 4,433,425 | 2/1984 | de Jaeger | 375/13 |
| 4,483,009 | 11/1984 | Honda et al. | 375/14 |
| 4,489,416 | 12/1984 | Stuart | 375/13 |
| 4,550,415 | 10/1985 | Debus, Jr. et al. | 375/14 |
| 4,797,898 | 1/1989 | Martinez | 375/12 |

*Primary Examiner*—Douglas W. Olms
*Assistant Examiner*—Stephen Chin
*Attorney, Agent, or Firm*—Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele & Richard

[57] **ABSTRACT**

An apparatus and method calculates pre-emphasis coefficients for a transmitting modem based upon the noise spectrum as it is received at the receiving modem. A noise spectrum analysis circuit calculates a difference between the best-fit transmitted data and the actually received data. This difference is used to compute a discrete Fourier transform of the noise spectrum, which is transmitted back to the transmitting modem on the secondary channel. This data is used to calculate filter coefficients for the transmitting modem.

**21 Claims, 4 Drawing Sheets**





FIG.1a        FIG.1b        FIG.1c



FIG.2a        FIG.2b        FIG.2c



FIG.3a        FIG.3b        FIG.3c



FIG. 4





*FIG. 6*

$$D = \frac{1}{\text{sample rate}}$$

5,008,903

## ADAPTIVE TRANSMIT PRE-EMPHASIS FOR DIGITAL MODEM COMPUTED FROM NOISE SPECTRUM

### BACKGROUND OF INVENTION

1. Field of Invention

This invention relates to an apparatus for determining a frequency-dependent signal-to-noise ratio in a communications network so as to allow proper equalization in a transmit pre-emphasis mode.

2. Description of the Prior Art

It is well-known in the prior art that a transmitter in a communications network, particularly a multipoint network, should emphasize or amplify certain frequencies so as to compensate for frequency-dependent losses in the communications process. For example, with the use of a telephone line as a communications line, losses are more pronounced at higher frequencies. These losses are typically modelled as a constant negative slope above a given break frequency on a decibels versus frequency plot.

When noise is injected into a communications line subsequent to the high-frequency roll-off of the communications line and the signal rolls off above a break frequency while the noise signal remains constant (thereby resulting in a signal-to-noise ratio which progressively decreases above the break frequency), prior art methods of frequency-dependent analysis of total energy received are adequate as an equalization technique. These methods include fixed pre-emphasis wherein a fixed frequency-dependent boost is included in the communication apparatus, or adaptive pre-emphasis wherein the required frequency-dependent boost is calculated on-line during a periodic training sequence.

However, when noise is injected into a communications line prior to the high frequency roll-off of the communications line and the noise rolls off in parallel to the roll-off of the signals (resulting in a constant signal-to-noise ratio as a function of frequency), prior art methods of frequency-dependent analysis of total energy received are inadequate as an equalization technique.

This inadequacy is due to the fact that a positive gain is applied to higher frequency portions of the total signal. However, in order to keep the total signal energy constant as is required by telephone and other communications line applications, this positive gain in the upper frequency spectrum must be compensated for by a negative gain in the lower frequency spectrum thereby reducing the signal-to-noise ratio in the lower frequencies and resulting in a degradation in performance. This principle is illustrated in more detail by the several drawings of FIGS. 1, 2 and 3.

FIG. 1a illustrates the received transmitter signal and the received noise signal being "flat" across the entire band. The signal model for this spectrum is shown in FIG. 1b wherein the communications line includes no roll-off or other frequency-dependent characteristics and noise is added between the transmitter and the receiver. Such a system requires no frequency-dependent pre-emphasis as is shown by the ideal flat pre-emphasis of FIG. 1c.

FIG. 2a illustrates the received transmitter signal rolling off above a break frequency $w_o$ while the received noise spectrum is "flat" across the entire band. The signal included for this spectrum is shown in FIG.

2b wherein the transmitter signal passes through a channel or communications line thereby being rolled-off before having frequency-independent noise added thereto. The ideal pre-emphasis, whether manually set or periodically calculated on-line, is illustrated in FIG. 2c wherein an increasing gain is applied above the frequency $w_o$. This frequency-dependent pre-emphasis flattens the transmitter signal as received without affecting the noise signal, thereby increasing the signal-to-noise ratio at the frequencies above $w_o$ and improving overall system performance. A slight negative gain may be applied in the lower frequencies so as to keep the total incoming energy constant. This ideal pre-emphasis is accurately calculated by prior art methods.

FIG. 3a illustrates the received transmitter signal and the received noise both rolling off in parallel above break frequency $w_o$. The signal model for this spectrum is shown in FIG. 3c wherein the noise is added to the transmitter signal at the transmitter end and both the transmitter signal and the noise are passed through the channels or communication line thereby having substantially identical attenuation characteristics applied thereto. Therefore, the signal-to-noise ratio remains constant throughout the entire band as is illustrated by the constant vertical distance between the received transmitter signal and the noise. As the signal-to-noise ratio is constant, the ideal signal pre-emphasis is flat or shown in FIG. 3c (or 1c). However, prior art methods of pre-emphasis, either manual or automated, would look to the frequency-dependent energy spectrum of the entire received signal (received transmitter signal plus received noise) and calculate a pre-emphasis similar to that shown in FIG. 2c. This would result in a lowering of the transmitter signal power and the signal-to-noise ratio at frequencies below break frequency $w_o$ and an overall degradation in system performance.

### OBJECTS AND SUMMARY OF THE INVENTION

It is therefore the object of this invention to provide a method and apparatus for automated transmit pre-emphasis calculation which properly accounts for frequency-dependent signal-to-noise ratios.

This apparatus and method uses a noise spectrum generator circuit to calculate a frequency-dependent noise spectrum. This spectrum is transmitted from the receiver to the transmitter (or from the master to the remote in a multipoint system) via the secondary channel. The transmitter uses this information to compute the new pre-emphasis coefficients from its own transmitted spectrum as seen by the receiver and uses the result on its subsequent transmission.

Thus, this and other objects are effectively achieved.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1a, 1b and 1c are illustrative of a communications system with no frequency-dependent attenuation or roll-off.

FIGS. 2a, 2b and 2c are illustrative of a communications system with noise injected subsequent to frequency-dependent attenuation or roll-off.

FIGS. 3a, 3b and 3c are illustrative of a communications system with noise injected prior to frequency-dependent attenuation or roll-off.

FIG. 4 is a schematic of the noise spectrum generator circuit of the present invention.

3

FIG. 5 is a schematic of the transmitter and receiver of the present invention.

FIG. 6 is a schematic of the nine-tap filter of the pre-filter of FIG. 5.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawings in detail wherein like numerals indicate like elements throughout the several views, noise spectrum generator circuit 50 is illustrated in FIG. 4. As will be described herein, noise spectrum generator circuit 50 is incorporated into the circuitry of the modem receiver circuit 12 of FIG. 5.

Noise spectrum generator circuit 50 includes analog-to-digital converters 52, 53 and sinusoidal mixers 54, 55 for demodulation. The demodulated signal from mixers 54, 55 is equalized by linear equalizers 56, 57. Linear equalizers 56, 57 are transversal filters which are from the prior art and are not to be confused with the equalization used for pre-emphasis in the transmitter circuitry. The resulting signals are phase corrected by phase corrector 60 which results in an x-y signal representative of the complex plane to slicer 62. Slicer 62 includes the constellation or eye pattern data which is used in the quadrature amplitude modulation scheme of the signal received by analog-to-digital convertors 52, 53. Slicer 62 outputs the constellation point which is closest to the input of slicer 62. Therefore, the actual received point is input to slicer 62 and the presumed actual transmitted point is output from slicer 62. Comparator 64 subtracts the actual received point from the actual transmitted point so as to calculate an error signal which is representative of the noise signal at the given frequency. This error or noise signal is inversely related to the distance between the signal line and the noise line of FIGS, 1a, 2a and 3a at the given frequency.

The resulting error signal is phase corrected by inverse phase corrector 66. The output of inverse phase corrector 66 is used to update the characteristics of linear equalizers 56, 57 and as an input to complex DFT (discrete Fourier transform) block 68. Complex DFT block 68 converts the phase corrected noise signals in the time domain (i.e. successive values corresponding to successive frequencies) into the noise spectrum in the frequency domain.

FIG. 5 discloses the entire modem transmitter circuit 10 and modem receiver circuit 12 of the present invention. Modem transmitter circuit 10 includes a conventional modem transmitter 14 which outputs digital signals to be transmitted to pre-filter 16. Pre-filter 16 pre-emphasizes the digital signals prior to their conversion to analog signals. Pre-filter 16, as will be described herein, includes nine-tap filter 70 as shown in FIG. 7. The output of the pre-filter 16 is converted to analog format by digital-to-analog converter 18 for transmission across communications line 20, which may be a telephone line, to modem receiver circuit 12.

Analog-to-digital converter 22 (which corresponds to analog-to-digital converters 42, 43 of FIG. 4) converts the analog signal from communications line 20 into digital format for input into noise spectrum analysis block 24. The remainder of the noise spectrum generator circuit of FIG. 4 is included in noise spectrum analysis block 24 from which a frequency domain plot of the noise signal (P'$_i$, i=1,5) is output, said frequency domain plot being derived by discrete Fourier transform techniques as previously described.

4

Secondary channel transmitter 38 transmits communications network control parameters, including the spectrum (P$_i$, i=1,5) from block 24, on a sideband of the primary channel at a low transmission rate through line 42 via digital-to-analog converter 40 to analog-to-digital converter 44 of modem transmitter circuitry 10.

Modem transmitter circuitry 10 includes analog-to-digital converter 44 and secondary channel receiver 46 which receives the spectrum sent from secondary channel transmitter 38 through line 42. Secondary channel receiver 46 transmits the spectrum (P'$_i$, i=1,5) data to comparator 28. In order to account for existing pre-emphasis, the frequency domain plot of the noise signal has subtracted from it the previous frequency domain plot as stored in shift register 26. This subtraction is performed by comparator 28. The reference spectrum outputs from comparator 28 is multiplied by one half by multiplier 30. This division is done as the current state-of-the-art is to have the transmitter provide by pre-emphasis one half of the signal compensation required while the receiver provides the other half. The portion provided by the receiver of, course, is done by apparatus separate from the invention as herein described. This division by two is optional and not crucial to the invention. The reference spectrum may be divided by other values, or not divided at all, in other embodiments of the invention.

Shift register 26 includes a power-up line which initializes the contents of shift register 26 with values representative of a flat spectrum as stored in block 29.

The output of multiplier 30 is input to compute block 48 which calculates and transmits the filter coefficients (C$_i$, i=0,4) for pre-filter 16 as will be described hereinafter.

Pre-filter 16 includes nine-tap filter 70 as shown in FIG. 6. Nine-tap filter 70 receives its input from the output from modem transmitter 14. The input is transmitted through a series of 9 delay blocks 71–79, the outputs of each of these delay blocks is sent through multipliers 81–89. Multipliers 81–89 receive their second multiplicands (C$_0$–C$_4$) from compute block 48 and send their respective products to adder 90. The output of adder 90 is the output of pre-filter 16.

Compute block 48 includes a power-up line which initializes the pre-filter coefficients (C$_i$, i=0,4) for a flat spectrum for the first transmission of the transmitting circuit 10. Subsequent initialization could be provided by the previously calculated C$_i$, i=0,4 stored in non-volatile memory.

The functional description of this invention is as follows.

The transmitting modem 10 sends QAM modulated data signals to the receiving modem 12.

The noise spectrum generator circuit 50, including the complex DFT block 68, calculates a frequency spectrum (P$_i$, i=1,5) of the noise at 5 frequencies—709, 1145, 1800, 2455 and 2891 Hertz. These frequencies are chosen from a 22 point discrete Fourier transform calculation so as to span the usable frequency of a telephone line. The spectrum is transmitted back to the transmitting modem 10 over the secondary channel. The previous frequency spectrum is subtracted from the new frequency spectrum, and the result is divided in half. This result is stored as the "previous value" for the next calculation.

The frequency spectrum (P$_i$, i=1,4) of the noise expressed in a logarithm scale are converted to a linear scale (F$_i$, i=0,4) in compute block 48.

5,008,903

5      6

The linear scale frequency spectrum is converted to filter coefficients through the following transformation:

$$C_0 = (F_0 - 2F_1 + 2F_2 - 2F_3 + F_4)/8$$
$$C_1 = (F_0 - 2F_1 + 2F_3 - F_4)/8$$
$$C_2 = (F_0 - 2F_2 + F_4)/8$$
$$C_3 = (F_0 + 2F_1 + 2F_3 - F_4)/8$$
$$C_4 = (F_0 + 2F_1 + 2F_2 + 2F_3 + F_4)/8$$

$C_i$, i=0,4, is then transformed by computer block 48 into $C'_i$, i=0,4 in order to adjust the pre-emphasis coefficients to be appropriate for the resonators of the resonating filters. These resonators are located at 0, 600, 1200 and 2400 Hertz. An iterative calculation is done to adjust the pre-emphasis coefficients, $C'_i$, i=0,4 (i.e. scalars) into appropriate filter coefficients, $C_i$, i=0,4.

Finally, these filter coefficients, $C_i$, i=0,4, are adjusted via an AGC circuit in compute block 48, so as to assure a constant power output from transmitting modem 10.

These appropriate filter coefficients $C_i$, i=0,4 are transmitted to pre-filter 16. However, pre-filter 16 implements these coefficients only whenever data is not being transmitted through pre-filter 16, such as just before a remote modem responds to a poll. This implementation precludes changing the transmission characteristics in the middle of a transmission.

Obviously, many modifications and variations of the invention are possible in light of the above description. It is therefore to be understood that within the scope of the appended claims, the invention may be practiced other than as specifically described.

What is claimed is:

1. An apparatus for calculating pre-emphasis coefficients for a transmitting modem in a communications system, including:

first transmitting means in the transmitting modem, including adjusting means responsive to the pre-emphasis coefficients for adjusting frequency-dependent characteristics of an output of said first transmitting means;

receiving means for receiving said output from said first transmitting means;

generating means for generating parameters responsive to a noise spectrum of said output including means for calculating said noise spectrum of said output;

second transmitting means for transmitting said parameters to the transmitting modem, and

computing means for computing the pre-emphasis coefficients from said parameters.

2. The apparatus of claim 1 wherein said adjusting means includes a filter with several taps.

3. The apparatus of claim 2 wherein said filter includes at least nine taps.

4. The apparatus of claim 1 wherein said generating means includes a noise spectrum generator circuit.

5. The apparatus of claim 4 wherein said noise spectrum generator circuit includes:

determining means for determining best-fit transmitted data points from said output of said first transmitting means as received by said receiving means;

comparing means for determining a difference between said best-fit transmitted data points and said output as received by said receiving means thereby calculating said noise spectrum of said output.

6. An apparatus for calculating pre-emphasis coefficients for a transmitting modem in a communications systems, including:

first transmitting means in the transmitting modem, including adjusting means responsive to the pre-emphasis coefficients for adjusting frequency-dependent characteristics of an output of said first transmitting means;

receiving means for receiving said output from said first transmitting means;

generating means, including a noise spectrum generator circuit, for generating parameters responsive to a noise spectrum of said output;

second transmitting means for transmitting said parameters to the transmitting modem; and

computing means for computing the pre-emphasis coefficients from said parameters;

wherein said noise spectrum generator circuit includes determining means for determining best-fit transmitted data points from said output of said first transmitting means as received by said receiving means; and comparing means for determining a difference between said best-fit transmitted data points and said output as received by said receiving means;

wherein said receiving means includes analog-to-digital conversion means and demodulating means which generates a complex signal; and wherein said noise spectrum generator circuit includes a phase corrector responsive to said complex signal; a slicer which determines, from said complex signal, best-fit transmitted data points from said first transmitting means; subtracting means for determining a difference between said best-fit transmitted data points and said complex signal; an inverse phase corrector responsive to said difference; and a complex discrete Fourier transform block responsive to said inverse phase corrector.

7. The apparatus of claim 6 wherein said phase corrector is responsive to equalization means and wherein said equalization means is responsive to said inverse phase corrector.

8. An apparatus for calculating pre-emphasis coefficients for a transmitting modem in a communications systems, including:

first transmitting means in the transmitting modem, including adjusting means responsive to the pre-emphasis coefficients for adjusting frequency-dependent characteristics of an output of said first transmitting means;

receiving means for receiving said output from said first transmitting means;

generating means, including a noise spectrum generator circuit, for generating parameters responsive to a noise spectrum of said output;

second transmitting means for transmitting said parameters to the transmitting modem; and

computing means for computing the pre-emphasis coefficients from said parameters;

wherein said noise spectrum generator circuit includes determining means for determining best-fit transmitted data points from said output of said first transmitting means as received by said receiving means; and comparing means for determining a difference between said best-fit transmitted data points and said output as received by said receiving means; and

5,008,903

7

wherein said determining means includes eye pattern data.

9. An apparatus for calculating pre-emphasis coefficients for a transmitting modem in a communications systems, including:

first transmitting means in the transmitting modem, including adjusting means responsive to the pre-emphasis coefficients for adjusting frequency-dependent characteristics of an output of said first transmitting means;

receiving means for receiving said output from said first transmitting means;

generating means, including a noise spectrum generator circuit, for generating parameters responsive to a noise spectrum of said output;

second transmitting means for transmitting said parameters to the transmitting modem; and

computing means for computing the pre-emphasis coefficients from said parameters;

wherein said noise spectrum generator circuit includes determining means for determining best-fit transmitted data points from said output of said first transmitting means as received by said receiving means; and comparing means for determining a difference between said best-fit transmitted data points and said output as received by said receiving means; and

wherein said generating means includes discrete Fourier transform means responsive to said difference, thereby calculating a frequency domain representation of said noise spectrum of said output.

10. The apparatus of claim 8 wherein said generating means further includes discrete Fourier transform means responsive to said difference, thereby calculating a frequency domain representation and storing the values of the frequency domain representation of a noise spectrum of said output.

11. The apparatus of claim 10, wherein said computing means includes subtracting means for subtracting previously stored values from said frequency domain representation thereby calculating second differences.

8

12. The apparatus of claim 11 wherein said computing means further includes dividing means for dividing said second differences.

13. The apparatus of claim 12 wherein said dividing means divides by two.

14. The apparatus of claim 11 wherein said second differences replace said previously stored values.

15. The apparatus of claim 1 wherein said second transmitting means transmits over a secondary channel.

16. The apparatus of claim 15 wherein said secondary channel is a sideband of a channel of said first transmitting means.

17. The apparatus of claim 16 wherein said receiving means and said second transmitting means are incorporated into a single circuit.

18. The apparatus of claim 1 wherein said computing means converts said parameters from logarithmic to linear scale.

19. The apparatus of claim 1 wherein said computing means adjusts said parameters iteratively to adjust for resonator frequencies of said first transmitting means.

20. The apparatus of claim 1 wherein said computing means adjusts said parameters to assure a constant power output of said first transmitting means.

21. A method for calculating pre-emphasis coefficients for a transmitting modem in a communications systems, including the steps of:

transmitting from the transmitting modem;

adjusting frequency characteristics of output from said transmitting step responsive to the pre-emphasis coefficients;

receiving said output from said first transmitting means;

calculating a noise spectrum of said output;

generating parameters responsive to said noise spectrum of said output;

sending said parameters to the transmitting modem; and

computing the pre-emphasis coefficients from said parameters.

*  *  *  *  *

45

50

55

60

65



US005710761A

# United States Patent [19]

## Scott

| [11] | Patent Number: | 5,710,761 |
| [45] | Date of Patent: | Jan. 20, 1998 |

[54] **ERROR CONTROL NEGOTIATION BASED ON MODULATION**

[75] Inventor: **Robert Earl Scott**, Indian Rocks Beach, Fla.

[73] Assignee: **Paradyne Corporation**, Largo, Fla.

[21] Appl. No.: **458,048**

[22] Filed: **May 31, 1995**

[51] **Int. Cl.⁶** ...................................................... **H04L 1/00**


[51] **Int. Cl.[6]** ...................................................... **H04L 1/00**
[52] **U.S. Cl.** ...................... **370/252**; 375/222; 379/93.08
[58] **Field of Search** .................................. 370/252, 465, 370/466, 467, 469; 375/222; 379/93

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| 4,715,044 | 12/1987 | Gartner | 375/8 |
| 5,384,780 | 1/1995 | Lomp et al. | 375/222 |
| 5,430,793 | 7/1995 | Ueltzen et al. | 375/222 |
| 5,481,696 | 1/1996 | Lomp et al. | 395/500 |
| 5,550,881 | 8/1996 | Sridhar et al. | 375/222 |
| 5,636,037 | 6/1997 | Saitoh | 375/222 |

*Primary Examiner*—Melvin Marcelo
*Attorney, Agent, or Firm*—Thomas, Kayden, Horstemeyer & Risley

[57] **ABSTRACT**

A modem dynamically selects the type of error-control negotiation sequence as a function of a negotiated parameter of the physical layer. In one embodiment of the invention, a modem selects between error-control negotiation sequences as a function of the type of modulation negotiated in the physical layer. In particular, the modem has at least two type of error-control negotiation sequences to select from: "LAPM or Disconnect," and "LAPM, MNP or Buffer." When the modem negotiates a V.32 or higher modulation, the modem uses the "LAPM or Disconnect" error control negotiation sequence. However, when the modem negotiates a V.22 bis or lower modulation, the modem uses the "LAPM, MNP or Buffer" error control sequence.

**16 Claims, 1 Drawing Sheet**



U.S. Patent               Jan. 20, 1998               5,710,761

*FIG. 1*



*FIG. 2*



5,710,761

<div style="columns:2">

**1**

## ERROR CONTROL NEGOTIATION BASED ON MODULATION

### BACKGROUND OF THE INVENTION

The present invention relates to data communications equipment, e.g., modems, and, more particularly, to the error control negotiation phase of establishing a data connection.

In establishing a data connection between two modems, the modems perform a "handshaking" sequence to negotiate various parameters about the data connection, e.g., the type of modulation (which relates to line speed), and the type of error control protocol. The type of modulation is representative of the "physical" layer of a data connection, while the type of error control protocol is representative of the "link" layer of the data connection. The negotiation of the physical layer is always negotiated before the link layer.

The types of error control protocols used today are: "Link Access Protocol Modem" (LAPM), "Microcom Networking Protocol" (MNP), or "Buffer" (which in reality is no error control). Typically, in negotiating the type of error control protocol a modem tries each type of error control protocol in turn. In particular, the modem uses a negotiation sequence defined herein as "LAPM, MNP, or Buffer." In this negotiation sequence, the modem attempts to connect with the far-end modem for several seconds, e.g., 2 seconds, using an "LAPM" protocol like International Telecommunication Union (ITU) standard V.42. If the far-end modem does not appropriately respond, the modem then tries to connect with the far-end modem for several seconds, e.g., 6 seconds, using the "MNP" protocol. If this too is unsuccessful, the modem then falls back to a non-error control mode, i.e., the "Buffer" mode of operation. This type of negotiation sequence typically allows a modem to connect to the widest range of industry-available modems.

Unfortunately with higher modulation speeds available, like those in ITU standards V.34 and, to a lesser degree, V.32bis, the above error control negotiation sequence can present a problem. In particular, as noted above, the negotiation of the line speed (modulation) occurs before the negotiation of the type of error control. In order to determine the appropriate line speed, a modem uses a technique called "line probing." Unfortunately, the accuracy of current line probing techniques is not perfect. As a result, a modem may erroneously connect at too high a line speed. In other words, even though the line speed was successfully negotiated, the error rate at that line speed is high. This affects the time it takes to perform the subsequent error control negotiation. In particular, with an increase in the error rate, the LAPM type of error control may not be negotiated within the 2 seconds, mentioned above. Further, in severe cases, the time delay in negotiating the error control protocol will be so long that neither LAPM nor MNP is negotiated, causing the modem to fallback to buffer mode. The latter presents a problem, since users typically want V.42 error control and V.42bis data compression for their data calls, however in buffer mode neither V.42 error control nor V.42bis data compression are available.

One way to solve the above-mentioned problem is to have a different negotiation sequence for error control negotiation—"LAPM or Disconnect" for example. With this negotiation setting, the modem tries for an extended length of time, e.g., 30 seconds, to negotiate a LAPM data connection. Even if the modem has trouble at the start of the call, LAPM may still be negotiated because of the longer time delay. However, this negotiation sequence presents a problem when connecting to modems that do not support

**2**

LAPM, i.e., MNP-only or non-error-control modems. In order to connect to MNP-only or non-error-control modems, the user must switch the modem back to using the "LAPM, MNP, or Buffer" error control negotiation sequence, described above. Typically, the user switches between error control negotiation sequences via an respective AT command. This is not user-friendly. In today's marketplace, the configuration of the modem itself, e.g., what type of error control negotiation sequence to use, should be transparent to the user.

### SUMMARY OF THE INVENTION

However, I have realized a solution that solves all of the above problems and is user-friendly. I have observed that almost every high-speed modem (V.34, V.32bis, V.32) has a LAPM mode, and that the LAPM mode is enabled. Further, only the low-speed modems (V.22bis or below) are MNP-only or non-error control. And, finally, the modulation (physical layer) is always negotiated before the error control protocol (link layer). Therefore, and in accordance with the invention, a modem dynamically selects the type of link layer negotiation sequence as a function of a negotiated parameter of the physical layer.

In one embodiment of the invention, a modem selects between error control negotiation sequences as a function of the type of modulation negotiated in the physical layer. In particular, the modem has at least two type of error control negotiation sequences to select from: "LAPM or Disconnect," and "LAPM, MNP or Buffer." When the modem negotiates a V.32 or higher modulation, the modem uses the "LAPM or Disconnect" error control negotiation sequence. However, when the modem negotiates a V.22bis or lower modulation, the modem uses the "LAPM, MNP or Buffer" error control sequence.

In another embodiment of the invention, a modem uses the data rate negotiated at the physical layer, rather than the modulation, to select the type of error control sequence. For example, if the modem connects at 2400 bits per second (bps) or below, the modem uses the "LAPM, MNP or Buffer" error control sequence. However, if the modem connects at a rate higher than 2400 bps, the modem uses the "LAPM or Disconnect" error control negotiation sequence. It should be noted that even though V.34 supports 2400 bps, I have observed that this data rate is unlikely to be used, i.e., a data rate of 2400 bps or less can be used to infer there is no high-speed modem in the data connection.

The above-described inventive concept provides a number of advantages. The user does not have to administer the modem to select a particular type of error control negotiation sequence via an AT command or other type of strap setting. Further, a modem incorporating the inventive concept still maintains compatibility with a large part of the currently installed-base of modems. Finally, this approach allows a high-speed modem to connect at the highest feasible rate and still negotiate the use of the LAPM protocol.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a block diagram of a data communications equipment embodying the principles of the invention; and

FIG. 2 is a flow diagram of an illustrative method embodying the principles of the invention for use in the modem of FIG. 1.

### DETAILED DESCRIPTION

FIG. 1 shows an illustrative high-level block diagram of a modem embodying the principles of the invention. As

</div>

5,710,761

**3**

shown, modem 100 couples to a communications channel (not shown) via line 133, which is, e.g., a local loop that couples modem 100 to a local central office (not shown). Modem 100 is also coupled to respective data terminal equipment (DTE) 10 via line 11. Other than the inventive concept, the components of modem 100 are well-known and will not be described in detail. Modem 100 includes DTE interface 105, microprocessor-based central processing unit (CPU) 110, memory 120 and digital signal processing circuitry (DSP) 130. Since FIG. 1 is a high-level block diagram, other parts of modem 100 not important to the inventive concept are assumed to be included within these representative components. For example, DSP 130 is representative of not only a digital signal processing chip, but also includes the "data access arrangement" (DAA) circuitry that couples any transmitted and received data signals to, and from, line 133. Further, although shown as single lines in FIG. 1, lines 11, 106, 111,109, and 133, are representative of a plurality of signals as known in the art to interconnect the various components. For example, line 11 is representative of any one of a number of ways for coupling data communications equipment to data terminal equipment, e.g., a serial interface like that specified in Electronic Industry Association (EIA) standard RS-232.

As known in the art, CPU 110 provides a controlling function for modem 100, e.g., CPU 110 controls, via line 109, DSP 130 for establishing, maintaining, and disconnecting, from a data connection to a far-end modem (not shown), via line 109. In performing this controlling function, CPU 110 operates on, or executes, program data stored in memory 120 via line 111, which is representative of control, address, and data signals (not shown).

In accordance with the inventive concept, modem 100 dynamically selects the type of error control negotiation sequence as a function of the type of physical layer negotiated. Turning now to FIG. 2, an illustrative method embodying the principles of the invention will be described. The steps shown in FIG. 2 are illustratively stored in memory 120 as program data as represented by blocks 305, block 310, block 315, etc., of FIG. 1, respectively. For the purposes of this description, it is assumed that modem 100 has already initiated a data call to a far-end modem (not shown) and a handshaking sequence has begun. As known in the art, CPU 110 first negotiates with the far-end modem the physical layer of the data connection, as shown in step 305. (It should be realized that since this is a negotiation process, whether modem 100 is the originating, or answering, modem is irrelevant to the inventive concept). During the physical layer negotiation, modem 100 negotiates the type of modulation, e.g., V.22, V.22bis, V.32, V.32bis, and V.34 industry standards. After negotiation of the physical layer, CPU 110 evaluates a negotiated parameter of the physical layer in step 310. In particular, CPU 110 compares a value of the negotiated parameter to a predefined value. If the value of the negotiated parameter is greater than or equal to the predefined value, CPU 110 uses an "LAPM or Disconnect" error control negotiation sequence in step 315 as part of the link layer negotiation. The software instructions for executing the "LAPM or Disconnect" error control negotiation sequence are illustratively stored in memory 120 at location 121. With this negotiation setting, modem 100 tries for an extended length of time to negotiate a LAPM link layer on the data connection. If a LAPM link layer cannot be negotiated, modem 100 disconnects.

On the other hand, if the value of the negotiated parameter is less than the predefined value, CPU 110 uses an "LAPM, MNP or Buffer" error control negotiation sequence in step

**4**

320 as part of the link layer negotiation. The software instructions for executing the "LAPM, MNP, or Buffer" error control negotiation sequence are illustratively stored in memory 120 at location 122. As described earlier, in this negotiation sequence modem 100 attempts to connect with the far-end modem for several seconds using an "LAPM" protocol like International Telecommunication Union (ITU) standard V.42. If the far-end modem does not appropriately respond, modem 100 then tries to connect with the far-end modem for several seconds using the "MNP" protocol. If this too is unsuccessful, modem 100 then falls back to a non-error control mode, i.e., the "Buffer" mode of operation.

In one embodiment of the invention, the negotiated parameter from the physical layer is the type of modulation negotiated in the physical layer. In particular, when modem 100 negotiates a V.32 or higher modulation, modem 100 performs step 315, described above. However, when modem 100 negotiates a V.22bis or lower modulation, modem 100 performs step 320, described above.

In another embodiment of the invention, the negotiated parameter from the physical layer is the negotiated data rate. For example, if modem connects below 4800 bps, modem 100 performs step 320, described above. However, when modem 100 connects at a rate equal to or higher than 4800 bps, modem 100 performs step 315, described above. It should be noted that even though high-speed modulations, like V.34, support rates below 4800, I have observed that these data rates are unlikely to be used. As a result, a data rate less than 4800 bps can be used to infer there is no high-speed modem in the data connection.

The above-described inventive concept provides a number of advantages. The user does not have to administer the modem to select a particular type of error control negotiation sequence for use during the link layer negotiation. Further, a modem incorporating the inventive concept still maintains compatibility with a large part of the currently installed-base of modems. Finally, this approach allows a high-speed modem to connect at the highest feasible rate and still negotiate the use of the LAPM protocol.

The foregoing merely illustrates the principles of the invention and it will thus be appreciated that those skilled in the art will be able to devise numerous alternative arrangements which, although not explicitly described herein, embody the principles of the invention and are within its spirit and scope.

For example, although the invention is illustrated herein as being implemented with discrete functional building blocks, e.g. a modem, CPU, etc., the functions of any one or more of those building blocks can be carded out using one or more appropriate integrated circuits, e.g., a microprocessor that includes memory.

In addition, although described in the context of a modem external to the data terminal equipment, the inventive concept applies to any other forms of coupling a modem to data terminal equipment, e.g., a modem that is internal to a personal computer or a modem that is part of a mobile phone transceiver. Finally, the selection of a link layer negotiation sequence can be a function of other data rates, types of modulations, and/or other parameters of the physical layer.

What is claimed:

1. A method for use in data communications equipment, the method comprising the steps of:

    negotiating a physical layer of a data connection with a far-end data communications equipment to determine a set of parameters for the physical layer of the data connection with the far-end data communications equipment; and

5,710,761

**5**

selecting one of a number of error control negotiation sequences as a function of a value of at least one parameter from the set of parameters for the physical layer.

2. The method of claim 1, further including the step of negotiating error control of the data connection with the far-end data communications equipment in accordance with the selected one of the number of error control negotiation sequences.

3. The method of claim 1, wherein the at least one parameter is the type of modulation negotiated with the far-end data communications equipment.

4. The method of claim 3, wherein the number of error control negotiation sequences include a Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence and a Link Access Protocol Modem or Disconnect sequence.

5. The method of claim 4, wherein the Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence is selected when the type of modulation negotiated is less than V.32, and wherein the Link Access Protocol Modem or Disconnect sequence is selected when the type of modulation negotiated is greater than or equal to V.32.

6. The method of claim 1, wherein the at least one parameter is the data rate negotiated with the far-end data communications equipment.

7. The method of claim 6, wherein the number of error control negotiation sequences include a Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence and a Link Access Protocol Modem or Disconnect sequence.

8. The method of claim 7, wherein the Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence is selected when the data rate is less than 4800 bits per second, and wherein the Link Access Protocol Modem or Disconnect sequence is selected the data rate is greater than or equal to 4800 bits per second.

9. Data communications apparatus comprising:

a memory that stores a number of error control negotiation sequences; and

processor circuitry that negotiates a physical layer of a data connection with a far-end data communications equipment to determine a set of parameters for the

**6**

physical layer of the data connection with the far-end data communications equipment, and then selects from memory one of a number of error control negotiation sequences as a function of a value of at least one parameter from the set of parameters for the physical layer.

10. The apparatus of claim 9, wherein the processor negotiates error control of the data connection with the far-end data communications equipment in accordance with the selected one of the number of error control negotiation sequences.

11. The apparatus of claim 9, wherein the at least one parameter is the type of modulation negotiated with the far-end data communications equipment.

12. The apparatus of claim 11, wherein the number of error control negotiation sequences include a Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence and a Link Access Protocol Modem or Disconnect sequence.

13. The apparatus of claim 12, wherein the processor selects the Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence when the type of modulation negotiated is less than V.32, and wherein the processor selects the Link Access Protocol Modem or Disconnect sequence when the type of modulation negotiated is greater than or equal to V.32.

14. The apparatus of claim 9, wherein the at least one parameter is data rate negotiated with the far-end data communications equipment.

15. The apparatus of claim 9, wherein the number of error control negotiation sequences include a Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence and a Link Access Protocol Modem or Disconnect sequence.

16. The apparatus of claim 15, wherein the processor selects the Link Access Protocol Modem, Microcom Networking Protocol, or Buffer sequence when the data rate is less than 4800 bits per second, and wherein the processor selects the Link Access Protocol Modem or Disconnect sequence when the data rate is greater than or equal to 4800 bits per second.

\*    \*    \*    \*    \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 5,710,761
DATED        : January 20, 1998
INVENTOR(S)  : Scott

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Title page of the patent, second column, six lines under the heading "ABSTRACT", change "type" to --types--.
Column 2, line 27, after "at least two" change "type" to --types--.
Column 4, line 22, change "**4800**" (in bold) to --4800-- (in regular font).
Column 4, line 49, after "can be" delete "carded" and insert therefor --carried--.

Signed and Sealed this

Twenty-sixth Day of May, 1998

*Attest:*

*Bruce Lehman*

**BRUCE LEHMAN**

*Attesting Officer*                *Commissioner of Patents and Trademarks*



US005778234A

# United States Patent [19]

## Hecht et al.

[11] **Patent Number:** **5,778,234**

[45] **Date of Patent:** **Jul. 7, 1998**

[54] **METHOD FOR DOWNLOADING PROGRAMS**

[75] Inventors: **Gideon Hecht**, Seminole; **Kurt Ervin Holmquist**, Largo; **Donald C. Snoll**, Clearwater, all of Fla.

[73] Assignee: **Paradyne Corporation**, Largo, Fla.

[21] Appl. No.: **899,834**

[22] Filed: **Jul. 24, 1997**

### Related U.S. Application Data

[62] Division of Ser. No. 880,257, May 8, 1992.

[51] **Int. Cl.**$^6$ ...................................................... **G06F 9/44**
[52] **U.S. Cl.** ...................................... **395/712; 395/652**
[58] **Field of Search** .................................. 395/712, 651, 395/652

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,430,704 | 2/1984 | Page et al. | 364/200 |
| 4,459,662 | 7/1984 | Skelton et al. | 364/200 |
| 4,626,986 | 12/1986 | Mori | 364/200 |
| 4,663,707 | 5/1987 | Dawson | 364/200 |
| 4,720,812 | 1/1988 | Kao et al. | 364/900 |
| 4,724,521 | 2/1988 | Carron et al. | 364/200 |
| 4,954,941 | 9/1990 | Redman | 395/712 |
| 5,053,990 | 10/1991 | Kriefels et al. | 364/900 |
| 5,136,711 | 8/1992 | Hugard et al. | 395/700 |
| 5,210,854 | 5/1993 | Beaverton et al. | 395/500 |
| 5,257,380 | 10/1993 | Lang | 395/700 |
| 5,280,627 | 1/1994 | Flaherty et al. | 395/700 |
| 5,355,498 | 10/1994 | Provino et al. | 395/700 |
| 5,361,365 | 11/1994 | Hirano et al. | 395/775 |
| 5,367,686 | 11/1994 | Fisher et al. | 395/700 |
| 5,367,688 | 11/1994 | Croll | 395/700 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| A0205692 | 6/1985 | European Pat. Off. | G06F 9/44 |
| 0500973A1 | 2/1991 | European Pat. Off. | G06F 9/445 |
| 0524719A2 | 5/1992 | European Pat. Off. | G06F 9/44 |
| 2227584 | 8/1990 | United Kingdom | G06F 12/12 |

#### OTHER PUBLICATIONS

*Electronic Engineering*, vol. 64, No. 783, "SGS–Thomson Block Erase Flash in 16 Bit RISC Controller", Mar. 1992, Woolrich, London GB, p. 83.

*IBM Technical Disclosure Bulletin*, vol. 34, No. 3, Aug. 1991, Armonk, NY, US pp. 286–289.

*Primary Examiner*—Emanuel Todd Voeltz
*Assistant Examiner*—Kakali Chaki
*Attorney, Agent, or Firm*—Thomas, Kayden, Horstemeyer & Risley LLP

[57] **ABSTRACT**

A modified version of the operating communication program of a stored program controlled apparatus is downloaded by first downloading a segment of the new package of programs which contains the essential portion of the new programs. Control of the apparatus is then transferred to the new program segment. Thereafter, utilizing the downloaded essential portion of the new package of programs, the remainder of the new package of programs is downloaded.

**8 Claims, 1 Drawing Sheet**



U.S. Patent                 Jul. 7, 1998                 5,778,234

*FIG. 1*



*FIG. 2*



*FIG. 3*



5,778,234

# 1

## METHOD FOR DOWNLOADING PROGRAMS

This application is a division of U.S. patent application having Ser. No. 07/880,257 of Hecht,et al., filed May 8.1992.

### BACKGROUND OF THE INVENTION

This invention relates to stored program controlled apparatus and, in particular, to apparatus with a capability for remote updating of its entire set of programs.

Stored program controlled apparatus can conveniently be divided into two types; one where the stored programs are completely unalterable under normal operating circumstances, and the other where the stored programs are alterable, at least at times, during normal operation. In apparatus of the first type, the program is often executed automatically and the user does not even know that the controlled apparatus is "stored program controlled". This is typically the case in equipment that is designed for people who are not knowledgeable in computers and for whom the equipment is just a tool of the trade. "Point of sale" terminals, such as check-out terminals at a supermarket, are a good example. Modems are another example. People who use this equipment desire fail-safe operation and they do not want to be bothered with loading programs, fixing program bugs, installing updated versions of software, etc.

One approach to programming such equipment is to imprint the program into read-only-memory integrated circuits and physically install the circuits into the equipment. The problem with this approach is that updated versions of the program require the creation of new sets of read-only memories and new installations.

When a communication link is present, "downloading" the programs to the equipment from a remote processor, through the communication link, forms another approach for programming the equipment. It has been known in the art for some time that it is feasible to download limited types of control information from a remote processor. It is also known to download entire machine language application programs. Often such equipment does not include writable non-volatile store, such as a hard disk, so the programs are stored in battery protected read/write memories.

This is an unattractive solution because it leaves a substantial portion of program memory to be at risk. To mitigate this problem, U.S. Pat. No. 4,724,521, suggests storing within read-only memories of the local equipment a number of general purpose routines which comprise instructions to be executed by the central processing unit to accomplish a particular program task. These, in effect, form a set of macro-instructions. The downloaded machine language program utilizes these macro-instructions to the extent possible, and thereby achieves flexibility without the need to download substantial amounts of program code.

In all of the known approaches, however, there is a program portion in the local equipment that is resident in a read-only memory, and its contents is not changed. That resident portion contains "boot-up" segments and program segments that are necessary to maintain the communication between the remote processor and the local equipment (so that the process of downloading the programs can continue). This set of programs is the "essential programs" (EP) set. This set of programs should, of course, be a non-volatile store because there is always a possibility of power loss.

The fact that the EP set is needed to maintain communications presents a problem when the EP set itself needs to be modified or updated. Indeed, that is often the case with modems, where essentially the sole function of the modem software is to support communication.

### SUMMARY OF THE INVENTION

The problem of downloading a modified version of the operating communication program, and the problem of effectively updating the entire set of programs in a stored program controlled apparatus, such as a modem, is solved with a downloadable start address specification means and, optionally, with an EEPROM memory. The start address specification means stores information that is downloaded through the communication link, and that information is used in defining the address from where the communication link programs are initiated.

In accordance with the method of this invention, downloading comprises what may be considered two communication segments. In the first segment the essential portion of the new package (EP set) of programs is downloaded to some chosen location in the local apparatus and the downloadable start address specification means is loaded with the appropriate new start address. Utilizing the most recently downloaded EP set of the new communication package, the second segment downloads the remainder of the new package.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 presents a block diagram of an arrangement for carrying out this invention;

FIG. 2 is a flow diagram of a downloading process in accordance with this invention; and

FIG. 3 is a flow diagram of an augmented downloading process in accordance with this invention.

### DETAILED DESCRIPTION

A modem's primary function is to enable communications between a customer's digital equipment and a remote apparatus over a transmission medium. In a modem with a stored programmed controlled architecture this communication is effected with a set of programs, which includes call establishment programs, link layer protocols with flow control and error recovery functions, and programs that handle and store the communicated data, as well as the modulation and demodulation programs used by the modem. These programs occupy a significant portion of the modem's program memory. In accordance with this invention, all programs—including the EP set of programs that carry out the elemental communications—are downloadable. That is, the apparatus employing the principles of this invention does not need to have a non-volatile "boot-up" read-only-memory. All programs (including the boot-up programs) can be stored in a single memory arrangement which, for some applications, can consist of just two memory devices.

FIG. 1 depicts one structure that, in conformance with the principles of this invention, enables the downloading of programs to the modem's program memory. FIG. 1 includes a processor element 10 with a port for receiving signals from, and sending signals to, line 12. Processor 10 is also responsive to line 11 data from program memory 20, and it supplies address and data to memory 20 via bus 13 and bus 14, respectively. In a conventional processor structure, bus 14 is connected to an address port of memory 20. In FIG. 1, address modifier 30 is interposed between processor 10 and program memory 20, with bus 15 supplying the address information to memory 20. Modifier 30 is responsive to

3

register 40, which is loaded with bus 13 data when the register is enabled by bus 16. Modifier 30 is a modulo M adder, where M is the size of memory 20. A typical stored program controlled modem also includes a read/write data memory, means for interfacing with the transmission medium, means for interfacing with the local digital equipment, and perhaps other data and control ports. For purposes of this invention, however, these other elements are irrelevant, so they are not included in the drawing.

It should be understood that line 12 in the FIG. 1 architecture effectively offers a "remote execution" capability to processor 10, in that the programs which are executed by processor 10 are affected by data supplied by line 12. For example, data supplied by line 12 can effect branching to programs that are normally dormant. One such normally dormant program is a program that downloads information to the program memory. It should also be understood, and noted, that although this invention is described in connection with modems, its principles are applicable to all stored program apparatus. In particular, the principles of this invention are applicable to all situations where it is desirable to download an entire set of new programs, including the EP set. For example, this invention is useful in PCs, "point of sale" terminals, etc.

The operation of the FIG. 1 apparatus is quite simple. The processes carried out by the FIG. 1 apparatus are effected by executing a sequence of instructions that the processor receives from program memory 20 via bus 11. In turn, processor 10 determines which instructions are delivered to it by controlling the addresses applied to memory 20 (typically by controlling a "program counter" within processor 10, which is not shown in the FIG.). The primary difference between a conventional microprocessor arrangement and the FIG. 1 arrangement is that the addresses supplied on bus 14 are not the actual addresses that are applied to program memory 20, because of the interposed circuit 30. One might call these addresses "virtual addresses", which are translated into the real addresses by the additive constant applied by register 40 to modifier circuit 30.

The exact structure and organization of the programs executed by the FIG. 1 arrangement is not really relevant to this invention, but it is to be understood that a protocol exists for sending information out on line 12 and for receiving information from line 12. This protocol provides a mechanism for intelligent communication with processor 10, which includes, for example, knowing when the received data is commands or data, and whether to store the received data in memory 20 or elsewhere.

The programs that can be executed by the FIG. 1 arrangement reside throughout memory 20, but the set of programs that is essential to the maintenance of communication with line 12 (the EP set) may, advantageously, occupy a contiguous segment of memory 20 addresses in the range 0 to N. Within that range of addresses there is a subroutine for installing a new EP set

In accordance with the principles of this invention, the entire set of programs contained in memory 20 can be over-written with a new set of programs (in a process initiated by the apparatus itself or by the party connected to the apparatus via line 12) by following the procedure outlined in FIG. 2. In step 50 of FIG. 2, a command is received on line 12 to branch to the subroutine in the EP set that installs new EP sets (that command may simply be a data word that is installed in a particular read/write memory location). After supplying the branch instruction, the new EP

4

set of programs are downloaded via line 12. Optionally, an offset address that is the starting address of the new EP set (the address corresponding to 0 in the existing EP set) is also downloaded. Alternatively, the offset address may be predefined, in which case it does not need to be supplied by line 12. In any event, the offset address is greater than N and less than M–N. It may be noted that N must be less than M/2, because two EP sets must temporarily coexist in memory 20.

After the new EP set is installed in memory locations X through X+N, where X is the offset address (X=M/2, for example), memory locations that serve as software-defined registers in the new EP set are populated with data that is found in the corresponding software-defined addresses in the active EP set. Thereafter, according to step 51, register 40 is loaded with the offset address.

The immediate effect of loading the offset address into register 40 is to transfer control to the newly installed EP set. That means that the program in the new EP set to which control is transferred, must be at a predetermined logic point so that the communication can continue seamlessly. This minor requirement can be easily accommodated by proper planning of the new EP set. Once operation proceeds under control of the new EP set of programs, according to FIG. 2, step 52 conditions processor 10 to account for the offset present in register 40 and loads the remainder of programs destined for memory 20 in addresses higher than X+N (modulo M).

It is obviously important to protect the information loaded into memory 20 from loss. At the very least, that means that memory 20 must be non-volatile. Memory 20 must also be relatively fast because it directly affects the processing speed that can be attained with the FIG. 1 arrangement. Currently, we use an electrically bulk erasable, programmable, read-only memory (FLASH EEPROM) to form memory 20. This memory must be erased in bulk before new information can be written in it. To install a new EP in such a memory, it is recalled that the EP set must occupy less than half of memory 20, and that makes it convenient to construct memory 20 from at least two distinct chips (distinct in the sense of being able to erase one and not the other). Each segment of the downloading process begins with a bulk erasure of one of the memory 20 halves.

To summarize the downloading process of this invention,

1. Bulk erase the that half of memory 20 which does NOT contain the EP set of programs;

2. download a new EP set of programs to the erased half of memory 20;

3. download the offset address to pass control to the new EP set of programs;

4. bulk erase the other half of memory 20;

5. download the remainder of programs into memory 20.

If register 40 is to contain the offset address for a substantial time after downloading is accomplished, then its contents must be protected in a manner not unlike that of memory 20. Of course, register 40 can manufactured together with memory 20 and be an EEPROM. However, that is not absolutely necessary, and manufacturing costs could benefit if register 40 were constructed as part of the read/write memory or as part of processor 10.

Register 40 may be a volatile memory if the downloading process is carried out as depicted in FIG. 3. Specifically, by including a copy subroutine in the EP set of programs, the downloading process can be modified to the following (assuming the EP set is in the first half of memory 20):

1. Bulk erase the second half of memory 20;

5,778,234

| 5 | 6 |

2. download a new EP set of programs to the second half of memory **20**;

4. download the offset address to pass control to the new EP set of programs;

5. bulk erase the first half of memory **20**;

6. copy the contents of the second half of memory **20** into the first half of memory **20**;

7. reset the offset address to 0; and

8. download the remainder of programs into memory **20**.

Admittedly, during the copy sequence (which may also be a "move" sequence) the arrangement is vulnerable to power failures. Since the time of copying or moving is very small, this is a very unlikely event. Still, to protect against this unlikely event, the power source can be designed to have sufficient reserve to complete the copy operation, or to protect the starting address. A capacitor at the output of the power supply may supply the necessary power reserve.

In the arrangement described above where memory **20** consists of two FLASH EEPROM chips, register **40** needs to have only one bit of memory, and modifier circuit **30** can be merely an Exclusive OR gate which, with the aid of the one bit memory of register **40**, selects the bank of memory that is active.

We claim:

1. A method for installing a new set of communication programs $P_{new}$ into a stored program controlled apparatus that includes a communication port and a memory by transmitting said set of programs $P_{new}$ to said apparatus via said port, with the aid of a set of communications programs $P_{old}$ already resident in said memory, where said set of programs $P_{old}$ contains a subset of programs $EP_{old}$ that occupy less than half of the memory and said set of programs $P_{new}$ also contains a subset of programs $EP_{new}$ that, when installed, occupy less than half of the memory, comprising the steps of:

installing the $EP_{new}$ programs in a first area of said memory that contains programs other than the $EP_{old}$ programs, thereby overwriting at least a portion of one program in said $P_{old}$ set of programs;

altering operation of said apparatus to execute the $EP_{new}$ programs instead of the $EP_{old}$ programs; and

installing the remaining programs of said $P_{new}$ set of programs in a second area of said memory, said second area constituting memory locations not occupied by the $EP_{new}$ programs.

2. The method of claim 1 further comprising

a step of moving, interposed between said step of altering operation of the apparatus and said step of installing the remaining programs, that installs said $EP_{new}$ programs into memory locations starting at a location that corresponds to a starting location of the $EP_{old}$ programs, and

a second step of altering operation of said apparatus to execute the $EP_{new}$ programs in the installed locations by said step of moving.

wherein said installing the remaining programs of said $P_{new}$ set of programs stores the programs in memory locations not occupied with the $EP_{new}$ programs installed by said step of moving.

3. The method of claim 1 further comprising the steps of:

erasing said first area of said memory, said erasing step to be performed prior to said step of installing the $EP_{new}$ programs into said first area of said memory; and

erasing said second area of said memory, said erasing step to be performed after said step of altering operation of the apparatus and prior to said step of installing the remaining programs of said $P_{new}$ set of programs.

4. The method of claim 1, wherein said step of altering operation of said apparatus to execute said $EP_{new}$ programs is accomplished by installing an offset address to pass control of said apparatus to said $EP_{new}$ programs.

5. A method for installing a new set of communication programs $P_{new}$ into a stored program controlled apparatus that includes a communication port and a memory by transmitting said set of programs $P_{new}$ to said apparatus via said port, with the aid of a set of communications programs $P_{old}$ already resident in said memory, where said set of programs $P_{old}$ contains a subset of programs $EP_{old}$ that occupy less than half of the memory and said set of programs $P_{new}$ also contains a subset of programs $EP_{new}$ that, when installed, occupy less than half of the memory, comprising the steps of:

installing the $EP_{new}$ programs in a first area of said memory that contains programs other than the $EP_{old}$ programs, thereby overwriting at least a portion of one program in said $P_{old}$ set of programs;

altering operation of said apparatus to execute the $EP_{new}$ programs instead of the $EP_{old}$ programs;

moving the $EP_{new}$ programs from said first area of memory to a second area of said memory; and

installing the remaining programs of said $P_{new}$ set of programs in said first area of memory.

6. The method of claim 5, further comprising the step of:

erasing said first area of said memory, said erasing step to be performed prior to said step of installing the $EP_{new}$ programs into said first area of said memory.

7. The method of claim 5, wherein said moving step further comprises the steps of:

copying the $EP_{new}$ programs from said first area of memory to said second area of memory; and

erasing said first area of memory.

8. The method of claim 5, wherein said step of altering operation of said apparatus to execute said $EP_{new}$ programs is accomplished by installing an offset address to pass control of said apparatus to said $EP_{new}$ programs.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 5,778,234
DATED         : July 7, 1998
INVENTOR(S) : Hecht, *et al.*

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In column 4, line 45, delete "that".

In column 5, line 48, insert ":" after "comprising".

In column 6, line 1, insert "step of" after the first appearance of "said" and before "installing".

Signed and Sealed this

Seventeenth Day of November, 1998

*Attest:*

**BRUCE LEHMAN**

*Attesting Officer*        *Commissioner of Patents and Trademarks*



US006131159A

# United States Patent [19]

## Hecht et al.

[11] **Patent Number:** **6,131,159**

[45] **Date of Patent:** **Oct. 10, 2000**

[54] **SYSTEM FOR DOWNLOADING PROGRAMS**

[75] Inventors: **Gideon Hecht**, Seminole; **Kurt Ervin Holmquist**, Largo; **Donald C. Snoll**, Clearwater, all of Fla.

[73] Assignee: **Paradyne Corporation**, Largo, Fla.

[21] Appl. No.: **07/880,257**

[22] Filed: **May 8, 1992**

[51] Int. Cl.[7] ...................................... **G06F 9/445**
[52] **U.S. Cl.** ...................................... **713/1**; 713/100; 711/1
[58] **Field of Search** .................................. 395/700, 651, 395/652, 653, 712; 364/DIG. 1, DIG. 2; 713/1, 2, 100; 711/114, 1, 145, 202–206; 710/23, 104

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,430,704 | 2/1984 | Page et al. | 395/700 |
| 4,459,662 | 7/1984 | Skelton et al. | 364/200 |
| 4,626,986 | 12/1986 | Mori | 395/700 |
| 4,654,783 | 3/1987 | Veres et al. | 713/2 |
| 4,663,707 | 5/1987 | Dawson . | |
| 4,720,812 | 1/1988 | Kao et al. | 364/900 |
| 4,724,521 | 2/1988 | Carron et al. | 395/700 |
| 5,053,990 | 10/1991 | Kreifels et al. | 364/900 |
| 5,126,808 | 6/1992 | Montalvo et al. | 357/23.5 |
| 5,136,711 | 8/1992 | Hugard et al. | 395/652 |
| 5,142,623 | 8/1992 | Staab et al. | 709/200 |
| 5,210,854 | 5/1993 | Beaverton et al. | 395/500 |
| 5,257,380 | 10/1993 | Lang | 395/700 |
| 5,268,928 | 12/1993 | Herh et al. | 375/222 |
| 5,280,627 | 1/1994 | Flaherty et al. | 395/700 |
| 5,297,258 | 3/1994 | Hale et al. | 711/114 |
| 5,321,840 | 6/1994 | Ahlin et al. | 395/712 |
| 5,355,498 | 10/1994 | Provino et al. | 395/700 |
| 5,361,365 | 11/1994 | Hirano et al. | 395/775 |
| 5,367,686 | 11/1994 | Fisher et al. | 395/700 |
| 5,367,688 | 11/1994 | Croll | 395/700 |

| | | | |
|---|---|---|---|
| 5,572,572 | 11/1996 | Kawan et al. | 379/90.01 |
| 5,579,522 | 11/1996 | Christeson et al. | 713/2 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2015305 | 12/1990 | Canada | G06F 12/14 |
| 0 205 692 | 6/1985 | European Pat. Off. | G06F 9/44 |
| 0 500 973 A1 | 2/1991 | European Pat. Off. | G06F 9/445 |
| 0 524 719 A2 | 5/1992 | European Pat. Off. | G06F 9/44 |
| 2 227 584 | 8/1990 | United Kingdom | G06F 12/12 |

### OTHER PUBLICATIONS

Electronic Engineering, vol. 64, No. 783, "SGS–Thomson Block Erase Flash in 16 Bit RISC Controller", Mar. 1992, Woolrich, London, GB, p. 83.
IBM Technical Disclosure Bulletin, vol. 34, No. 3, Aug. 1991, Armonk, NY, US, pp. 286–289.

*Primary Examiner*—Thomas C. Lee
*Assistant Examiner*—Rijue Mai
*Attorney, Agent, or Firm*—Thomas, Kayden, Horstemeyer & Risley LLP

[57] **ABSTRACT**

A modified version of the operating communication program of a stored program controlled apparatus is installed with the aid of a downloadable start address specification means, optionally realized with an EEPROM memory. The start address specification means stores information that is downloaded through a communication port in the apparatus, and that information is used in defining the address from where the communication programs are initiated. In accordance with the method of this invention, downloading of the entire new set of programs is effected by first downloading a segment of the essential portion of the new package of programs. Control is then transferred to the new segment by downloading appropriate information into the start address specification means. Thereafter, utilizing the downloaded essential portion of the new package of programs, the remainder of the new package is downloaded.

**21 Claims, 1 Drawing Sheet**



*FIG. 1*



*FIG. 2*



*FIG. 3*



6,131,159

1

## SYSTEM FOR DOWNLOADING PROGRAMS

### BACKGROUND OF THE INVENTION

This invention relates to stored program controlled apparatus and, in particular, to apparatus with a capability for remote updating of its entire set of programs.

Stored program controlled apparatus can conveniently be divided into two types; one where the stored programs are completely unalterable under normal operating circumstances, and the other where the stored programs are alterable, at least at times, during normal operation. In apparatus of the first type, the program is often executed automatically and the user does not even know that the controlled apparatus is "stored program controlled". This is typically the case in equipment that is designed for people who are not knowledgeable in computers and for whom the equipment is just a tool of the trade. "Point of sale" terminals, such as check-out terminals at a supermarket, are a good example. Modems are another example. People who use this equipment desire fail-safe operation and they do not want to be bothered with loading programs, fixing program bugs, installing updated versions of software, etc.

One approach to programming such equipment is to imprint the program into read-only-memory integrated circuits and physically install the circuits into the equipment. The problem with this approach is that updated versions of the program require the creation of new sets of read-only memories and new installations.

When a communication link is present, "downloading" the programs to the equipment from a remote processor, through the communication link, forms another approach for programming the equipment. It has been known in the art for some time that it is feasible to download limited types of control information from a remote processor. It is also known to download entire machine language application programs. Often such equipment does not include writable non-volatile store, such as a hard disk, so the programs are stored in battery protected read/write memories. This is an unattractive solution because it leaves a substantial portion of program memory to be at risk. To mitigate this problem, U.S. Pat. No. 4,724,521, suggests storing within read-only memories of the local equipment a number of general purpose routines which comprise instructions to be executed by the central processing unit to accomplish a particular program task. These, in effect, form a set of macro-instructions. The downloaded machine language program utilizes these macro-instructions to the extent possible, and thereby achieves flexibility without the need to download substantial amounts of program code.

In all of the known approaches, however, there is a program portion in the local equipment that is resident in a read-only memory, and its contents are not changed. That resident portion contains "boot-up" segments and program segments that are necessary to maintain the communication between the remote processor and the local equipment (so that the process of downloading the programs can continue). This set of programs is the "essential programs" (EP) set. This set of programs should, of course, be a non-volatile store because there is always a possibility of power loss.

The fact that the EP set is needed to maintain communications presents a problem when the EP set itself needs to be modified or updated. Indeed, that is often the case with modems, where essentially the sole function of the modem software is to support communication.

### SUMMARY OF THE INVENTION

The problem of downloading a modified version of the operating communication program, and the problem of

2

effectively updating the entire set of programs in a stored program controlled apparatus, such as a modem, is solved with a downloadable start address specification means and, optionally, with an EEPROM memory. The start address specification means stores information that is downloaded through the communication link, and that information is used in defining the address from where the communication link programs are initiated.

In accordance with the method of this invention, downloading comprises what may be considered two communication segments. In the first segment the essential portion of the new package (EP set) of programs is downloaded to some chosen location in the local apparatus and the downloadable start address specification means is loaded with the appropriate new start address. Utilizing the most recently downloaded EP set of the new communication package, the second segment downloads the remainder of the new package.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 presents a block diagram of an arrangement for carrying out this invention;

FIG. 2 is a flow diagram of a downloading process in accordance with this invention; and

FIG. 3 is a flow diagram of an augmented downloading process in accordance with this invention.

### DETAILED DESCRIPTION

A modem's primary function is to enable communications between a customer's digital equipment and a remote apparatus over a transmission medium. In a modem with a stored programmed controlled architecture this communication is effected with a set of programs, which includes call establishment programs, link layer protocols with flow control and error recovery functions, and programs that handle and store the communicated data, as well as the modulation and demodulation programs used by the modem. These programs occupy a significant portion of the modem's program memory. In accordance with this invention, all programs—including the EP set of programs that carry out the elemental communications—are downloadable. That is, the apparatus employing the principles of this invention does not need to have a non-volatile "boot-up" read-only-memory. All programs (including the boot-up programs) can be stored in a single memory arrangement which, for some applications, can consist of just two memory blocks.

FIG. 1 depicts one structure that, in conformance with the principles of this invention, enables the downloading of programs to the modem's program memory. FIG. 1 includes a processor element 10 with a port for receiving signals from, and sending signals to, line 12. Processor 10 is also responsive to line 11 data from program memory 20, and it supplies address and data to memory 20 via bus 13 and bus 14, respectively. In a conventional processor structure, bus 14 is connected to an address port of memory 20. In FIG. 1, address modifier 30 is interposed between processor 10 and program memory 20, with bus 15 supplying the address information to memory 20. Modifier 30 is responsive to register 40, which is loaded with bus 13 data when the register is enabled by bus 16. Modifier 30 is a modulo M adder, where M is the size of memory 20. A typical stored program controlled modem also includes a read/write data memory, means for interfacing with the transmission medium, means for interfacing with the local digital equipment, and perhaps other data and control ports. For purposes of this invention, however, these other elements are irrelevant, so they are not included in the drawing.

6,131,159

3

It should be understood that line 12 in the FIG. 1 architecture effectively offers a "remote execution" capability to processor 10, in that the programs which are executed by processor 10 are affected by data supplied by line 12. For example, data supplied by line 12 can effect branching to programs that are normally dormant. One such normally dormant program is a program that downloads information to the program memory. It should also be understood, and noted, that although this invention is described in connection with modems, its principles are applicable to all stored program apparatus. In particular, the principles of this invention are applicable to all situations where it is desirable to download an entire set of new programs, including the EP set. For example, this invention is useful in PCs, "point of sale" terminals, etc.

The operation of the FIG. 1 apparatus is quite simple. The processes carried out by the FIG. 1 apparatus are effected by executing a sequence of instructions that the processor receives from program memory 20 via bus 11. In turn, processor 10 determines which instructions are delivered to it by controlling the addresses applied to memory 20 (typically by controlling a "program counter" within processor 10, which is not shown in the FIG.). The primary difference between a conventional microprocessor arrangement and the FIG. 1 arrangement is that the addresses supplied on bus 14 are not the actual addresses that are applied to program memory 20, because of the interposed circuit 30. One might call these addresses "virtual addresses", which are translated into the real addresses by the additive constant applied by register 40 to modifier circuit 30.

The exact structure and organization of the programs executed by the FIG. 1 arrangement is not really relevant to this invention, but it is to be understood that a protocol exists for sending information out on line 12 and for receiving information from line 12. This protocol provides a mechanism for intelligent communication with processor 10, which includes, for example, knowing when the received data is commands or data, and whether to store the received data in memory 20 or elsewhere.

The programs that can be executed by the FIG. 1 arrangement reside throughout memory 20, but the set of programs that is essential to the maintenance of communication with line 12 (the EP set) may, advantageously, occupy a contiguous segment of memory 20 addresses in the range 0 to N. Within that range of addresses there is a subroutine for installing a new EP set.

In accordance with the principles of this invention, the entire set of programs contained in memory 20 can be over-written with a new set of programs (in a process initiated by the apparatus itself or by the party connected to the apparatus via line 12) by following the procedure outlined in FIG. 2. In step 50 of FIG. 2, a command is received on line 12 to branch to the subroutine in the EP set that installs new EP set (that command may simply be a data word that is installed in a particular read/write memory location). After supplying the branch instruction, the new EP set of programs are downloaded via line 12. Optionally, an offset address that is the starting address of the new EP set (the address corresponding to 0 in the existing EP set) is also downloaded. Alternatively, the offset address may be predefined, in which case it does not need to be supplied by line 12. In any event, the offset address is greater than N and less than M−N. It may be noted that N must be less than M/2, because two EP sets must temporarily coexist in memory 20.

After the new EP set is installed in memory locations X through X+N, where X is the offset address (X=M/2, for example), memory locations that serve as software-defined registers in the new EP set are populated with data that is

4

found in the corresponding software-defined addresses in the active EP set. Thereafter, according to step 51, register 40 is loaded with the offset address.

The immediate effect of loading the offset address into register 40 is to transfer control to the newly installed EP set. That means that the program in the new EP set to which control is transferred, must be at a predetermined logic point so that the communication can continue seamlessly. This minor requirement can be easily accommodated by proper planning of the new EP set. Once operation proceeds under control of the new EP set of programs, according to FIG. 2, step 52 conditions processor 10 to account for the offset present in register 40 and loads the remainder of programs destined for memory 20 in addresses higher than X+N (modulo M).

It is obviously important to protect the information loaded into memory 20 from loss. At the very least, that means that memory 20 must be non-volatile. Currently, we use an electrically bulk erasable, programmable, read-only memory (FLASH EEPROM) to form memory 20. This memory must be erased in bulk before new information can be written in it. To install a new EP in such a memory, it is recalled that the EP set must occupy less than half of memory 20, and that makes it convenient to construct memory 20 from at least two distinct erasable memory blocks (distinct in the sense of being able to erase one and not the other). Each segment of the downloading process begins with a bulk erasure of one of the memory 20 halves.

To summarize the downloading process of this invention,
1. Bulk erase the that half of memory 20 which does NOT contain the EP set of programs;
2. download a new EP set of programs to the erased half of memory 20;
3. download the offset address to pass control to the new EP set of programs;
4. bulk erase the other half of memory 20;
5. download the remainder of programs into memory 20.

If register 40 is to contain the offset address for a substantial time after downloading is accomplished, then its contents must be protected in a manner not unlike that of memory 20. Of course, register 40 can manufactured together with memory 20 and be an EEPROM. However, that is not absolutely necessary, and manufacturing costs could benefit if register 40 were constructed as part of the read/write memory or as part of processor 10.

Register 40 may be a volatile memory if the downloading process is carried out as depicted in FIG. 3. Specifically, by including a copy subroutine in the EP set of programs, the downloading process can be modified to the following (assuming the EP set is in the first half of memory 20):
1. Bulk erase the second half of memory 20;
2. download a new EP set of programs to the second half of memory 20;
4. download the offset address to pass control to the new EP set of programs;
5. bulk erase the first half of memory 20;
6. copy the contents of the second half of memory 20 into the first half of memory 20;
7. reset the offset address to 0; and
8. download the remainder of programs into memory 20.

Admittedly, during the copy sequence (which may also be a "move" sequence) the arrangement is vulnerable to power failures. Since the time of copying or moving is very small, this is a very unlikely event. Still, to protect against this unlikely event, the power source can be designed to have sufficient reserve to complete the copy operation, or to protect the starting address. A capacitor at the output of the power supply may supply the necessary power reserve.

6,131,159

5

In the arrangement described above where memory **20** consists of two FLASH EEPROM chips, register **40** needs to have only one bit of memory, and modifier circuit **30** can be merely an Exclusive OR gate which, with the aid of the one bit memory of register **40**, selects the bank of memory that is active.

What is claimed is:

**1**. A system comprising:

(a) a processor;

(b) a memory, and a set of programs stored in said memory that are executed when the system needs to be initialized, said memory being of a type which may be completely updated in its entirety but which is not volatile, said memory being the only program memory in said system; and

(c) alterable storage means for holding a displacement multi-bit memory address that is used to point to the starting address accessed by the processor when initializing.

**2**. The system of claim **1** wherein said memory is an EEPROM memory.

**3**. The system of claim **1** wherein said memory consists of 2-FLASH EEPROM devices.

**4**. The system of claim **1** wherein said alterable storage means is an EEPROM memory.

**5**. The system of claim **1** further comprising translation means interposed between said alterable storage means and said memory, wherein said alterable storage means holds an address that translates between addresses directed to the memory via said translation means and addresses actually applied to the memory by said translation means.

**6**. A system comprising:

(a) a processor;

(b) a memory coupled to said processor, said memory being the only program memory in the system, said memory being completely updatable in its entirety but non-volatile, there being a set of programs stored in said memory that are executed when the system needs to be initialized; and

(c) alterable memory means for storing a multi-bit memory address that controls the starting address accessed by the processor when initializing.

**7**. The system of claim **6** further comprising means for receiving a trigger signal at a telecommunications input port of the system to begin execution of said programs.

**8**. A system comprising;

(a) a processor;

(b) a memory and a communications port coupled to said processor, said communications port being adapted to communicate with devices which are external to said system, said memory being completely updatable in its entirety but non-volatile;

(c) a program module in said memory that, when activated by said processor, effects communication with said port; and

(d) operationally alterable means for setting the starting address of said program, which address is supplied to said system via said communication port.

**9**. The system of claim **8** wherein:

(a) said memory contains a first set of programs and a second set of programs;

(b) said memory is at least twice the size of the size of the first set of programs; and

6

(c) said operationally alterable means sets the starting position of the program executed by said processor in connection with communication with said port at a second specified location that is M removed from the first location, M being half the size of said memory.

**10**. A system comprising:

(a) a processor;

(b) a communication port coupled to said processor, said communication port being adapted to communicate with devices which are external to said system;

(c) a memory coupled to said processor, said memory being non-volatile and capable of being completely updated in its entirety, said memory containing programs, including a set of programs that are executed when the system needs to be initialized and a program for controlling communication through said communication port; and

(d) means for activating said program for controlling communication and receiving information through said communication port to modify the programs in said memory, said information including the program for controlling communication through said communication port and a command that is executed by said processor effectively when it is received.

**11**. The system of claim **10** wherein the communication port is a telecommunication port.

**12**. The system of claim **10** wherein the communication port is a telecommunication port and the programs execute the functions of a modem.

**13**. The system of claim **10** where the communication port receives commands to be executed by the processor and data to be stored in the memory.

**14**. The system of claim **10** wherein said means for receiving includes means for altering the program according to the information obtained by the means for receiving.

**15**. The system of claim **10** wherein said means for receiving modifies the programs by altering a portion of the memory contents pursuant to data received via said communication port.

**16**. The system of claim **10** wherein said means for receiving modifies the programs by replacing them with program data received via said communication port.

**17**. The system of claim **10** where the means for altering alters all of the programs in the system in a single communication session with said communication port.

**18**. A system comprising:

(a) a processor;

(b) a memory coupled to said processor, said memory being of a type, which is completely updatable in its entirety but non-volatile;

(c) a set of program means stored in said memory that are activated when said system needs to be updated wit a new set of programs, and

(d) alterable storage means for holding an offset memory address that is used to point to a starting address accessed by said processor when initializing.

**19**. The system of claim **18** wherein said memory is an EEPROM memory.

**20**. The system of claim **18** wherein said memory consists of 2 FLASH EEPROM devices.

**21**. The system of claim **18** wherein said alterable storage means is an EEPROM memory.

\* \* \* \* \*

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO. : 6,131,159
DATED : October 10, 2000
INVENTOR(S) : Hecht, et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 4, line 40, insert "be" between "can" and "manufactured".

Column 6, line 49, delete "," after "type".

Column 6, line 52, change "wit" to --with--.

Signed and Sealed this

Twenty-fourth Day of April, 2001

*Attest:*

*Nicholas P. Godici*

**NICHOLAS P. GODICI**

*Attesting Officer*          *Acting Director of the United States Patent and Trademark Office*



US006950444B1

(12) **United States Patent**
Holmquist et al.

(10) Patent No.: **US 6,950,444 B1**
(45) Date of Patent: **Sep. 27, 2005**

(54) **SYSTEM AND METHOD FOR A ROBUST PREAMBLE AND TRANSMISSION DELIMITING IN A SWITCHED-CARRIER TRANSCEIVER**

(75) Inventors: **Kurt Holmquist**, Largo, FL (US); **Joseph Chapman**, Seminole, FL (US)

(73) Assignee: **Paradyne Corporation**, Largo, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 812 days.

(21) Appl. No.: **09/637,185**

(22) Filed: **Aug. 11, 2000**

**Related U.S. Application Data**

(60) Provisional application No. 60/150,436, filed on Aug. 11, 1999.

(51) Int. Cl.[7] ............................................... **H04L 12/56**
(52) U.S. Cl. ...................................... **370/476**; 370/477
(58) Field of Search ................................. 370/476, 471, 370/472, 474, 477, 389

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,278,689 A | * | 1/1994 | Gitlin et al. | ................ 359/137 |
| 5,305,384 A | * | 4/1994 | Ashby et al. | ................ 380/29 |
| 5,535,199 A | | 7/1996 | Amri et al. | |

| | | | | |
|---|---|---|---|---|
| 5,822,373 A | * | 10/1998 | Addy | .......................... 375/259 |
| 6,252,865 B1 | | 6/2001 | Walton et al. | .............. 370/335 |
| 6,353,635 B1 | * | 3/2002 | Montague et al. | ..... 375/240.26 |
| 6,651,210 B1 | * | 11/2003 | Trott et al. | ................. 714/758 |

* cited by examiner

*Primary Examiner*—Kenneth Vanderpuye
(74) *Attorney, Agent, or Firm*—Thomas, Kayden, Horstemeyer & Risley LLP

(57) **ABSTRACT**

A method and system for robust delimiting of transmitted messages in switched-carrier operation in which a preamble precedes each communication message with the preamble comprising symbols transmitted at a rate lower than that of the following data. The lower rate symbols of the preamble significantly increase the probability that the decoder will decode the preamble symbols error free. Communication line control information can be included in the robust preamble, thereby ensuring that line control information is reliably transferred over the communication channel. The first symbol of the preamble can be transmitted at the lower symbol rate and at an increased power level, thereby clearly and reliably delimiting the beginning of a transmission. The end of the communication message can be reliably delimited by sending the first symbol containing only bits from a next cell of information at a lower symbol rate and including an extra bit in that symbol. The extra bit can be set to indicate to a receiver whether the last cell of information has just begun.

**55 Claims, 10 Drawing Sheets**



Case 2:07-cv-00396-TJW-CE  Document 61-17-6  Filed 04/25/2007  Page 2 of 23



**FIG. 1**



**FIG. 2A**

**FIG. 2B**



FIG. 3A



**FIG. 3B**



FIG. 4A



**FIG. 4B**



FIG. 5

FIG. 6



**FIG. 7**



**FIG. 8**



**FIG. 9**

US 6,950,444 B1

1

# SYSTEM AND METHOD FOR A ROBUST PREAMBLE AND TRANSMISSION DELIMITING IN A SWITCHED-CARRIER TRANSCEIVER

## CROSS-REFERENCE TO RELATED APPLICATIONS

This document claims priority to, and the benefit of, the filing date of Provisional Application Ser. No. 60/150,436 entitled "A TECHNIQUE FOR ROBUST SIGNAL DELIMITING AND ENCODING OF CRITICAL LINK CONTROL SIGNALS APPLIED TO TRANSMISSION OF ATM CELLS OVER A DSL USING ADAPTIVE TIME DOMAIN DUPLEX (ATDD)," filed on Aug. 24, 1999, which is hereby incorporated by reference.

## TECHNICAL FIELD

The present invention relates generally to communications systems, and more particularly, to a system and method for a robust preamble and transmission delimiting in a switched-carrier transceiver.

## BACKGROUND OF THE INVENTION

Data communication typically occurs as the transfer of information from one communication device to another. This is typically accomplished by the use of a modem located at each communication endpoint. In the past, the term modem denoted a piece of communication apparatus that performed a modulation and demodulation function, hence the term "modem". Today, the term modem is typically used to denote any piece of communication apparatus that enables the transfer of data and voice information from one location to another. For example, modem communication systems use many different technologies to perform the transfer of information from one location to another. Digital subscriber line (DSL) technology is one vehicle for such transfer of information. DSL technology uses the widely available subscriber loop, the copper wire pair that extends from a telephone company central office to a residential location, over which communication services, including the exchange of voice and data, may be provisioned. DSL devices can be referred to as modems, or, more accurately, transceivers, which connect the telephone company central office to the user, or remote location typically, referred to as the customer premises. DSL communication devices utilize different types of modulation schemes and achieve widely varying communication rates. However, even the slowest DSL communications devices achieve data rates far in excess of conventional point-to-point modems.

DSL transceivers can be used to provision a variety of communication services using, for example, asynchronous transfer mode (ATM). ATM defines a communication protocol in which 53 octet (byte) cells are used to carry information over the DSL communication channel. The first five octets of the ATM cell are typically used for overhead and the remaining 48 octets are used to carry payload data. When using a switched-carrier transmission methodology, a control transceiver may be connected via the DSL to one or more remote transceivers. In such a communication scheme, the transmission is commonly referred to as "half-duplex," which is defined as two way electronic communication that takes place in only one direction at a time. With only a single remote transceiver on a line, switched-carrier transmission may instead be employed in full-duplex mode (i.e., allowing transmission in both directions simultaneously). In this case, full-duplex operation is typically enabled by employing

2

either echo cancellation or frequency division multiplexing. Hybrid techniques are possible such as one in which there are multiple remote transceivers and communication takes place between the control transceiver and only one remote transceiver in full-duplex fashion. As it relates to the present invention, the common characteristic of these communication techniques is the use of a switched-carrier modulation in which transmitters are deliberately silent for some interval between signal transmissions. For simplicity, the following discussions assume the simplest case of using switch carrier modulation with a half-duplex (also sometimes referred to as "time domain duplex") line usage discipline.

Before the transmission of ATM cells, a preamble containing channel, transmission, address and administrative information may be transmitted by the transceiver. The application of this preamble is sometimes referred to as "framing" the data to be transmitted. Due to the switched-carrier nature of the transmission, silence precedes this preamble and it is of course important for all symbols in this preamble to be received error free. It is also desirable to have the ability to precisely delimit the beginning and end of a transmission to within one transmitted symbol interval. Robustly delimiting the beginning of a message enables a receiving transceiver to reliably begin immediately decoding the message at the correct symbol. Likewise, robustly delimiting the end of a message enables a receiving transceiver to reliably decode the entire message through the final symbol and then stopping so as to prevent data loss and to prevent the inclusion of any false data. Furthermore, by communicating the end of message indicator to a receiving transceiver prior to the actual end of the message, line turnaround time (i.e., idle time on the line between transmissions) can be reduced, thereby increasing the effective use of the available line bandwidth.

Because the most efficient signal constellation encoding cannot allocate signal space to silence, it is impractical to reliably discriminate silence from a signal when analyzing only a single symbol encoding an arbitrary data value.

To improve message delimiting, existing techniques use special marker symbols whose symbol indices are greater than those used to encode data. At N bits per symbol (bps) data is encoded using symbol indices $0$ through $2^N-1$. The special symbols use indices $2^N$ and above. While these special marker symbols are useful for marking the beginning and end of a transmission, their placement at the outer edges of a constellation raises the peak signal, thus increasing the peak to average ratio (PAR) across all data rates by as much as 4 dB. Unfortunately, discrimination of special symbols has the same error threshold as does decoding of data.

Thus, it would be desirable to have a robust manner in which to detect the beginning and end of a transmission so that line bandwidth can be most efficiently allocated. Furthermore, it would be desirable to robustly transmit a message preamble including control information thereby greatly improving the probability that the preamble is received error free.

## SUMMARY OF THE INVENTION

The present invention provides an improved system and method for robustly delimiting a message transmission in switched-carrier communication systems. The invention provides a method and system for transmission of a message preamble in which transmission of the preamble is more robust than the data. In this manner, the beginning and end of a transmission can be robustly delimited and channel control information can be reliably conveyed to a receiving transceiver.

US 6,950,444 B1

3

4

The system of the present invention uses a novel header application, which enables the transport of ATM, or any other data, efficiently and economically over a communications channel, such as a DSL communications channel.

Briefly described, in architecture, the system for robust transmission delimiting comprises a communication message including a preamble including a plurality of bits representing communication link control information, and an encoder configured to encode the preamble bits into a plurality of symbol indices. The symbol indices are encoded at a lower bit per symbol rate relative to the maximum rate capable of being supported over a communication channel.

In another aspect, the invention is a system for delimiting the end of a transmission. The system takes a communication message segmented into a plurality of fixed size units, each fixed size unit including a plurality of bits, and includes an encoder configured to encode the plurality of bits into a plurality of symbol indices at a first data rate. The encoder is also configured to encode the first symbol index containing only bits from each fixed size unit at a data rate lower than that of the first data rate.

The present invention can also be viewed as a method for robust transmission delimiting comprising the steps of applying a preamble to a communication message, the preamble including a plurality of bits representing communication link control information, and encoding the preamble bits into a plurality of symbol indices. The symbol indices are encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel.

In another aspect, the invention is a method for delimiting the end of a transmission comprising the steps of segmenting a communication message into a plurality of fixed size units, each unit including a plurality of bits, encoding a plurality of the bits in the cells into a plurality of symbol indices, the symbol indices being encoded at a first rate, and encoding the first symbol index containing only bits from each fixed size unit at a rate lower than that of the first rate.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention can be better understood with reference to the following drawings. The components in the drawings are not necessarily to scale, emphasis instead being placed upon clearly illustrating the principles of the present invention. Moreover, in the drawings, like reference numerals designate corresponding parts throughout the several views.

FIG. 1 is a schematic view illustrating a switched-carrier half-duplex communication environment, in which DSL transceivers containing the present invention reside;

FIB 2A is an illustration of the time-domain duplex communication methodology employed by the DSL transceivers of FIG. 1;

FIG. 2B is a schematic view illustrating, in further detail, a communication message of FIG. 2A;

FIG. 3A is a schematic view illustrating the bit to symbol relationship of the communication message of FIG. 2B;

FIG. 3B is a schematic view illustrating, in further detail, the preamble of FIG. 3A;

FIG. 4A is a graphical illustration representing a two (2) bit per symbol signal space constellation and the increased energy symbol of FIG. 3B;

FIG. 4B is a graphical illustration showing an exemplar grouping of constellation points representing different bit per symbol rates in accordance with an aspect of the invention;

FIG. 5 is a schematic view illustrating the communication message of FIG. 3A and a technique for scrambling that further improves reliable transmission of the message preamble;

FIG. 6 is a schematic view illustrating the communication message of FIG. 3A and the reduced line turn around delay made possible by an aspect of the invention;

FIG. 7 is a block diagram illustrating the control DSL transceiver of FIG. 1;

FIG. 8 is a block diagram illustrating the encoder of FIG. 7; and

FIG. 9 is a block diagram illustrating the decoder of FIG. 7.

DETAILED DESCRIPTION OF THE INVENTION

Although, described with particular reference to the transmission of ATM cells over a DSL communication channel, the system and method for a robust preamble and transmission delimiting can be implemented to transmit all forms of data in any switched-carrier transmission system in which it is desirable to send a robust preamble and to robustly delimit the beginning and end of each communication message.

Furthermore, the system and method for a robust preamble and transmission delimiting can be implemented in software, hardware, or a combination thereof. In a preferred embodiment(s), selected portions of the system and method for a robust preamble and transmission delimiting are implemented in hardware and software. The hardware portion of the invention can be implemented using specialized hardware logic. The software portion can be stored in a memory and be executed by a suitable instruction execution system (microprocessor). The hardware implementation of the system and method for a robust preamble and transmission delimiting can include any or a combination of the following technologies, which are all well known in the art: an discrete logic circuit(s) having logic gates for implementing logic functions upon data signals, an application specific integrated circuit having appropriate logic gates, a programmable gate array(s) (PGA), a field programmable gate array (FPGA), etc

Furthermore, the robust preamble and transmission delimiting software, which comprises an ordered listing of executable instructions for implementing logical functions, can be embodied in any computer-readable medium. Moreover, use by or in connection with an instruction execution system, apparatus, or device, such as a computer-based system, processor-containing system, or other system that can fetch the instructions from the instruction execution system, apparatus, or device and execute the instructions.

In the context of this document, a "computer-readable medium" can be any means that can contain, store, communicate, propagate, or transport the program for use by or in connection with the instruction execution system, apparatus, or device. The computer readable medium can be, for example but not limited to, an electronic, magnetic, optical, electromagnetic, infrared, or semiconductor system, apparatus, device, or propagation medium. More specific examples (a non-exhaustive list) of the computer-readable medium would include the following: a electrical connection (electronic) having one or more wires, a portable computer diskette (magnetic), a random access memory (RAM), a read-only memory (ROM), an erasable programmable read-only memory (EPROM or Flash memory) (magnetic), an optical fiber (optical), and a portable compact disc read-only memory (CDROM) (optical). Note that the computer-

US 6,950,444 B1

5

readable medium could even be paper or another suitable medium upon which the program is printed. As the program can be electronically captured, via for instance optical scanning of the paper or other medium, then compiled, interpreted or otherwise processed in a suitable manner if necessary, and then stored in a computer memory.

Turning now to the drawings, FIG. 1 is a schematic view illustrating a switched-carrier half-duplex communication environment 1, in which DSL transceivers containing the present invention reside. Although the invention will be described below in a half-duplex communication environment, the DSL transceivers containing the invention may be used in a switched-carrier full-duplex environment as well. In such a case, full-duplex operation may be enabled using technologies such as echo cancellation or frequency division multiplexing. Communication environment 11, includes central office 12 connected via communication channel 16 to customer premises 21. Communication channel 16 can be any physical medium over which communications signals can be exchanged, and in the preferred embodiment, is the copper wire pair that extends from a telephone company central office to an end-user location, such as a home or office. Central office 12 includes DSL transceiver 100 connected to communication channel 16. DSL transceiver 100 processes data via connection 14. DSL transceiver 100 exchanges data via connection 14 with any data terminal equipment (DTE), such as a computer or data terminal.

Customer premises 21 includes one or more DSL transceivers 150 connected via internal infrastructure wiring 18 to communication channel 16. The infrastructure wiring 18 can be, for example but not limited to, the telephone wiring within a private residence or within an office. DSL transceivers 150 can be connected to a variety of telecommunication devices located at customer premises 21. For example, DSL transceiver 150 connects via connection 22 to a personal computer 26. Although additional DSL transceivers can be located at customer premises 21, an exemplar one of which is indicated using reference numeral 155, the aspects of the invention to be discussed below are also applicable if only one DSL transceiver 150 is located at customer premises 21. In the example given in FIG. 1, DSL transceiver 155 connects to computer 28 via connection 29.

The DSL transceiver 100 located at central office 12 is considered a "control device" and the DSL transceiver 150 located at customer premises 21 is considered a "remote device." This is so because the control DSL transceiver 100 controls the communication sessions by periodically polling each remote DSL transceiver 150 to determine whether the remote device has information to transmit. Regardless of the number of DSL transceivers located at customer premises 21, the method of communication between DSL transceiver 100 located at central office 12 and DSL transceiver 150 located at customer premises 21 is half-duplex in nature, sometimes referred to as adaptive time-domain duplex, or data driven half-duplex, unless the above-mentioned technologies such as echo cancellation or frequency division multiplexing allow full-duplex operation between the control transceiver 100 and one remote transceiver 150. This means that during any time period only one DSL transceiver may transmit at any time. In the situation in which there are multiple DSL transceivers located at customer premises 21, the DSL transceiver 100 located at central office 12 periodically polls each DSL transceiver located at customer premises 21 at an appropriate time to determine whether any of the remotely located DSL transceivers have any information to transmit to central office 12. If only one DSL

6

transceiver 150 is located at customer premises 21, the communication method may be half-duplex in nature or conventional full-duplex techniques may be used (e.g., using either frequency division multiplexing or echo cancellation).

FIG. 2A is a schematic view illustrating the time-domain duplex communication methodology between a control DSL transceiver 100 and a remote DSL transceiver 150. When a control DSL transceiver 100 desires to send a message to a remote DSL transceiver 150 the control DSL transceiver 100 sends a communication message 31 including a preamble and any information that is to be transmitted. There are times when the communication message may include only a preamble. After the transmission of communication message 31, the remote DSL transceiver to which communication message 31 is addressed (in this example remote DSL transceiver 150) responds with communication message 32. After the remote DSL transceiver 150 completes the transmission of communication message 32, the control DSL transceiver 100 is now free to send another communication message 34 to either the same remote DSL transceiver 150 or, if present, a different remote DSL transceiver, such as DSL transceiver 155 (remote "n") of FIG. 1. As illustrated in FIG. 2A, remote DSL transceiver "n" responds with communication message 36. In this manner, the communication methodology between control DSL transceiver 100 and all remote DSL transceivers 150, 155. . . n, is switched-carrier and time-domain duplexed.

FIG. 2B is a schematic view illustrating, in further detail, the communication message 31 of FIG. 2A. Communication message 31 begins with preamble 40 followed by optional administrative header 42. In accordance with an aspect of the invention, all communication messages, regardless of the content, begin with preamble 40. Administrative header 42 is optional and can be used to send information that is neither part of the preamble 40 or of any data to follow. For example, the administrative header 42 could convey a description of noise level conditions at one end so the other end may opt to increase or reduce the power level of its transmission as necessary. Likewise, the administrative header 42 sent by a remote transceiver could contain information regarding the amount of payload information that the remote transceiver is ready to transmit and its relative priorities so that the control transceiver could alter the amount of time that this remote transceiver is given to transmit its data (relative to any other transceivers connected to the line). When the payload data comprises ATM cells, the control transceiver could use messages conveyed by the administrative header 42 to direct remote devices to activate or deactivate various ATM virtual circuits.

If data is included in communication message 31, one or more ATM cells follow the optional administrative header 42. Although illustrated using three ATM cells, 44, 45 and 46, there are situations in which no ATM cells, or for that matter, no information of any kind, follows preamble 40. In the case in which information does follow preamble 40, and for purposes of illustration only, ATM cells 44, 45 and 46 are each standard 53 octet ATM cells. For example, ATM cell 44 includes 5 octet ATM header 47 and 48 octets of ATM data 48. ATM cells 45 and 46 are identical in structure to ATM cell 44. ATM cells 44, 45 and 46 adhere to the conventional ATM cell structure as defined in standardized ATM literature. It should be noted that optional administrative header 42 does not follow the standard ATM cell format and that administrative header 42 can be any number of octets in length. As known to those having ordinary skill in the art, an octet comprises 8 bits of information. Although described with particular reference to the transportation of ATM cells

US 6,950,444 B1

7

over a DSL communication channel, the principles of the invention are applicable to all fixed length communication messages.

FIG. 3A is a schematic view illustrating the bit to symbol relationship of the communication message 31 of FIG. 2B. In accordance with an aspect of the invention, preamble 40 is placed at the beginning of every transmission (i.e., each communication message 31). Preamble 40 is followed by optional administrative header 42, which is then followed, if there is data to transmit, by one or more 53 octet ATM cell 44 and 45. Although illustrated using only two ATM cells, any number of ATM cells may follow preamble 40 and, if included, optional administrative header 42. The ATM cells are a stream of data information represented as a series of bits that are placed into each ATM cell.

The preamble 40 is also a series of bits, which are encoded into a number of communication symbols. Symbols are the representation of the bits to be transmitted, and are represented as signal points in a signal space constellation (to be described below with respect to FIGS. 4A and 4B). In accordance with one aspect of the invention, each of the bits in preamble 40 are encoded into symbols, an exemplar one of which is illustrated using reference numeral 55, at the lowest available bit rate that can be transmitted over the communication channel 16. For purposes of illustration only, the symbols that encode the bits in the preamble 40 shown in FIG. 3A are encoded at a rate of two (2) bits per symbol. However, any number of bits per symbol lower than that of the normally transmitted data rate can be used so long as the symbol rate allows a receiving device to more reliably decode those symbols. For example, if the normal data rate is five (5) bits per symbol, then a symbol rate of two (2) bits per symbol has a significantly (approximately 9 dB) higher noise margin than the five (5) bit per symbol data rate, thereby allowing the symbols that are encoded at the lower rate of two (2) bits per symbol to be very robustly and reliably decoded by a receiving device. In this manner, the preamble 40, which is sent at the beginning of every communication message 31, can be made sufficiently robust so that the chance that it will always be received error free is greatly increased. Although very robust, there are still situations in which the symbols into which the preamble bits are encoded can be corrupted. However, in accordance with another aspect of the invention, because the preamble 40 is sent at the beginning of every communication message 31, even if the preamble 40 is corrupted, only data following that preamble may be affected, i.e., lost due to corruption, if certain bits of the preamble are corrupted.

In accordance with another aspect of the invention, the first symbol 55 representing the first bits in the preamble 40 can be sent using an increased power level, thereby clearly and robustly delimiting the beginning of the communication message 31. The effect of this increased power level symbol 55 will be explained in greater detail below with respect to FIGS. 4A and 4B.

Still referring to FIG. 3A, if an administrative header 42 is present in communication message 31, then the bits that are contained in administrative header 42 will be encoded at a symbol rate of "N" bits per symbol, where N is the normal data rate. The normal data rate can be any data rate, for example, but not limited to, a value between 2 and 12 (inclusive) bits per symbol. For purposes of illustration, and for simplicity of explanation, the normal symbol rate can be five bits per symbol. This is represented by the group of symbols 56 into which all the bits of administrative header 42 and a portion of the bits of header 47 of ATM cell 44 are encoded.

8

In accordance with another aspect of the invention, the first symbol used to encode bits from a particular cell that contains bits only from that cell will be encoded at a data rate lower than that of the standard data rate used for all other bits of each cell. For example, symbol 57 is the first symbol that contains bits only from ATM cell 44. The last symbol 65 of symbol group 56 contains bits from both administrative header 42 and ATM cell 44. Likewise, symbol 60 is the first symbol containing only bits from ATM cell 45. In accordance with this aspect of the invention, the symbols 57 and 60 will be encoded at a data rate that is two (2) bits per symbol lower than that of the preceding symbol (represented by N−2 where N is the number of bits per symbol used for encoding all other bits of the administrative header and ATM cells.) In this manner, because of the fixed length 53 octet ATM cells, by simple bit counting, the receiver will always know the first symbol encoding bits from a cell that contains only bits from this cell, and therefore has the special encoding described herein. These N−2 bits of the cell data are grouped for transmission and an additional bit (bit 54 for cell 44 or bit 61 for cell 45) is added for a total of N−1 bits encoded into symbol 57 or 60, respectively. This group of N−1 bits, represented by symbol 57 or 60, is encoded into a symbol and scaled for transmission with the scaling normally applied when encoding at N−1 bits per symbol. The extra bit 54 or 61 indicates whether or not the cell just started (ATM cell 44 or 45, respectively) is the last cell of the transmission. The extra bit 61 in symbol 60 is set to logic one to indicate that ATM cell 45 is the last cell of the transmission so that the receiver will know at the beginning of the receipt of ATM cell 45 that ATM cell 45 is the last cell in the transmission. For the same reason, bit 54 in symbol 57 set to zero so that the receiver will know that at least one more cell follows cell 44.

If N=2, then no bits are taken from the cell to encode the next symbol (since N−2=0). Since N−1=1, the next symbol contains just one bit, which is the last cell indicator. This effectively inserts an entire extra symbol in each cell. Nevertheless, the same encoding/decoding logic for this special symbol applies for any value of N≧2.

Once the receiver knows that a particular cell is the last cell in the message, by simple counting it can readily identify the symbol that contains the last bits of the last cell. This is represented in FIG. 3A as symbol 51 or optionally symbol 53. Since the number of bits remaining to be transmitted in the last symbol (M) can be less than N, a modified encoding technique is preferable for this symbol. One option is to add one or more padding bits (P) 52 so that M+P=N. Another option is to encode the last group of bits at M bits per symbol as represented by symbol 53. This has the advantage of increased robustness for the transmission of these bits.

For simplicity, the following discussion does not address this second technique. Having recognized the last symbol of the transmission, the receiver does not attempt to demodulate and decode the signal on the line following this symbol since the transmitting station must now be sending silence.

It should be noted that although described as being encoded at N−1 bits per symbol, the symbols 57 and 60 containing the additional last cell indicator bit can be encoded at any symbol rate lower than that of the standard transmission rate (N bits per symbol). For example, if N is five (5), the specially encoded symbols could also be encoded at N−2 or three (3) bits per symbol so that they contain two (2) bits of cell data plus the last cell indicator bit. In this manner, the receiver can clearly and reliably decode the symbol 60, thereby providing a robust and reliable end of message delimiter.

US 6,950,444 B1

9

In accordance with this aspect of the invention, and to be described in further detail with respect to FIG. 3B, it is also desirable to have the ability to indicate that a message contains only an administrative header **42**. In order to accomplish this, the first symbol containing data from the administrative header **42** can also be encoded using the higher noise margin N−1 bit per symbol encoding technique described above. For example, the first N−2 bits of the administrative header **42** can be combined with a last cell bit (such as bit **61** of symbol **60**) and be encoded at the N−1 bit per symbol rate. This can provide the extra bit to indicate whether or not one or more ATM cells follow administrative header **42**. An alternative technique is to simply include a bit in the preamble **40** that indicates whether an administrative header **40** follows the preamble. For simplicity, it has been assumed that this alternative technique is used with respect to FIG. 3A and in the following discussion.

Because each ATM cell is the smallest unit of a payload of ATM cells, and because all ATM cells have the same length, the first symbol of each cell that carries only bits of that cell can readily be identified. Because these bits are transmitted using the specially encoded symbol carrying two fewer bits than normal (as described above), the length of each cell is effectively increased by two bits. In some cases this can result in one extra symbol being needed to transmit the cell. In other cases an additional cell is not needed because the spare bits are available anyway (and would have ended up as the padding bits (P) **52** in FIG. 3A). Because the cells may be transmitted contiguously as a bit stream, the addition of one extra symbol may provide sufficient extra bits to cover the opening symbol of multiple following cells. For example, at eight (8) bits per symbol, in one (1) extra symbol is needed to cover the end of frame signaling overhead to transmit up to four (4) cells.

FIG. 3B is a schematic view illustrating, in further detail, the exemplar preamble **40** of FIG. 3A. The bit stream of preamble **40** comprises four (4) bits **62** that include information regarding the transmit rate (in bits per symbol) used to encode data following preamble **40** (the data comprising the optional administrative header and optional ATM cells), four (4) bits **63** that include information regarding the rate (also in bits per symbol) that the receiver is capable of receiving, two (2) bits **64** that identify the address of a remote DSL transceiver if the control DSL transceiver is transmitting (if a remote DSL transceiver is transmitting, then these two (2) bits **64** can represent the address of that remote DSL transceiver) and two (2) bits **66**, which can be used to communicate the format of the message to follow. For example, the two (2) bits **66** can be used to advise a receiving device whether an administrative header **42** follows the preamble **40**, whether ATM cells follow the preamble, whether both follow or whether only the preamble is being transmitted. The four (4) bits provided by symbols **55** and **67** and by symbols **68** and **69** can each encode as many as sixteen data encoding rates.

As mentioned above, the preamble **40** is sent at the beginning of each transmission. The twelve (12) bits that comprise the preamble **40** are encoded into symbols **55**, **67**, **68**, **69**, **70** and **71** in accordance with that described above. In accordance with an aspect of the invention, all of the symbols in preamble, **40** are encoded at a low bit per symbol rate. In this example, all of the symbols are encoded at a rate of two (2) bits per symbol, however, any other low bit per symbol rate can be used with similar results. The low bit per symbol rate ensures a high signal-to-noise ratio for these symbols, thereby significantly decreasing the probability that these preamble symbols will be corrupted by noise on

10

the communication channel. The payload data (administrative header and ATM cells) would typically be encoded at N bits per symbol only if transmission at this N bit per symbol rate has an acceptably low rate of errors (based on line length, signal strength, noise, distortion and other impairments that may be present). Otherwise, data transmission efficiency would suffer. Therefore, encoding the preamble at less than N bits per symbol allows a corresponding improvement in the reliability of transmitting this information such that it is highly unlikely to be corrupted. Since very few bits are needed to convey the information carried in the preamble, a very low rate can be used without seriously reducing the overall transmission efficiency.

In accordance with another aspect of the invention, the first symbol **55** is encoded at a rate of two (2) bits per symbol and has its energy increased to a point at which noise on the communication channel is unlikely to cause a receiver to erroneously interpret the first symbol **55** as silence. Likewise the increased energy makes it unlikely that noise on the communication channel will cause the receiver to erroneously interpret an interval of the silence that precedes each message as the starting symbol of a message. It has been found that an energy increase of 3dB is sufficient. This aspect of the invention will be described in greater detail below with respect to FIGS. 4A and 4B. In this manner, the beginning of each transmission can be clearly and robustly delimited. The remainder of the symbols **67**, **68**, **69**, **70** and **71** that represent the bits in preamble **40** are all encoded at two (2) bits per symbol, but do not have their energy increased.

The four (4) transmit rate bits **62** inform a receiving DSL transceiver of the transmit rate of the information to follow the preamble **40**. Sending this information in every message has significant benefits. It provides the transmitting transceiver the option of changing the encoding rate for the payload from one message to the next. Messages containing information that has been determined to be of high priority can be transmitted using a lower number of bits per symbol to improve the chances of its being received without errors. If the communications system intermittently has a reduced throughput demand, the transceivers may instantly reduce their data rates to improve robustness without adversely affecting real throughput. Finally, if a severe noise condition (such as an impulse caused by plain old telephone service (POTS) ringing signals on a subscriber line **16**) happens to corrupt one or both of the symbols **55** and **67** that encode the transmit rate, only the payload data in this message will be improperly decoded. The receiver's memory of a corrupted rate value lasts only until the next transmission begins. This allows the transmit rate to potentially be changed for every message while at the same time avoiding the complexities of providing fail-safe communication of the rate, such as through use of an automatic repeat request (ARQ) protocol, that would be needed if the rate is sent only when it is changed.

The receive rate bits **63** allow the transmitting device to communicate to the receiving device the maximum receive rate at which the transmitting device can receive. Inherently included in these receive rate bits **63** are commands that instruct the opposite device to either increase or decrease its transmit rate. This allows the responding transceiver to instantly modify the rate it uses for its next transmission to accommodate changes in the signal quality that have been detected at the opposite end of the line.

In accordance with an aspect of the invention, the address bits **64** need only be used when the control DSL transceiver

US 6,950,444 B1

11

100 is communicating with a plurality of remote DSL transceivers in what is commonly referred to as "multipoint" mode. When communicating in "multi-point," mode the address bits 64 include either the address of the remote DSL transceiver 150 that is to transmit next (if the transmission is sent by the control DSL transceiver 100) or the address of the responding remote DSL transceiver 150 (if the transmission is sent by the remote DSL transceiver 150). Sending these bits 64 at the lower bit rate of the preamble reduces the likelihood of a remote transceiver 150 not responding or of the incorrect remote transceiver 150 responding to a message from the control transceiver 100. Frequent occurrence of either of these two types of errors could adversely affect the overall data transmission efficiency of the line.

The format bits 66 indicate whether the optional administrative header 42 is being sent, whether one or more ATM cells are being sent, or whether both or neither are being sent. As described previously, the receiver uses this information in conjunction with the transmit rate from bits 62 to identify the special symbols at the start of each ATM cell and to determine the symbol that is the last in the message. Robust transmission of this information at the start of each message allows the transmitter to dynamically modify the message format as needed from one message to the next. Should one of the format bits be corrupted by an abnormally severe noise event, the "damage" is restricted to the current message only. To operate reliably, the receiver could have a "back up" method of recognizing the end of a message such as through detecting loss of signal energy for an extended duration.

FIG. 4A is a graphical illustration representing a two (2) bit per symbol signal space constellation and the increased energy symbol of FIG. 3B. The constellation points labeled "c" represent the points in a standard 2 bit per symbol constellation. For each constellation point "c" transmitted, the effect of noise can make the point appear to a receiver to have been moved with respect to where it was when it was transmitted. The dashed circle 76 surrounding constellation point 79 represents the space within which noise may move the point and still have the point reliably decoded by the receiver. The point 79 appears in a different place at the decoder due to noise induced in the communications channel 16. Each of the points "c" have a space about which they can move and still be reliably decoded by the receiver.

The circle 77 encloses the area surrounding the origin of the in-phase-(horizontal) and quadrature (vertical) axes of FIG. 4A about which an interval of silence (no constellation point) can be moved by the same additive noise that can affect signal points. This additive noise could cause the silence to be interpreted by the decoder as one of the constellation points in a two (2) bit per symbol constellation due to the overlap of the decoding discrimination threshold circles 76 and 77. As shown, the circle 76 and the circle 77 have sufficient overlap in region 73 so that silence can easily be interpreted as one of the signal points "c". Conversely, one of the signal points "c" could also be interpreted by the decoder as silence.

For efficient operation, it is desirable that the beginning and end of each transmission be robustly and precisely identified (to within one (1) symbol interval). The beginning and end of each transmission are preceded and followed by silence on the line. Because the most efficient constellation encoding cannot allocate signal space to silence, it is impractical to reliably discriminate silence from signal when analyzing only a single symbol. In other words, it would be undesirable for silence that occurs before a message or after

12

a message to be interpreted as a constellation point "c", and it would be undesirable for a constellation point "c" to be interpreted as silence. As mentioned above, this is possible due to the effect of noise altering the position of the constellation signal points "c" or the position of silence.

In accordance with an aspect of the invention, the first symbol (symbol 55 of FIG. 3B) in the preamble 40 is transmitted with increased energy, thereby increasing the probability that it will be reliably detected by the decoder of the receiving device. In this manner, the beginning of each transmission is clearly and robustly delimited. The signal point "b" in FIG. 4A is an exemplar one of four (4) two (2) bit per symbol constellation points that are transmitted at an increased energy level. While other increases may provide useful, a 3 dB increase is typically sufficient and does not increase the ratio of peak power to average power (PAR) of the transmitted signal. As illustrated, the signal point "b" is enclosed by dotted circle 78, within which the point "b" may move due to noise on the communication channel 16 and still be reliably decoded by the receiver. As shown, there is no overlap between circle 78 and circle 77. Accordingly, by boosting the energy of the first symbol (symbol 55 of FIG. 3B) transmitted in a communication message (31 of FIG. 3A), there is a significantly higher probability that the boosted symbol will be reliably decoded and not be mistaken for silence. Nor will silence be mistaken for this boosted energy first symbol. Preferably, the receiver places the threshold to discriminate signal from noise at one unit from the origin as shown by circle 77 in FIG. 4A.

FIG. 4B is a graphical illustration showing an exemplar grouping of constellation points representing different bit per symbol rates in accordance with an aspect of the invention. For example purposes only, assuming that normal data is encoded at five (5) bits per symbol, the black constellation points, an exemplar of one of which is illustrated using reference numeral 81, represent data encoded at five (5) bits per symbol. In accordance with an aspect of the invention, all the symbols in the preamble 40 are encoded at a rate of two (2) bits per symbol and are illustrated by the four (4) constellation points labeled "c" in FIG. 4B. These two (2) bit per symbol constellation points provide a higher signal-to-noise ratio (high margin) than do the normal data encoded at five (5) bits per symbol. This increased margin increases the probability that the receiver will reliably decode all the symbols in the preamble.

In accordance with another aspect of the invention, the four constellation points labeled "b" in FIG. 4B represent the first symbol (symbol 55 of FIGS. 3A and 3B), which energy is boosted by 3 dB. In this manner, the constellation points "b" representing the boosted symbol 55 of FIG. 3A and 3B will robustly and reliably communicate the beginning of a transmission. Circle 82 represents the maximum signal level of any symbols as the number of bits per symbol becomes arbitrarily large, but the average power of the transmitted signal is the same as it is for either the five (5) bits per symbol (81) or the two (2) bits per symbol (points "c") constellations shown. Therefore, as illustrated by circle 82, the instantaneous power required by the boosted symbol points "b" is not any higher than that used to send the normal data at any bits per symbol value. In this manner, the boosted symbol represented by constellation points "b" can be used to reliably indicate the start of a message without requiring a higher transmit level capability than that needed for normal data transmission. The non-boosted two (2) bit per symbol constellation points indicated as "c" (having a significantly higher signal-to-noise ratio than that of the normal five (5) bit per symbol data) are used to transmit all symbols of the preamble after the first symbol.

**13**

FIG. 5 is a schematic view illustrating the communication message 31 of FIG. 3A and another aspect of the invention. Typically, it is desirable to scramble all the data bits in a communications message using a self-synchronizing scrambler so that all points in the signal constellation can be used. Unfortunately, the self-synchronizing capability of the scrambler carries the inherent disadvantage of error propagation and extension. A single bit in error in the received data stream is typically transformed by the self-synchronizing descrambling process into at least 3 erroneous bits that are separated by several bits that are not in error.

Typically, in switched-carrier operation, the scrambler setting (state) at the end of one transmission is preserved and used to begin scrambling the next message. (This enables full randomization of the encoding process so as to make full use of the available channel bandwidth.) Similarly, in a receiving device, when descrambling, the state of the descrambler that exists at the end of the previously received message is used to begin the descrambling process for the next received message. This means that the last state of the scrambler saved after scrambling the data portion of the message would then be used to begin scrambling the preamble bits of the next message.

Unfortunately, using this technique with the robust preamble 40 of the invention can lead to error propagation from the data portion of the communication message to the preamble 40. Allowing errors, which are more likely due to the larger number of bits per symbol, in the payload data to corrupt the data in the preamble due to the inherent error extension of the descrambling process significantly reduces the robustness of the preamble 40. In accordance with another aspect of the invention, a first scrambler is used to scramble the information contained in the preamble 40 and a second scrambler can be used to scramble the data (i.e., the information in the ATM cells 44, 45, etc.)

As shown in FIG. 5, line 87 indicates that a first scrambler is used to scramble the preamble 40 of communication message 31 and also used to scramble the preamble of communication message 86. Similarly, line 88 indicates that a second scrambler is used to scramble the data portion of communication message 31 and the data portion of communication message 86. The message to message randomizing desirable for full usage of the available channel bandwidth can be maintained if the setting of the preamble scrambler (to be described with respect to FIG. 8) at the end of one preamble is used to begin the scrambling of the preamble of the next communication message 86. Because errors in the preamble are considered unlikely to occur, and because the bits received at the end of a previous preamble define the descrambler state used to descramble the next preamble, error extension from one message preamble into the preamble is also much less likely than in the single scrambler case.

An alternative to this that avoids the use of two scramblers is to save the state of the preamble scrambler after scrambling the preamble as the state to use to begin scrambling of the next preamble. This cab be done instead of the conventional approach of using the state of the scrambler at the end of the message. This technique can also prevent errors at the end of one message from corrupting the preamble of the next transmission.

FIG. 6 is a schematic view illustrating the communication message 31 and the reduced line turn around delay made possible by an aspect of the invention. In time-domain duplex operation any periods during which no transceiver is transmitting represent loss of available bandwidth. To make

**14**

most efficient usage of a communication line, it is desirable to minimize these periods. Some intervals of silence necessarily occur between transmissions because the transition from silence to the first symbol of the preamble is the manner in which the beginning of the next transmission is delimited. The process by which a transceiver makes the transition from receiving to transmitting is referred to as "line turn-around" and the time required may determine the minimum amount of silence that can occur between messages. Various aspects of the design and implementation of a time-domain duplex transceiver may result in increased delays in the line turn-around process. For example, transmitter filters and receiver equalizers have inherent delays. The analog-to-digital and digital-to-analog conversion process as well as the process of transferring digital samples between the signal processor and converters may have some inherent delays. If the signal processing is implemented in firmware there may be delays between the arrival of received signal samples and the time the processing can be performed. All of these factors may extend the line turn-around time to the point that transmission efficiency is significantly reduced.

As described above with respect to FIG. 3A, communication message 31 includes a specially encoded symbol 60 transmitted at a lower bit per symbol rate than that of the normal data encoding rate. The symbol encodes an additional bit 61 that indicates whether or not the ATM cell is the last cell in the communication message 31. If it is indicated to the receiver at the beginning of the last ATM cell 46 that the ATM cell 46 is the last cell in the communication message, (instead of waiting to the end of the ATM cell 46) line turn around delay can be reduced. As illustrated, if a receiving device must wait until the end of the last message to learn that the message is complete, there will be a delay "d" between the time that the communication message 31 is received and the time at which the transmission of communication message 91a can begin. By having advance notification that the communication message is about to be complete, a remote DSL transceiver 150 can begin transmission of the next message before reception of the current message has been completed. By knowing the delay contributed by the factors such as those mentioned previously, the transceiver can begin the transmission process, indicated by communication message 91b, so as to reduce delay "d" as much as possible, potentially reducing it to the minimum value needed for the receiver to reliably detect the transition-from silence to signal at the beginning of the next message.

FIG. 7 is a block diagram illustrating the control DSL transceiver 100 of FIG. 1. Although, described with respect to control DSL transceiver 100, the following description is equally applicable to a remote DSL transceiver 150. Control DSL transceiver 100 includes microprocessor 101, memory 102, transmitter 115 and receiver 120 in communication via logical interface 108. A bi-directional stream of ATM cells from a DTE is communicated via line 14 to the control DSL transceiver 100. Memory 102 includes end of transmission delimiting software 106 and robust preamble software 104. This software resides in memory 102 and executes in microprocessor 101 in order to achieve and perform the benefits of the present invention. Transmitter 115 communicates with line interface 109 via connection 112 in order to gain access to communication channel 16. Information received on communication channel 16 is processed by line interface 109 and sent via connection 111 to receiver 120.

Transmitter 115 includes, among other elements that are known to those having ordinary skill in the art, encoder 200 and modulator 117. Similarly, receiver 120 includes, among

US 6,950,444 B1

15                                                                    16

other elements that have been omitted for clarity, decoder 300 and demodulator 118.

FIG. 8 is a block diagram illustrating the encoder 200 of FIG. 7. The transmit sequencer 236 commands the multiplexer 214 via connection 242 to select the first two (2) bits of the four (4) bits (62 of FIG. 3B) that define the current transmit rate from transmit rate element 206, via connection 212. This symbol is then forwarded to preamble scrambler 217, via connection 216 for scrambling, and is then forwarded via connection 218 to two (2) bit per symbol preamble encoder 219. This encoded symbol is then forwarded via connection 226 to gain increase element 227 where its energy is increased by approximately 3 dB and is then sent via connection 228 to multiplexer 224 and over connection 254 to modulator 117.

The next two (2) bits of the transmit rate (62 of FIG. 3B) are then scrambled and encoded in the same way. Next, the transmit sequencer 236 commands the multiplexer 214 via connection 242 to select the four (4) bits representing the requested received rate from receive rate element 204, which bits are forwarded to multiplexer 214 via connection 211. These four (4) bits are then forwarded to preamble scrambler 217 where they are scrambled, and then forwarded via connection 218 to two (2) bit per symbol preamble encoder 219 where they are encoded into a pair of symbols. These encoded symbols, are forwarded directly via connection 226 to multiplexer 224 and then forwarded via connection 254 to modulator 117.

If there are multiple remote DSL transceivers 150 and 155, then the transmit sequencer 236 commands the multiplexer 214 via connection 242 to select the two (2) bits representing the remote address from remote address element 202, which bits are then forwarded via connection 209 to multiplexer 214. These two (2) bits are then forwarded via connection 216 to preamble scrambler 217, which scrambles the bits and forwards them via connection 218 to the two (2) bit per symbol preamble encoder 219. The two (2) bit per symbol preamble encoder 219 encodes the bits and transfers the encoded symbol via connection 226 through multiplexer 224 and then via connection 254 to modulator 117.

Transmit sequencer 236 senses if an administrative header 42 and/or ATM cells 44, 45, 46 are available for transmission via connections 232 and 234, respectively, and uses this information to prepare the message format indicator which is loaded by the transmit sequencer 236 via connection 207. The transmit sequencer 236 commands the multiplexer 214 via connection 242 to select the two (2) bits representing the message format from element 201, which bits are then forwarded via connection 208 to multiplexer 214. These two (2) bits are then forwarded via connection 216 to preamble scrambler 217, which scrambles the bits and forwards them via connection 218 to the two (2) bit per symbol preamble encoder 219. The two (2) bit per symbol preamble encoder 219 encodes the bits and transfers the encoded symbol via connection 226 through multiplexer 224 and then via connection 254 to modulator 117.

Next, transmission of either the administrative header 42 or the ATM cell payload begins by transmit sequencer 236 sending a command via connection 235 to multiplexer 241 to select either the administrative header 42 via element 229 or payload data via element 231. These bits are supplied through multiplexer 241 via connections 239 and 238 and are then forwarded via connection 244 to payload scrambler 246. Payload scrambler 246 scrambles the bits and forwards them via connection 248 to N bit per symbol data encoder 249 and N−1 bit per symbol data encoder 251. As mentioned

above with respect to FIG. 5, payload scrambler 246 may use as its initial state either the state that exists at the end of scrambling the preamble (supplied via connection 247) or the state that exists after completion of scrambling the payload portion of the previous message. As mentioned above with respect to FIG. 3A, all the data bits are encoded at an N bit per symbol data rate by data encoder 249 and forwarded via connection 257 to multiplexer 224 until the first symbol containing only bits from a new ATM cell is detected. This symbol is encoded at a rate of N−1 bits per symbol by N−1 bit per symbol data encoder 251 and forwarded via connection 256 to multiplexer 224. The index for this symbol as delivered to payload scrambler 246 is formed by selecting the first N−2 bits of the first octet of the cell and adding an additional bit (i.e., bit 54 or 61 of FIG. 3A) representing the state of the last cell signal 237 as selected via multiplexer 241. When instructed by transmit sequencer 236 via connection 252, the multiplexer 224 selects the symbols from either N bit per symbol data encoder 249 or from N−1 bit per symbol data encoder 251 and forwards these symbols via connection 254 to modulator 117.

Transmit sequencer 236 uses the payload bits per symbol value N received via connection 212 to determine the number of symbols to encode for each cell and to determine which symbol is to be encoded at the N−1 bits per symbol rate and contain the last cell indicator bit. After completing transmission of the message, transmit sequencer 236 commands multiplexer 224 via connection 252 to select silence 221 via connection 222 as the input to the modulator 117.

FIG. 9 is a block diagram illustrating the decoder 300 of FIG. 7. A received transmission stream is received in demodulator 118, where it is demodulated in accordance with techniques known those having ordinary skill in the art. The first symbol is forwarded via connection 301 to gain reduction element 302. Gain reduction element 302 reduces the gain of the first symbol and supplies that reduced energy symbol via connection 304 to multiplexer 306. Receive sequencer 328 sends a signal to multiplexer 306 via connection 354 instructing multiplexer 306 to select that reduced gain symbol and transfer it via connection 307 to two (2) bit per symbol preamble decoder 308. The decoded bits from the first symbol are then sent via connection 309 to preamble descrambler 311. Preamble descrambler 311 descrambles the first bits in the transmission and forwards them via connection 312 to the multiplexer 314. When instructed by receive sequencer 328 via connection 332, the multiplexer 314 forwards these bits via connection 324 to transmit rate element 236.

The following preamble symbols are all forwarded via connection 301 directly to multiplexer 306, which forwards these symbols via connection 307 for decoding by two (2) bit per symbol preamble decoder 308. The decoded bits are forwarded via connection 309 to preamble descrambler 311 as mentioned above. These bits are then forwarded in order via connections 324, 321, 318 and 316 to transmit rate element 326, receive rate element 322, remote address element 319 and message format element 317, respectively.

Next, the administrative header symbols and ATM cell data symbols that have been encoded at N bits per symbol are forwarded via connection 301 to N bit per symbol data decoder 337 and the ATM cell data symbols that have been encoded at N−1 bits per symbol are forwarded via connection 301 to N−1 bit per symbol data decoder 339. These symbols are decoded and the decoded bits are transferred via connections 338 and 341 to multiplexer 342. Similarly, as mentioned above with respect to FIG. 8, receive sequencer

17

18

328 insures that the symbols encoded at the rate of N−1 bits per symbol are forwarded via connection **301** to N−1 bit per symbol data decoder **339**, which forwards the decoded bits via connection **341** to multiplexer **342**. As shown, the value of N, which is the bits per symbol value used for the N bits per symbol, or N−1 bits per symbol decoding is controlled by the just received transmit rate bits that have been stored in transmit rate element **326**.

At the appropriate time, receive sequencer **328** commands the multiplexer **342** via connection **347** to forward the bits via connection **344** to payload descrambler **336**. In accordance with an aspect of the invention, the preamble descrambler **311** operates only on the preamble bits and the payload descrambler **336** operates only on the payload bits. As mentioned above with respect to FIG. **5**, the payload descrambler may use as its initial state either the state of the preamble descrambler at the end of descrambling the preamble as supplied via connection **334** or the state of the payload descrambler at the end of descrambling the payload bits of the previous message. The descrambled payload bits are then forwarded via connection **346** to multiplexer **349**. When ordered by receive sequencer **328** via connection **331**, the multiplexer **349** forwards the administrative header bits via connection **351** and the payload data bits via connection **352**. These bits are then forwarded via logical interface **108** to microprocessor **101** for processing (FIG. **7**). Receive sequencer **328** determines the presence or absence of the administrative header and ATM cells via the just received message format bits that have been stored in element **317** and provided to receive sequencer **328** via connection **327**. When the bits for each symbol containing the last message bit are available at multiplexer **349**, receive sequencer **328** directs the N−2 bits of payload data to the payload data element **356** via connection **352** and receives the last cell bit via connection **329**. Receive sequencer **328** uses the current bits per symbol value for payload data received via connection **324** to determine the beginning and end of each cell. Based on the message format and the value of the last cell indicator bit, receive sequencer **328** determines when the last symbol of the message has been decoded and instructs demodulator **118** (FIG. **7**) to stop delivering demodulated symbols.

In an alternative embodiment, the special encoding of the last cell as described above in FIG. **3A** can be omitted and an "eye pattern closure test" can be used to detect the end of the message. In such a situation where it is acceptable to lose the advanced notification of the end of the transmission, beneficial alternative uses for the special encoding of the first bits of each cell are possible. For example, this special encoding as described above with respect to FIG. **3A** wherein N−2 bits are encoded for the first full bytes of each cell, can be used to indicate whether or not the ATM cell header (e.g., ATM header **47** of FIG. **2B**) is present. This can be useful in the situation in which a string of ATM cells have exactly the same header. This can happen, for example, for ATM adaptation layer **5** (AAL5) cells that carry data from a single protocol data unit (PDU) if no other cells have been interleaved. The single extra bit (bit **61** of FIG. **3A**) provided by the encoding described above with respect to FIG. **3A**, can be used to indicate whether or not the following cell contains a header. If the bit **61** indicates that there is no header, the receiver copies the last header received ahead of the payload octets of this next cell before forwarding it to the ATM layer. Advantageously, this reduces the approximate 10 percent overhead imposed by the five (5) octet header (**47** of FIG. **2B**).

It should be emphasized that the above-described embodiments of the present invention, particularly any "preferred"

embodiments, are merely possible examples of implementations, merely set forth for a clear understanding of the principles of the invention. Many variations and modifications may be made to the above-described embodiment(s) of the invention without departing substantially from the spirit and principles of the invention. For example, the robust preamble and transmission delimiting system and method are applicable to all switched-carrier transmission methodologies in which it is desirable to reliably convey channel establishment information and reliably delimit the beginning and end of each communication message. All such modifications and variations are intended to be included herein within the scope of the present invention.

Therefore, having thus described the invention, at least the following is claimed:

**1**. A system for robust transmission delimiting, comprising:

a communication message including a preamble, the preamble operating to frame the message and to delimit the message from silence, the preamble including a plurality of bits representing communication link control information; and

an encoder configured to encode the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being supported over a communication channel.

**2**. A system for robust transmission delimiting, comprising:

a communication message including a preamble, the preamble including a plurality of bits representing communication link control information; and

an encoder configured to encode the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being supported over a communication channel,

wherein the preamble includes information that defines a rate at which data following the preamble has been encoded for transmission.

**3**. The system as defined in claim **2**, further comprising a gain boost element configured to increase the energy of the first symbol index to reliably indicate the beginning of the communication message.

**4**. The system as defined in claim **2**, wherein the preamble includes information defining a maximum rate at which a first transceiver that is sending the preamble is able to receive transmissions from a second transceiver that is receiving the preamble.

**5**. The system as defined in claim **2**, wherein the preamble indicates whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

**6**. The system as defined in claim **2**, wherein the preamble indicates whether administrative information follows the preamble.

**7**. The system as defined in claim **5**, further comprising:

a first scrambler configured to scramble the preamble; and

a second scrambler configured to scramble the data,

wherein a state of the scrambler used to scramble the bits that comprise the preamble is the state that existed when scrambling a previous preamble was completed.

**8**. The system as defined in claim **5**, wherein the data portion of the communication message comprises fixed size units, the fixed size units comprising a plurality of bits and

19

20

wherein the bits are encoded into symbol indices such that, for each of the fixed size units, one symbol index is encoded differently from the other symbols.

**9**. The system as defined in claim **8**, wherein the differently encoded symbol index further comprises an extra bit that indicates whether the fixed size unit from which the other bits of the differently encoded symbol indices are obtained is the last one transmitted in a message.

**10**. The system as defined in claim **8**, wherein the differently encoded symbol index is encoded at a data rate lower than that of the other symbols carrying message data.

**11**. A system for delimiting the end of a transmission, comprising:

a communication message segmented into a plurality of fixed size units, each fixed size unit including a plurality of bits; and

an encoder configured to encode the plurality of bits into a plurality of symbol indices at a first data rate, the encoder also configured to encode at a second rate when producing the first symbol index in the plurality of symbol indices that contains only bits from each fixed size unit, where the second rate is lower than the first rate.

**12**. A method for robust transmission delimiting, the method comprising the steps of:

applying a preamble to a communication message, the preamble operating to frame the message and to delimit the message from silence, the preamble including a plurality of bits representing communication link control information; and

encoding the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel.

**13**. A method for robust transmission delimiting, the method comprising the steps of:

applying a preamble to a communication message, the preamble including a plurality of bits representing communication link control information;

encoding the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel; and

including information in the preamble defining a rate at which data following the preamble has been encoded for transmission.

**14**. The method as defined in claim **13**, further comprising the step of increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**15**. The method as defined in claim **13**, further comprising the step of including information in the preamble defining a maximum rate at which a transceiver that is sending the preamble is able to receive transmissions from a transceiver that is receiving the preamble.

**16**. The method as defined in claim **13**, further comprising the step of using the preamble to indicate whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

**17**. The method as defined in claim **13**, further comprising the step of using the preamble to indicate whether administrative information follows the preamble.

**18**. The method as defined in claim **16**, further comprising the steps of:

scrambling the preamble using a first scrambler;

scrambling the data using a second scrambler; and

scrambling the bits in the preamble using the state of the scrambler that existed when scrambling of the previous preamble was complete.

**19**. The method as defined in claim **16**, wherein the data portion of the communication message comprises fixed size units, the fixed size units comprising a plurality of bits, and wherein the bits that comprise each of the fixed size units are encoded into symbol indices such that for each of the fixed size units, one symbol index is encoded differently from the other symbols.

**20**. The method as defined in claim **19**, further comprising the step of including in said differently encoded symbol index an extra bit that indicates whether the fixed size unit from which the other bits of said differently encoded symbol indices are obtained is the last one transmitted in a message.

**21**. The method as defined in claim **19**, further comprising the step of encoding the differently encoded symbol index at a data rate lower than that of the other symbols carrying message data.

**22**. A method for delimiting the end of a transmission, the method comprising the steps of:

segmenting a communication message into a plurality of units, each unit including a plurality of bits and having a fixed size;

encoding a plurality of the bits in the plurality of units into a plurality of symbol indices, the symbol indices being encoded at a first rate; and

encoding one symbol index of the plurality of symbol indices at a rate lower than the first rate, the one symbol index containing bits from only one of the plurality of units.

**23**. A system for robust transmission delimiting, comprising:

means for applying a preamble to a communication message, the preamble operating to frame the message and to delimit the message from silence, the preamble including a plurality of bits representing communication link control information; and

means for encoding the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel.

**24**. The system as defined in claim **23**, further comprising means for increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**25**. A system for robust transmission delimiting, comprising:

means for applying a preamble to a communication message, the preamble including a plurality of bits representing communication link control information;

means for encoding the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel; and

means for including information in the preamble defining a rate at which data following the preamble has been encoded for transmission.

**26**. The system as defined in claim **25**, further comprising means for including information in the preamble defining a maximum rate at which a transceiver that is sending the preamble is able to receive transmissions from a transceiver that is receiving the preamble.

**27**. The system as defined in claim **25**, further comprising means for using the preamble to indicate whether a data

US 6,950,444 B1

21                                        22

portion follows the preamble and, if so, the format and type of data that follows the preamble.

**28**. The system as defined in claim **25**, further comprising means for using the preamble to indicate whether administrative information follows the preamble.

**29**. The system as defined in claim **27**, further comprising:

means for scrambling the preamble using a first scrambler;

means for scrambling the data using a second scrambler; and

means for scrambling the bits in the preamble using the state of the scrambler that existed when scrambling of the previous preamble was complete.

**30**. The system as defined in claim **27**, wherein the data portion of the communication message comprises fixed size units, the fixed size units comprising a plurality of bits; and

means for encoding the bits that comprise each of the fixed size units into symbol indices such that for each of the fixed size units, one symbol index is encoded differently from the other symbols.

**31**. The system as defined in claim **30**, further comprising means for including in said differently encoded symbol index an extra bit that indicates whether the fixed size unit from which the other bits of said differently encoded symbol indices are obtained is the last one transmitted in a message.

**32**. The system as defined in claim **30**, further comprising means for encoding the differently encoded symbol index at a data rate lower than that of the other symbols carrying message data.

**33**. A system for delimiting the end of a transmission, comprising:

means for segmenting a communication message into a plurality of fixed size units, each unit including a plurality of bits;

means for encoding a plurality of the bits in the units into a plurality of symbol indices, the symbol indices being encoded at a first rate; and

means for encoding at a second rate when producing the first symbol index in the plurality of symbol indices that contains only bits from each fixed size unit, where the second rate is lower than the first rate.

**34**. A computer readable medium having a program for robust transmission delimiting, the program comprising logic for performing the steps of:

applying a preamble to a communication message, the preamble operating to frame the message and to delimit the message from silence, the preamble including a plurality of bits representing communication link control information; and

encoding the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel.

**35**. The program as defined in claim **34**, further comprising logic for performing the step of increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**36**. A computer readable medium having a program for robust transmission delimiting, the program comprising logic for performing the steps of:

applying a preamble to a communication message, the preamble including a plurality of bits representing communication link control information;

encoding the preamble bits into a plurality of symbol indices, the symbol indices encoded at a lower bit per symbol rate relative to the maximum rate capable of being transmitted over a communication channel; and

including information in the preamble defining a rate at which data following the preamble has been encoded for transmission.

**37**. The program as defined in claim **36**, further comprising logic for performing the step of including information in the preamble defining a maximum rate at which a transceiver that is sending the preamble is able to receive transmissions from a transceiver that is receiving the preamble.

**38**. The program as defined in claim **36**, further comprising logic for performing the step of using the preamble to indicate whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

**39**. The program as defined in claim **36**, further comprising logic for performing the step of using the preamble to indicate whether administrative information follows the preamble.

**40**. The program as defined in claim **38**, further comprising logic for performing the steps of:

scrambling the preamble using a first scrambler;

scrambling the data using a second scrambler; and

scrambling the bits in the preamble using the state of the scrambler that existed when scrambling of the previous preamble was complete.

**41**. The program as defined in claim **38**, wherein the data portion of the communication message comprises fixed size units, the fixed size units comprising a plurality of bits; and

wherein the bits that comprise each of the fixed size units are encoded into symbol indices such that for each of the fixed size units, one symbol index is encoded differently from the other symbols.

**42**. The program as defined in claim **41**, further comprising logic for performing the step of including in said differently encoded symbol index an extra bit that indicates whether the fixed size unit from which the other bits of said differently encoded symbol indices are obtained is the last one transmitted in a message.

**43**. The program as defined in claim **41**, further comprising logic for performing the step of encoding the differently encoded symbol index at a data rate lower than that of the other symbols carrying message data.

**44**. A computer readable medium having a program for delimiting the end of a transmission, the program comprising logic to perform the steps of:

segmenting a communication message into a plurality of fixed size units, each unit including a plurality of bits;

encoding a plurality of the bits in the fixed sized units into a plurality of symbol indices, the symbol indices being encoded at a first rate; and

encoding at a second rate when producing the first symbol index in the plurality of symbol indices that contains only bits from each fixed size unit, where the second rate is lower than the first rate.

**45**. A method for delimiting the end of a transmission, the method comprising the steps of:

segmenting a communication message into a plurality of fixed size units, each unit including a plurality of bits;

encoding the first N bits in a unit into a first symbol index, the first symbol index being encoded at a first rate, N being less than the fixed size; and

encoding the remaining bits in the plurality of units into a plurality of symbol indices at a rate greater than the first rate.

US 6,950,444 B1

**46**. The system as defined in claim **11**, further comprising a gain boost element configured to increase the energy of the first symbol index to reliably indicate the beginning of the communication message.

**47**. The system as defined in claim **11**, wherein the preamble indicates whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

**48**. The method as defined in claim **22**, further comprising the step of increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**49**. The method as defined in claim **22**, further comprising the step of using the preamble to indicate whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

**50**. The system as defined in claims **33**, further comprising means for increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**51**. The system as defined in claim **33**, further comprising means for using the preamble to indicate whether a data

portion follows the preamble and, if so, the format and type of data that follows the preamble.

**52**. The program as defined in claim **44**, further comprising logic for performing the step of increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**53**. The program as defined in claim **44**, further comprising logic for performing the step of using the preamble to indicate whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

**54**. The method as defined in claim **45**, further comprising the step of increasing the energy of the first symbol index to reliably indicate the beginning of the communication message.

**55**. The method as defined in claim **45**, further comprising the step of using the preamble to indicate whether a data portion follows the preamble and, if so, the format and type of data that follows the preamble.

\* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, L.P.  §
                                     §
                                     §
V.                                     §            CIVIL NO. 2:06-CV-223(TJW)
                                     §
CHARTER COMMUNICATIONS,   §
ET AL.,                             §


REMBRANDT TECHNOLOGIES, L.P.  §
                                     §
                                   §
V.                                     §            CIVIL NO. 2:06-CV-224(TJW)
                                     §
CHARTER COMMUNICATIONS,   §
ET AL.,                             §


REMBRANDT TECHNOLOGIES, L.P.  §
                                     §
                                   §
V.                                     §            CIVIL NO. 2:06-CV-369(TJW)
                                     §
CHARTER COMMUNICATIONS,   §
ET AL.,                             §


REMBRANDT TECHNOLOGIES, L.P.  §
                                     §
                                   §
V.                                     §            CIVIL NO. 2:06-CV-506(TJW)
                                     §
CHARTER COMMUNICATIONS,   §
ET AL.,                             §

REMBRANDT TECHNOLOGIES, L.P.  §
                               §
                               §
V.                             §        CIVIL NO. 2:06-CV-507(TJW)
                               §
CHARTER COMMUNICATIONS,        §
ET AL .,                       §

---

### Status Conference Minutes
### April 3, 2007

OPEN: ___1:50 pm___                    ADJOURN: ___2:15 pm___

---

**ATTORNEYS FOR PLAINTIFF:**      (See attached sign-in sheet)

**ATTORNEYS FOR DEFENDANT:**      (See attached sign-in sheet)

**LAW CLERK:**                    Mike Benefield

**COURTROOM DEPUTY:**             Debbie Latham

Court opened.  The attorneys announced ready.

The proposed dates and consolidation of the cases were discussed.

Court Adjourned.

# SIGN IN – Please Print

CASE NO.  2:06cv223

STYLE: Rembrandt v. Charter

| Name of party | Name of attorney |
|---|---|
| Charter | Mike Jones |
| " | Diane DeVasto |
| " | Allen Gardner |
| " | Bradford Lyerla |
| Rembrandt | Sam Baxter – 223, 224 |
| " | Jeff Carter  " " |
| " | Brooke Taylor 369, 506, 507 |
| " | Max Tribble 369, 506, 507 |
| " | Franklin Jones  223, 224  369, 506, 507 |
| " | Charley Ainsworth |
| | GORDON WHITE – 223, 224 |
| | |
| | |
| | |
| | |
| | |
| | |

# SIGN IN – Please Print

CASE NO. 2:06cv224

STYLE: Rembrandt v. Time Warner

| Name of party | Name of attorney |
|---|---|
| Time Warner, Inc | Mike Jones |
| " | Diane DeVasto |
| " | Allen Gardner |
| " | David Benyacar |
| Rembrandt | GORDON WHITE 223-224 |
| " | FRANKLIN JONES-223-224-369-506-507 |
| " | Sam Baxter |
| " | Jeff Carter |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# SIGN IN – Please Print

CASE NO. 2:06 cv 369

STYLE: Rembrandt v. Time Warner

| Name of party | Name of attorney |
|---|---|
| Time Warner | Mike Jones |
| '' | Diane DeVasto |
| '' | Allen Gardner |
| '' | David Benyacar |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

SIGN IN

CASE NO   2:06-CV-506

Style   Rembrandt v. Comcast Corporation

| Name of Party | Name of Attorney |
|---|---|
| Comcast Corp. entities | Jennifer Doan } John Perkins } (Haltom + Doan) |
| '' | Gil Gilham — Gilham + Smith |
| Rembrandt | Max Tribble — Susman Godfrey<br>Brooke Taylor — '' '' |

2.06 CV - 507

Name of Party

Rembrandt

Charter Comm.

Brooke Taylor
(Susman)

Brad ~~todd~~ Lyerla
Mike Jones
Drain DeVasto
Allen Gardan

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | |
| | § | |
| TIME WARNER CABLE INC., TIME | § | |
| WARNER CABLE LLC, TIME WARNER | § | CIVIL NO. 2:06-CV-224(TJW) |
| ENTERTAINMENT COMPANY, L.P., TIME | § | |
| WARNER ENTERTAINMENT-ADVANCE/ | § | |
| NEWHOUSE PARTNERSHIP, AND TIME | § | |
| WARNER NEW YORK CABLE LLC | § | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | |
| | § | |
| TIME WARNER CABLE INC., TIME | § | |
| WARNER CABLE LLC, TIME WARNER | § | CIVIL NO. 2:06-CV-369(TJW) |
| ENTERTAINMENT COMPANY, L.P., TIME | § | |
| WARNER ENTERTAINMENT-ADVANCE/ | § | |
| NEWHOUSE PARTNERSHIP, AND TIME | § | |
| WARNER NEW YORK CABLE LLC | § | |

## THE TIME WARNER CABLE DEFENDANTS' NOTICE OF DISCLOSURES

The Time Warner Cable Defendants hereby give notice that their initial disclosures were served on all counsel of record on May 3, 2007.

The Time Warner Cable Defendants respectfully reserve their right to amend, modify, or supplement the disclosures to the extent permitted by the Local Rules and the FEDERAL RULES OF CIVIL PROCEDURE.

Dated: May 3, 2007                           Respectfully Submitted,

By:     /s/ Allen F. Gardner

Michael E. Jones
Texas State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Telephone: (903) 597-8311
Fax: (903) 593-0846

David S. Benyacar
Daniel L. Reisner
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022-3598
(212) 836-8000

*Attorneys for The Time Warner Cable Defendants*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 3RD day of May, 2007. Any other counsel of record will be served by First Class U.S. Mail on this same date.

/s/ Allen F. Gardner
Allen F. Gardner

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

## PROTECTIVE ORDER

WHEREAS, Plaintiff Rembrandt Technologies, LP ("Rembrandt"), and Defendants

Charter Communications, Inc., Charter Communications Operating, LLC (collectively,

"Charter"), and CoxCom, Inc. ("CoxCom") in the 223 and 507 cases, Defendants Time Warner

Cable Inc., Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner

Dallas 236804v1

Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse Partnership

(collectively, "Time Warner") in the 224 and 369 cases, and Defendants Comcast Corporation,

Comcast Cable Communications, LLC, and Comcast of Plano LP (collectively, "Comcast") in

the 506 case, through counsel, stipulate to entry of this Protective Order ("Order") in their

respective case or cases pursuant to Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or

dissemination of confidential information; and

> **WHEREAS**, Rembrandt, Charter, CoxCom, Time Warner, and Comcast are collectively

referred to herein as the "parties;" and

> **WHEREAS,** the parties recognize that confidential information is being produced for

use in this civil action;

> IT IS HEREBY ORDERED that the following provisions of this Order shall govern the

treatment of confidential information produced by a party ("Producing Party")[1] to any other

party ("Receiving Party") in the course of this civil action:

> 1.     The term "Confidential Information" as used in this Order includes all

information and tangible things that constitute or disclose trade secrets or other confidential or

proprietary information of one of the parties.  Confidential Information may be contained in

discovery information or materials produced or obtained in this action by or through any means

and by or through any person or entity. The Confidential Information contained therein and all

copies, recordings, abstracts, excerpts, analyses or other writings that contain, reveal or

otherwise disclose such Confidential Information shall also be deemed Confidential Information.

---

[1] The parties agree that all references to "Producing Party" in this Protective Order be construed to include third parties producing documents in one or more of these cases.

2.  Confidential Information shall be disclosed, disseminated and used by the Receiving Party only for purposes of litigation between the parties to this action.  Except with the prior written consent of the Producing Party or upon prior order of this Court, Confidential Information shall not be disclosed except in accordance with the terms, conditions, and restrictions of this Order

3.  Produced documents, interrogatory responses, responses to requests for admission and other documents containing "Confidential Information" shall be marked by conspicuously affixing a legend, which includes the words "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY", as appropriate, on each page containing Confidential Information at the time such documents are produced or such information is disclosed (or on the cover or container of computer storage media, such as discs or tapes).  The parties may designate material other than the produced documents as containing Confidential Information in the following manner:

(a)  Testimony or information disclosed at a deposition that contains Confidential Information or Highly Confidential Information may be designated by indicating on the record at the deposition the portions of the testimony which contain such information that is to be made subject to the provisions of this Order.  Alternatively, a Producing Party may designate testimony or information disclosed at a deposition, including exhibits, that contains Confidential Information or Highly Confidential Information by notifying all parties in writing, within fifteen (15) days after the Producing Party's receipt of the transcript, of the specific pages and lines of the transcript that contain such information.  Whether or not designation is made at the time of a deposition, accessibility to each transcript (and the information contained therein) of any deposition in its entirety shall be limited to outside counsel of record and designated in-

house counsel only, from the taking of the deposition until fifteen (15) days after the actual receipt of the transcript by the Producing Party, or until receipt of the notice referred to in this paragraph, whichever occurs sooner. At the expiration of the said fifteen (15) day period, unless notice hereunder to the contrary is given at the time of the deposition or prior to the expiration of said period, the entire transcript shall be deemed non-confidential.

(b)      Confidential Information or Highly Confidential Information contained in any affidavits, briefs, memoranda or other papers filed with the Court in this action may be designated as Confidential Information or Highly Confidential Information by indicating on the face of such documents that one or more parties considers them to contain such information.

4.      The parties may designate as HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY any materials that qualify for protection under the standards developed under Fed. R. Civ. P. 26(c) and which comprises (a) technical information that the producing party reasonably deems highly confidential, including but not limited to proprietary technical information and trade secrets; or (b) business or financial information that the producing party reasonably deems highly confidential, such as, for example, business plans or forecasts, cost or pricing information, sales volume or revenue information, profit margin information, marketing plans or strategy, the identity of current or potential customers or suppliers, accounting information not of public record, information subject to a confidentiality agreement with a third party, or the like. The foregoing categories are by way of example only and shall not limit the categories of information a party may designate HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY under this order; provided, however, that any such designation must be made by the producing party in good faith and with reasonable justification. Subject to the provisions of paragraphs 6 and 7 herein, material designated as HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY,

4

and any summary, description or report of the information contained in such materials, may be
disclosed only to the following persons:

(a)      the Court, persons employed by the Court, and stenographers transcribing
the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b)      technical and damages consultants and experts who are not current
employees of any party in this matter and who have been retained by counsel to provide
assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)      graphics, translation, design and/or trial consulting services, including
mock jurors, retained by a party;

(d)      source code escrow agents, photocopy, document imaging and database
services, and consultants retained by counsel to set up, maintain and/or operate computer
systems, litigation databases or to convert data for inclusion in such databases;

(e)      John Meli, Executive Vice President and General Counsel of Rembrandt,
Andrew T. Block, Esq. of Time Warner, Kirill Y. Abramov, Esq. of Charter, Marcus Delgado,
Esq. of CoxCom and David Marcus, Esq. of Comcast; and two (2) paralegals and/or clerical
employees assisting each of the identified in-house counsel; and

(f)      the parties' outside counsel of record in this action as specifically set forth
below and any other counsel for a party that appears in this action, and their paralegal assistants,
law clerks, stenographic and clerical employees who are assisting in the prosecution, defense
and/or appeal of this action. Any individual outside counsel of record who receives information
designated HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY may not participate in
patent prosecution for the Receiving Party, and the individual outside counsel who receives any

5

such information may not discuss the information with anyone involved in patent prosecution for

the Receiving Party.  Outside counsel of record for the parties are as follows:

**For Rembrandt in the 223 case**:

> McKool Smith P.C.
> 300 Crescent Court, Suite 1500
> Dallas, Texas 75201
>
> Parker & Bunt
> 100 E. Ferguson, Suite 1114
> Tyler, Texas 75702
>
> Jones & Jones, Inc., P.C.
> 201 West Houston St., Drawer 1249
> Marshall, Texas 75671-1249

**For Rembrandt in the 224 case**:

> McKool Smith P.C.
> 300 Crescent Court, Suite 1500
> Dallas, Texas 75201
>
> Parker & Bunt
> 100 E. Ferguson, Suite 1114
> Tyler, Texas 75702
>
> Ireland, Carroll & Kelly, P.C.
> 61101 S. Broadway, Suite 500
> Tyler, Texas 75703
>
> Brown McCarroll LLP
> 1127 Judson Road, Suite 220
> P.O. Box 3999 (75606-3999)
> Longview, Texas 75601-5157

**For Rembrandt in the 369 Case:**

> Susman Godfrey LLP
> 1000 Louisiana Street, Suite 5100
> Houston, TX  77002-5096
>
> Parker & Bunt
> 100 E. Ferguson, Suite 1114
> Tyler, Texas 75702

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

**For Rembrandt in the 506 Case:**

Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Ireland, Carroll & Kelly, P.C.
61101 S. Broadway, Suite 500
Tyler, Texas 75703

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

Brown McCarroll LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

**For Rembrandt in the 507 Case:**

Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096

Parker & Bunt
100 E. Ferguson, Suite 1114
Tyler, Texas 75702

Jones & Jones, Inc., P.C.
201 West Houston St., Drawer 1249
Marshall, Texas 75671-1249

7

**For Charter in the 223 and 507 cases:**

> Marshall, Gerstein & Borun LLP
> 6300 Sears Tower
> 233 South Wacker Drive
> Chicago, Illinois 60606-6357
>
> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Coxcom in the 223 and 507 cases:**

> Kilpatrick Stockton LLP
> 1100 Peachtree Street NE, Suite 2800
> Atlanta, Georgia 30309-4530
>
> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Time Warner in the 224 and 369 cases:**

> Kaye Scholer LLP
> 425 Park Avenue
> New York, New York 10022
>
> Potter Minton, PC
> 1100 North College
> 500 Plaza Tower
> Tyler, Texas 75702

**For Comcast in the 506 case:**

> Keker & Van Nest, LLP
> 710 Sansome Street
> San Francisco, California 94111-1704
>
> Halton & Doan, LLP
> 6500 N. Summerhill Road, Suite 1A
> P.O. Box 6227
> Texarkana, Texas 75505-6277

Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX  75670

5**.** The parties may designate as CONFIDENTIAL any materials that qualify for protection under the standards developed under Fed. R. Civ. P. 26(c).  Subject to the provisions of paragraphs 6 and 7 herein, material designated as CONFIDENTIAL, and any summary, description or report of the information contained in such materials, may be disclosed only to the following persons:

(a) the Court, persons employed by the Court, and stenographers transcribing the testimony or argument at a hearing, trial or deposition in this action or any appeal therefrom;

(b) technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

(c) graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d) photocopy, document imaging and database services and consultants retained by counsel to set up**,** maintain and/or operate computer systems, litigation databases or to convert data for inclusion in such databases;

(e) John Meli,  and Paul Schneck, Chief Executive Officer of Rembrandt, Andrew T. Block, Esq. of Time Warner, Kirill Y. Abramov, Esq. of Charter, Marcus Delgado, Esq. of CoxCom and David Marcus, Esq. of Comcast and one other employee for each of Charter, CoxCom, Time Warner, and Comcast (following identification of each other employee

9

to each of the other parties and approval by the other parties, such approval not to be unreasonably withheld); and two (2) clerical employees assisting each party's in-house counsel and other employee; and

(f)     the parties' outside counsel of record in this action and any other counsel for a party that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action

6.     (a)     A party may exclude from a deposition any person who is not entitled to view Confidential Information or Highly Confidential Information when such information is the subject of examination.

(b)     No Confidential Information or Highly Confidential Information shall be revealed or disclosed, in whole or in part, directly or indirectly, to any individual described in subparagraphs 4(b)-(e) and 5(b)-(e) until that individual has been given a copy of this Order and has duly completed and signed an undertaking in the form attached hereto as Exhibit A, the original of which shall be retained, until the conclusion of this action including all appeals, by counsel for each party who intends to or does disclose to such individual any Confidential Information or Highly Confidential Information.

(c)     Before individuals under subparagraphs 4(b) and 5(b) may have access to Confidential Information or Highly Confidential Information, the Receiving Party must submit to the Producing Party the individual's signed undertaking as well as the individual's curriculum vitae setting forth his or her name, address, qualifications and relevant work experience, including, but not limited to, the identity of any company in the telecommunications industry for whom said individual has consulted or worked during the last five (5) years.  If the Producing Party does not object in writing, within five (5) business days from receipt of the undertaking,

Confidential Information or Highly Confidential Information may then be disclosed to the retained consultant or former employee. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue.  If the issue cannot be resolved, the Producing Party has fifteen (15) days from receipt of the undertaking to bring a motion to preclude the retained consultant or former employee from viewing the Producing Party's Confidential Information or Highly Confidential Information.  If the Producing Party does not bring such a timely motion, Confidential Information or Highly Confidential Information may be disclosed to the retained consultant or former employee.

(d)     Pursuant to subparagraph 6(c), the disclosure of the identity of a consulting expert will not be a waiver of any privilege or right to withhold from production that applies to communications or work product.  Furthermore, the parties agree that by stipulating to the entry of this Protective Order; the parties do not intend to modify in any way the normal discovery rules applicable to consulting experts, or other agreements reached between the parties regarding such discovery.

7.     In addition to the terms set forth in paragraphs 4 through 6 herein governing the disclosure of Confidential Information or Highly Confidential Information, information or materials that contain, embody, or otherwise reflect source code of a party or a third party subpoenaed for such source code in one or more of the above captioned cases shall be provided the following further protections:

(a)     Any and all such source code, except for hard (non-electronic) copies, shall be stored and viewed only at the offices of one (1) agreed-upon source code custodian ("Source Code Custodian").  The source code shall initially be deposited at a facility in the Los Angeles metropolitan region.  After 45 days, the source code shall be transferred to a facility in

11

the Dallas metropolitan region.  Where source code is deposited by a third party, this subparagraph may be modified by written agreement of the parties and the third party depositing source code; in all other cases, this subparagraph may be modified by written agreement of the parties.

(b)     Subject to subparagraphs (c) and (d), any source code produced in electronic form shall be stored and viewed only at the offices of the Source Code Custodian and shall be maintained in a secured, locked area.  No electronic copies of source code shall be made.  Any such source code shall only be viewed or analyzed on a stand-alone computer (a computer that is not connected to any internal or external computer or computer network) located within the above-described locations.  The Source Code Custodian shall maintain a Source Code Access Log identifying, for each and every time any source code is viewed, accessed or analyzed: (1) the name of each person who accessed the code; (2) the date and time of access; (3) the length of time of access; and (4) whether any hard (non-electronic) copies of any portion of the code were copied and the portion of the code copied.  The Receiving Party reviewing source code shall be allowed to make hard (non-electronic) copies of material that they, in good faith, consider relevant.  The parties shall negotiate reasonable limitations on the amount of source code that is released by Producing Party at any given time.

(c)     Any hard (non-electronic) copies of source code shall be stored and viewed only within the United States at:

(i)     a secured, locked area in one of the offices of the Source Code Custodian, each such location within the United States, provided the hard (non-electronic) copies are marked with the designation "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY";

(ii)     the Court;

<center>12</center>

(iii)     the site where any deposition relating to the source code is taken;

(iv)     any intermediate location reasonably necessary to transport the information (e.g., a hotel prior to the deposition.)

(d)     For each and every hard (non-electronic) copy of any source code, or any portion of any source code, the Source Code Custodian shall maintain a log detailing the location of the copy.  Excessive reproduction of source code should be avoided.

(e)     Prior to the Receiving Party taking possession of a hard (non-electronic) copy of source code as provided for under this paragraph, the Receiving Party shall inform the Producing Party as to specifically what portions of source code it plans to take into its possession.  The Producing Party shall then have twenty-four (24) hours if informed on a weekday, or seventy two (72) hours if informed on a weekend in which to object in writing to the Receiving Party as to the extent or relevance of the source code the reviewing party seeks to possess.  If objection is made, the parties shall meet and confer in good faith within three (3) business days and attempt to resolve the objection.  If the objection is not resolved, the Producing Party shall have five (5) business days after the conference to file a motion with the Court for relief from production of the subject portions of source code.  The subject portions of source code shall be retained by the Producing Party, pending the court's resolution of the motion.

(f)     To the extent any source code becomes an exhibit to a deposition, one copy of the exhibit may be maintained at the U.S. office of outside counsel of record for each party in a secure, locked area.  Counsel shall not designate source code as an exhibit solely for authentication purposes and shall only designate as an exhibit that portion of source code reasonably necessary for questioning.

13

8.      Designation of confidential Information or Highly Confidential Information as "HIGHLY CONFIDENTIAL--ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" shall constitute a representation that such information has been reviewed by an attorney for the Producing Party and that there is a valid basis for such designation.  Subject to the conditions set forth in Paragraph 7, Confidential Information or Highly Confidential Information shall be maintained by the Receiving Party under the overall supervision of outside counsel.  The attorneys of record for the parties shall exercise best efforts to ensure that the information and documents governed by this Protective order are (i) used only for the purposes set forth herein, and (ii) disclosed only to authorized persons.  Moreover, any person in possession of Confidential Information or Highly Confidential Information shall exercise reasonably appropriate care with regard to the storage, custody or use of such Confidential Information or Highly Confidential Information in order to ensure that the confidential or restricted nature of the same is maintained.

9.      It is the intention of this Protective Order that the following categories of information shall not be and should therefore not be designated as Confidential Information or Highly Confidential Information: (a) any information that at the time of its disclosure in this action is part of the public domain by reason of publication or otherwise; (b) any information that after its disclosure in this action has become part of the public domain by reason of publication or otherwise though no act, omission or fault of the Receiving Party; (c) any information that at the time of its disclosure in this action is rightfully in the possession of the Receiving Party, its trial counsel or any expert retained by or for the Receiving Party under no obligations of confidence to any third party with respect to that information; or (d) any information that after its disclosure in this action is rightfully received by the Receiving Party, its

14

trial counsel or any expert retained by or for the Receiving Party under no obligations of confidence or otherwise from any third party having the right to make such disclosure. During the pendency of this action, any disputes as to whether information is confidential under the terms of this Order shall be resolved according to the procedure set forth in paragraph 10 hereof.

10. If a party disagrees with any Confidential Information or Highly Confidential Information designation, such party shall first make its objection known to the Producing Party and request a change of designation. The parties shall first try to dispose of such dispute in good faith on an informal basis. If the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court no sooner than five (5) days following the service of a written notice of disagreement. The burden of proving that information has been properly designated as Confidential Information or Highly Confidential Information is on the party making such designation. Until a determination by the Court, the information in issue shall be treated as Confidential Information or Highly Confidential Information and subject to the terms of this Order. Any failure to object to any material being designated as Confidential Information or Highly Confidential Information shall not be construed as an admission by any non-designating party that the material constitutes or contains a trade secret or other confidential information.

11. During the course of preparing for a deposition or testimony, unless otherwise entitled to access under this Protective Order, a fact deponent/witness may be shown Confidential Information or Highly Confidential Information from another party's documents strictly limited to those documents which on their face reveal that they were authored or received by the deponent/witness in the normal course of business and outside the context of this litigation. This shall not preclude a Producing Party from showing documents that it has

produced to its own witnesses and deponents, regardless whether the Producing Party has designated the document(s) it produced as Confidential and regardless whether such person was the author or a recipient of the document.

12.     At the deposition of a third party or former employee of a Producing Party, such third party or former employee of a Producing Party may be shown documents designated as Confidential only if the document was authored by or received by that third party or former employee.

13.     Any person receiving Confidential Information or Highly Confidential Information shall not disclose such information to any person who is not entitled to receive such information under this Order.  If Confidential Information or Highly Confidential Information is disclosed to any person not entitled to receive disclosure of such information under this Order, the person responsible for the disclosure will inform counsel for the Producing Party and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort to receive such material and to prevent further disclosure by the person who received such information.

14.     Written material constituting or revealing Confidential Information or Highly Confidential Information, when filed with the Court in this action for any reason, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an indication of the nature of the contents of such sealed envelope or other container, a designation in the form set forth in paragraphs 4 or 5 hereof, and a statement substantially in the following form:

<div style="text-align:center">

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO COURT ORDER

</div>

<div style="text-align:center">16</div>

Civil Action No. [appropriate case number][TJW ]

15.      The Clerk of the Court is directed to place and maintain under seal in accordance with this Order any such pleading or other document filed with or delivered to this Court pursuant to Paragraph 14 or any other provision thereof.

16.      Nothing herein shall prevent disclosure beyond the terms of this Order if the party producing Confidential Information or Highly Confidential Information consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders or permits such disclosure

17.      The inadvertent production in discovery of any privileged or otherwise protected or exempted information, as well as the inadvertent production in discovery of information without an appropriate designation of confidentiality, shall not be deemed a waiver or impairment of any claim or privilege or protection including but not limited to the attorney-client privilege, the protection afforded to work-product materials or the subject matter thereof, or the confidential nature of any such information, provided that the Producing Party shall promptly notify the Receiving Party in writing when inadvertent production is discovered. Upon receiving written notice from the Producing Party that privileged information or work-product material has been inadvertently produced, all such information, and all copies thereof, shall be returned to counsel for the Producing Party and the Receiving Party shall not use such information for any purpose until further Order of the Court.

18.      Any violation of the terms of this Protective Order shall be punishable by money damages, interim or final injunctive or other equitable relief, sanctions, contempt of court citation, or such other or additional relief as deemed appropriate by the Court.

17

19.     Until such time as this Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

20.     Third parties who produce information in this action may avail themselves of the provisions of this Protective Order, and discovery materials produced by third parties shall then be treated by the parties in conformance with this Protective Order.

21.     By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case.  Any person or party subject to this order that may be subject to a motion to disclose another party's information designated Confidential or Highly Confidential pursuant to this order, shall promptly notify that party of the motion so that it may have an opportunity to appear and be heard on whether that information should be disclosed.

22.     In the event that any of the parties (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a party, or (c) is served with any other legal process by a person not a party to this litigation, and is requested to produce or otherwise disclose discovery material that is designated as Confidential by another party, the party subpoenaed or served in accordance with this paragraph shall object to production of the Confidential material and shall give prompt written notice to the Producing Party.   Should the person seeking access to the Confidential material take action against the party covered by this Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Order.  Nothing in this Order shall be construed as requiring production of Confidential material covered by this Order

18

23.    (a)    Within sixty (60) days after filing of the final judgment in this action, or if such judgment is appealed from, entry of a mandate affirming such final judgment, all Confidential Information or Highly Confidential Information shall be destroyed by all Receiving Parties or shall be returned to the Producing Party at the written election of the Producing Party which election shall be made within twenty days of the filing of the aforementioned final judgment or mandate.  If any Receiving Party destroys any such Confidential Information or Highly Confidential Information, that party shall inform the Producing Party in writing.

(b)    Notwithstanding the foregoing, one designated outside counsel of record for each party may maintain in its files one copy of each affidavit, affirmation, certification, declaration, expert report, brief, record on appeal, notice of motion, deposition transcript, exhibit to a deposition or affidavit (or the like), exhibit at a hearing or trial, pleading, discovery request, stipulation, correspondence between counsel for the parties, written response to a discovery request or any other document filed with the Court and the court transcript, consisting of or containing Confidential Information or Highly Confidential Information.

24.    This Order may be amended with leave of the Court by the agreement of counsel for the parties in the form of a stipulation that shall be filed in this action.

25.    This Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an Order of the Court.

26.    At the conclusion of the present action, the Court shall retain jurisdiction to enforce the terms of this Order.

SIGNED this 4th day of May, 2007.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

19

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |

     I, _____, hereby declare that:

     1.     I have carefully read and understand the foregoing Protective Order (the "Order") of the United States District Court for the Eastern District of Texas, in the above-captioned matters.

2.      I agree that I will be bound by and will comply with all of the provisions of this Order and I will make no disclosures of Confidential Information or Highly Confidential Information to any person who is not permitted to have access to such Confidential Information or Highly Confidential Information by this Order, as applicable.

3.      Upon final determinant of this action, I will destroy all Confidential Information or Highly Confidential Information received by me within sixty (60) days after filing of the final order or mandate as described in paragraph 21(a), or I will return such Confidential Information or Highly Confidential Information within sixty (60) days to the Producing Party.  If I destroy such Confidential Information or Highly Confidential Information, I agree to send a letter to the Producing Party confirming the same.

4.      I understand that a violation of this undertaking is punishable as a contempt of court and hereby submit to the jurisdiction of this Court for the purpose of enforcement of this order.

5.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____        _____
                                           [signature]


                                           _____
                                           [print or type name]


                                           Title:


                                           Business Affiliation

:

                                           Address:


                                           Phone:

3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
|      Plaintiff, | ) | Case No. 2:06-CV-369-TJW-CE |
| | ) | |
| v. | ) | JURY TRIAL REQUESTED |
| | ) | |
| TIME WARNER CABLE, INC., ET AL. | ) | |
| | ) | |
|      Defendants. | ) | |
| ———————————————————— | ) | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
|      Plaintiff, | ) | Case No. 2:06-CV-506-TJW-CE |
| | ) | |
| v. | ) | JURY TRIAL REQUESTED |
| | ) | |
| COMCAST CORPORATION, ET AL. | ) | |
| | ) | |
|      Defendants. | ) | |
| ———————————————————— | ) | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
|      Plaintiff, | ) | Case No. 2:06-CV-507-TJW-CE |
| | ) | |
| v. | ) | JURY TRIAL REQUESTED |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| ET AL. | ) | |
| | ) | |
|      Defendants. | ) | |
| ———————————————————— | ) | |

## PLAINTIFF'S NOTICE OF DISCLOSURES

Plaintiff Rembrandt Technologies, L.P. ("Rembrandt") hereby gives notice that it served Local Rules P.R. 3-1, P.R. 3-2,  and Initial Disclosures on counsel for Defendants in the above-captioned matters pursuant to the deadlines set forth in the Docket Control Order (Docket Nos. 33 (*Time Warner Cable, Inc., et al.*), 31 (*Comcast Corp., et al.*), and 67 (*Charter Communications, Inc., et al.*)).

Rembrandt respectfully reserves its right to amend, modify, or supplement the disclosures to the extent permitted by the Local Rules and the Federal Rules of Civil Procedure.

Dated:  May 7, 2007                              Respectfully Submitted,


/s/  Matthew R. Berry_____
Max L. Tribble, Jr.
Lead Attorney
State Bar No. 20213950
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
E-mail: mtribbble@susmangodfrey.com

Brooke A.M. Taylor
State Bar No. 33190 (Washington)
E-mail:  btaylor@susmangodfrey.com
Edgar Sargent
State Bar No. 28283 (Washington)
E-mail:  esargent@susmangodfrey.com
Matthew R. Berry
State Bar No. 37364 (Washington)
E-mail:  mberry@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington  98101-3000
Telephone:  (206) 516-3880
Fax:  (206) 516-3883

Tibor L. Nagy
State Bar No. 24041562

E-mail:  tnagy@susmangodfrey.com
SUSMAN GODFREY L.L.P.
590 Madison Avenue
New York, NY  10022-8521
Telephone:  (212) 336-8330
Fax:  (212) 516-3883

Charles Ainsworth
charley@pbatyler.com
Robert Christopher Bunt
rcbunt@pbatyler.com
Robert M Parker
rmparker@pbatyler.com
PARKER BUNT & AINSWORTH
100 E Ferguson, Suite 1114
Tyler, TX 75702
Telephone (903) 531-3535
Facsimile (903) 533-9687

Sidney Calvin Capshaw, III
ccapshaw@mailbmc.com
Elizabeth L DeRieux
ederieux@mailbmc.com
Andrew Wesley Spangler
aspangler@mailbmc.com
BROWN MCCARROLL- Longview
1127 Judson Rd., Ste 220
PO Box 3999
Longview, TX 75606-3999
Telephone (903) 236-9800
Facsimile (903) 236-8787

Otis W Carroll, Jr
Fedserv@icklaw.com
James Patrick Kelley
patkelley@icklaw.com
Collin Michael Maloney
fedserv@icklaw.com
IRELAND CARROLL & KELLEY
6101 S Broadway, Suite 500
Tyler, TX 75703
Telephone (903) 561-1600
Facsimile (903) 581-1071

Franklin Jones, Jr
JONES & JONES - Marshall
201 W Houston St
PO Drawer 1249

Marshall, TX 75670
903/938-4395
9039383360 (fax)
maizieh@millerfirm.com
Fax:  (212) 516-3883

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 7th day of May, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on this same date.

/s/   Matthew R. Berry
Matthew R. Berry

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-cv-369 (TJW/CE)** |
| | § | |
| **TIME WARNER CABLE, INC., TIME** | § | |
| **WARNER CABLE LLC, TIME** | § | |
| **WARNER NEW YORK CABLE LLC,** | § | |
| **TIME WARNER ENTERTAINMENT** | § | |
| **COMPANY, LP, and TIME WARNER** | § | |
| **ENTERTAINMENT-ADVANCE/** | § | |
| **NEWHOUSE PARTNERSHIP** | § | |
| | § | |
| **Defendants.** | § | |

## TIME WARNER CABLE INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND

Time Warner Cable Inc. moves the Court for an extension of time to answer, move, or otherwise respond, in any manner whatsoever, to Plaintiff Rembrandt Technologies, LP's First Amended Complaint, and would respectfully show the Court as follows:

1.     Plaintiff Rembrandt Technologies, LP ("Rembrandt") filed its first amended complaint against Defendants on or about April 25, 2007 [Dkt. 36].

2.     Rembrandt's first amended complaint added Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner Entertainment Company, LP and Time Warner Entertainment-Advance/Newhouse Partnership as additional defendants.  The answer for these new defendants is due on May 16, 2007.

3.      The original defendant, Time Warner Cable, Inc., respectfully requests an extension of time to answer, move, or otherwise respond, in any manner whatsoever, to Plaintiff's first amended complaint up to and including May 16, 2007.

4.      Plaintiff REMBRANDT is not opposed to this Motion.

WHEREFORE, PREMISES CONSIDERED, Time Warner Cable, Inc. prays that the Court grant this Motion for Extension of Time by extending the time period for TIME WARNER CABLE INC. to answer, move, or otherwise respond to Plaintiff's Complaint up to and including May 16, 2007.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-cv-369 (TJW/CE)** |
| | § | |
| **TIME WARNER CABLE, INC., TIME** | § | |
| **WARNER CABLE LLC, TIME** | § | |
| **WARNER NEW YORK CABLE LLC,** | § | |
| **TIME WARNER ENTERTAINMENT** | § | |
| **COMPANY, LP, and TIME WARNER** | § | |
| **ENTERTAINMENT-ADVANCE/** | § | |
| **NEWHOUSE PARTNERSHIP** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER GRANTING TIME WARNER CABLE INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND

ON THIS DAY, came on to be heard Defendant TIME WARNER CABLE INC.'S Unopposed Motion for Extension of Time to Answer, Move, or Otherwise Respond to the First Amended Complaint of Plaintiff Rembrandt Technologies, LP in the above-styled and numbered cause. After considering said Motion, and the entire record in this cause, it is hereby ORDERED that said Motion shall be in all things GRANTED; and it is FURTHER ORDERED that the deadline for Defendant TIME WARNER CABLE INC., and all other defendants, to answer, move, or otherwise respond to Plaintiff's First Amended Complaint is May 16, 2007.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-cv-369 (TJW/CE)** |
| | § | |
| **TIME WARNER CABLE, INC., TIME** | § | |
| **WARNER CABLE LLC, TIME** | § | |
| **WARNER NEW YORK CABLE LLC,** | § | |
| **TIME WARNER ENTERTAINMENT** | § | |
| **COMPANY, LP, and TIME WARNER** | § | |
| **ENTERTAINMENT-ADVANCE/** | § | |
| **NEWHOUSE PARTNERSHIP** | § | |
| | § | |
| **Defendants.** | § | |

## <u>TIME WARNER CABLE INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND</u>

Time Warner Cable Inc. moves the Court for an extension of time to answer, move, or otherwise respond, in any manner whatsoever, to Plaintiff Rembrandt Technologies, LP's First Amended Complaint, and would respectfully show the Court as follows:

1.      Plaintiff Rembrandt Technologies, LP ("Rembrandt") filed its first amended complaint against Defendants on or about April 25, 2007 [Dkt. 36].

2.      Rembrandt's first amended complaint added Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner Entertainment Company, LP and Time Warner Entertainment-Advance/Newhouse Partnership as additional defendants.  The answer for these new defendants is due on May 16, 2007.

3. The original defendant, Time Warner Cable, Inc., respectfully requests an extension of time to answer, move, or otherwise respond, in any manner whatsoever, to Plaintiff's first amended complaint up to and including May 16, 2007.

4. Plaintiff REMBRANDT is not opposed to this Motion.

WHEREFORE, PREMISES CONSIDERED, Time Warner Cable, Inc. prays that the Court grant this Motion for Extension of Time by extending the time period for TIME WARNER CABLE INC. to answer, move, or otherwise respond to Plaintiff's Complaint up to and including May 16, 2007.

Dated: May 11, 2007

Respectfully submitted,

*/s/ Allen F. Gardner*
Michael E. Jones
Texas State Bar No. 10929400
Diane V. DeVasto
State Bar No. 05784100
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
dianedevasto@potterminton.com
mikejones@potterminton.com
allengardner@potterminton.com

Of Counsel:

David S. Benyacar
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
dbenyacar@kayescholer.com

**ATTORNEYS FOR**
**TIME WARNER CABLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 11, 2007. Any other counsel of record will be served by first class mail on this same date.

*/s/ Allen F. Gardner*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-cv-369 (TJW/CE)** |
| | § | |
| **TIME WARNER CABLE, INC., TIME** | § | |
| **WARNER CABLE LLC, TIME** | § | |
| **WARNER NEW YORK CABLE LLC,** | § | |
| **TIME WARNER ENTERTAINMENT** | § | |
| **COMPANY, LP, and TIME WARNER** | § | |
| **ENTERTAINMENT-ADVANCE/** | § | |
| **NEWHOUSE PARTNERSHIP** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER GRANTING TIME WARNER CABLE INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND

ON THIS DAY, came on to be heard Defendant TIME WARNER CABLE INC.'S Unopposed Motion for Extension of Time to Answer, Move, or Otherwise Respond to the First Amended Complaint of Plaintiff Rembrandt Technologies, LP in the above-styled and numbered cause. After considering said Motion, and the entire record in this cause, it is hereby ORDERED that said Motion shall be in all things GRANTED; and it is FURTHER ORDERED that the deadline for Defendant TIME WARNER CABLE INC., and all other defendants, to answer, move, or otherwise respond to Plaintiff's First Amended Complaint is May 16, 2007.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-cv-369 (TJW/CE)** |
| | § | |
| **TIME WARNER CABLE, INC., TIME** | § | |
| **WARNER CABLE LLC, TIME** | § | |
| **WARNER NEW YORK CABLE LLC,** | § | |
| **TIME WARNER ENTERTAINMENT** | § | |
| **COMPANY, LP, and TIME WARNER** | § | |
| **ENTERTAINMENT-ADVANCE/** | § | |
| **NEWHOUSE PARTNERSHIP** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER GRANTING TIME WARNER CABLE INC.'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND

ON THIS DAY, came on to be heard Defendant TIME WARNER CABLE INC.'S Unopposed Motion for Extension of Time to Answer, Move, or Otherwise Respond to the First Amended Complaint of Plaintiff Rembrandt Technologies, LP in the above-styled and numbered cause. After considering said Motion, and the entire record in this cause, it is hereby ORDERED that said Motion shall be in all things GRANTED; and it is FURTHER ORDERED that the deadline for Defendant TIME WARNER CABLE INC., and all other defendants, to answer, move, or otherwise respond to Plaintiff's First Amended Complaint is May 16, 2007.

SIGNED this 15th day of May, 2007.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 2:06-cv-369 |
| | § | [TJW/CE] |
| | § | |
| TIME WARNER CABLE INC., TIME | § | **JURY TRIAL REQUESTED** |
| WARNER CABLE LLC, TIME | § | |
| WARNER NEW YORK CABLE LLC, TIME | § | |
| WARNER ENTERTAINMENT | § | |
| COMPANY, L.P., and TIME WARNER | § | |
| ENTERTAINMENT-ADVANCE/NEWHOUSE | § | |
| PARTNERSHIP, | § | |
| | § | |
| Defendants. | § | |

## <u>TWC'S ANSWER TO REMBRANDT'S FIRST AMENDED COMPLAINT</u>

Time Warner Cable Inc., Time Warner Cable LLC, Time Warner New York

Cable LLC, Time Warner Entertainment Company, L.P., and Time Warner Entertainment-

Advance/Newhouse Partnership (collectively, "TWC"), by its undersigned counsel,

respond to the allegations asserted in the First Amended Complaint (the "Complaint") of

Rembrandt Technologies, LP ("Rembrandt") as follows:

1.  TWC lacks knowledge or information sufficient to form a belief as to the

truth of the allegations made in paragraph 1 of the Complaint, and on that basis denies

those allegations.

2.  TWC admits the allegations of paragraph 2 of the Complaint that

Defendant Time Warner Cable Inc. is a Delaware corporation, that its "registered agent for

service of process in Texas is CT Corporation System, 350 North St. Paul Street, Dallas,

Texas 75201," that it conducts business in Texas and within this judicial district, and that it

operates cable television systems in the United States.  TWC denies the remaining

allegations made in paragraph 2 of the Complaint.  Defendant Time Warner Cable Inc.'s

principle place of business is 290 Harbor Drive, Stamford, Connecticut 06902.

      3.    TWC admits the allegations of paragraph 3 of the Complaint that

Defendant Time Warner Cable LLC is a Delaware limited liability company with its

principle place of business at 290 Harbor Drive, Stamford, Connecticut 06902 and that its

"registered agent for service of process is the Corporation Trust Company, Corporation

Trust Center, 1209 Orange Street, Wilmington, Delaware 19801."

      4.    TWC admits the allegations of paragraph 4 of the Complaint that

Defendant Time Warner New York Cable LLC is a Delaware limited liability company and

that its "registered agent for service of process in Texas is CT Corporation System at 350

North St. Paul Street, Dallas, Texas 75201."  TWC denies the remaining allegations made

in paragraph 4 of the Complaint.  Defendant Time Warner New York Cable LLC's

principle place of business is 290 Harbor Drive, Stamford, Connecticut 06902.

      5.    TWC admits the allegations of paragraph 5 of the Complaint that

Defendant Time Warner Entertainment Company, L.P. is a Delaware limited partnership

with its principle place of business at 290 Harbor Drive, Stamford, Connecticut 06902 and

that its "registered agent for service of process in Texas is CT Corporation Systems at 1021

Main Street, Suite 1150, Houston, Texas 77002."

      6.    TWC admits the allegations of paragraph 6 of the Complaint that

Defendant Time Warner Entertainment-Advance/Newhouse Partnership is a New York

partnership and that its "registered agent for service of process in Texas is CT Corporation

System at 350 North St. Paul Street, Dallas, Texas 75201."  TWC denies the remaining

allegations made in paragraph 6 of the Complaint.  Defendant Time Warner Entertainment-Advance/Newhouse Partnership's principle place of business is 290 Harbor Drive, Stamford, Connecticut 06902.

7.  TWC admits that Time Warner Cable Inc. is the direct or indirect parent of each of Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse Partnership.  TWC admits that through one or more of its subsidiaries, affiliates, partners, or other related parties, Time Warner Cable Inc. owns and/or operates cable systems throughout the United States and in the State of Texas.  TWC admits that Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse Partnership each directly or through one or more subsidiaries, affiliates, partners, or other related parties own and operate cable systems in Texas and elsewhere.  TWC denies the remaining allegations of paragraph 7 of the Complaint.  TWC is not infringing, and has not in the past infringed, any of the patents identified in the Complaint.

8.  Paragraph 8 of the Complaint sets forth legal conclusions for which no response is required.  To the extent paragraph 8 contains factual allegations to which a response is required, those allegations are denied.

9.  TWC admits the allegations of paragraph 9 of the Complaint that this Court has personal jurisdiction over all named Defendants, and that Defendants, through one or more subsidiaries, affiliates, partners, or other related parties, have conducted and continue to conduct business in the State of Texas.  TWC denies the remaining allegations

of paragraph 9 of the Complaint.  TWC is not infringing, and has not in the past infringed, any of the patents identified in the Complaint.

10.  Paragraph 10 of the Complaint sets forth legal conclusions for which no response is required.  To the extent paragraph 10 contains factual allegations to which a response is required, those allegations are denied.

## COUNT I

11.  TWC restates and realleges its responses to paragraphs 1-10 of the Complaint and incorporates them herein by reference.

12.  TWC admits that a copy of U.S. Patent No. 5,008,903 (the "'903 patent") was attached to the Complaint as Exhibit A when served.  TWC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 12 of the Complaint, and on that basis denies those allegations.

13.  TWC admits that the '903 patent was issued by the United States Patent and Trademark Office ("the PTO") on April 16, 1991.  TWC denies the remaining allegations made in paragraph 13 of the Complaint.

14.  TWC denies the allegations of paragraph 14 of the Complaint.

15.  TWC denies the allegations of paragraph 15 of the Complaint.

## COUNT II

16.  TWC restates and realleges its responses to paragraphs 1-10 of the Complaint and incorporates them herein by reference.

17.  TWC admits that a copy of U.S. Patent No. 5,710,761 (the "'761 patent") was attached to the Complaint as Exhibit B when served.  TWC lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 17 of the Complaint, and on that basis denies those allegations.

18.  TWC admits that the '761 patent was issued by the PTO on January 20, 1998.  TWC denies the remaining allegations made in paragraph 18 of the Complaint.

19.  TWC denies the allegations of paragraph 19 of the Complaint.

20.  TWC denies the allegations of paragraph 20 of the Complaint.

## COUNT III

21.  TWC restates and realleges its responses to paragraphs 1-10 of the Complaint and incorporates them herein by reference.

22.  TWC admits that a copy of U.S. Patent No. 5,778,234 (the "'234 patent") was attached to the Complaint as Exhibit C when served.  TWC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 22 of the Complaint, and on that basis denies those allegations.

23.  TWC admits that the '234 patent was issued by the PTO on July 7, 1998.  TWC denies the remaining allegations made in paragraph 23 of the Complaint.

24.  TWC denies the allegations of paragraph 24 of the Complaint.

25.  TWC denies the allegations of paragraph 25 of the Complaint.

## COUNT IV

26.  TWC restates and realleges its responses to paragraphs 1-10 of the Complaint and incorporates them herein by reference.

27.  TWC admits that a copy of U.S. Patent No. 6,131,159 (the "'159 patent") was attached to the Complaint as Exhibit D when served.  TWC lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 27 of the Complaint, and on that basis denies those allegations.

28.  TWC admits that the '159 patent was issued by the PTO on October 10, 2000.  TWC denies the remaining allegations made in paragraph 28 of the Complaint.

29.  TWC denies the allegations of paragraph 29 of the Complaint.

30.  TWC denies the allegations of paragraph 30 of the Complaint.

## COUNT V

31.  TWC restates and realleges its responses to paragraphs 1-10 of the Complaint and incorporates them herein by reference.

32.  TWC admits that a copy of U.S. Patent No. 6,950,444 (the "'444 patent") was attached to the Complaint as Exhibit E when served.  TWC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 32 of the Complaint, and on that basis denies those allegations.

33.  TWC admits that the '444 patent was issued by the PTO on September 27, 2005.  TWC denies the remaining allegations made in paragraph 33 of the Complaint.

34.  TWC denies the allegations of paragraph 34 of the Complaint.

35.  TWC denies the allegations of paragraph 35 of the Complaint.

## PRAYER FOR RELIEF

TWC denies that Plaintiff is entitled to the relief requested in its prayer, and to the extent that such prayer contains factual allegations, such allegations are denied.

## AFFIRMATIVE AND OTHER DEFENSES

TWC sets forth the following affirmative and other defenses.  TWC does not intend hereby to assume the burden of proof with respect to those matters as to which, pursuant to law, Plaintiff Rembrandt bears the burden.

## FIRST DEFENSE

36.  Each of the claims of the '903, '761, '234, '159 and '444 patents are invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## SECOND DEFENSE

37.  TWC does not manufacture, use, offer for sale, sell, or import into the United States any product or method that infringes any claim of the  '903, '761, '234, '159 or '444 patents and it has not done so in the past.  TWC also does not contribute to or induce infringement of the '903, '761, '234, '159 or '444 patents and it has not done so in the past.  TWC does not infringe, and has not in the past infringed, either directly or indirectly, the '903, '761, '234, '159 or '444 patents.

## THIRD DEFENSE

38.  The Complaint's claims are barred by the doctrine of estoppel.

## FOURTH DEFENSE

39.  The Complaint's claims are barred by the doctrine of laches.

## COUNTERCLAIMS

## PARTIES

1.  Counterclaimant Time Warner Cable Inc. is a Delaware corporation having its corporate headquarters at 290 Harbor Drive, Stamford, CT 06902.

2.    Counterclaimant Time Warner Cable LLC is a Delaware limited liability company having its corporate headquarters at 290 Harbor Drive, Stamford, CT 06902.

3.    Counterclaimant Time Warner New York Cable LLC is a Delaware limited liability company having its corporate headquarters at 290 Harbor Drive, Stamford, CT 06902.

4.    Counterclaimant Time Warner Entertainment Company, L.P. is a Delaware limited partnership having its corporate headquarters at 290 Harbor Drive, Stamford, CT 06902.

5.    Counterclaimant Time Warner Entertainment-Advance/Newhouse Partnership is a New York partnership having its corporate headquarters at 290 Harbor Drive, Stamford, CT 06902.

6.    Counterclaim defendant Rembrandt Technologies, LP ("Rembrandt") purports to be a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, PA 19004.

## JURISDICTION AND VENUE

7.    These counterclaims seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.    This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

9.    Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

10. A justifiable controversy exists between Counterclaimants and Rembrandt with respect to the invalidity and non-infringement of the claims of U.S. Patent Nos. 5,008,903 (the "'903 patent"), 5,710,761 (the "'761 patent"), 5,778,234 (the "'234 patent"), 6,131,159 (the "'159 patent") and 6,950,444 (the "'444 patent").

## FIRST COUNTERCLAIM

11. Counterclaimants hereby repeat and reiterate the allegations made in paragraphs 1-10 of these Counterclaims as if fully set forth herein.

12. Each of the claims of the '903, '761, '234, '159 and '444 patents is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## SECOND COUNTERCLAIM

13. Counterclaimants hereby repeat and reiterate the allegations made in paragraphs 1-12 of these Counterclaims as if fully set forth herein.

14. Counterclaimants do not manufacture, use, offer for sale, sell, or import into the United States any product or method that infringes any claim of the '903, '761, '234, '159 or '444 patents and Counterclaimants have not done so in the past. Counterclaimants also do not contribute to or induce infringement of the '903, '761, '234, '159 or '444 patents and Counterclaimants have not done so in the past. Counterclaimants do not infringe, and have not in the past infringed, either directly or indirectly, the '903, '761, '234, '159 or '444 patents.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants pray that:

a)  The Court dismiss all of Rembrandt's claims against Counterclaimants with prejudice;

b)  The Court declare invalid each of the claims of the '903, '761, '234, '159 and '444 patents;

c)  The Court declare that Counterclaimants do not manufacture, use, offer for sale, sell, or import into the United States any product or method that infringes any of the claims of the '903, '761, '234, '159 or '444 patents and have not done so in the past, and that Counterclaimants therefore and otherwise do not directly infringe the '903, '761, '234, '159 or '444 patents and have not done so in the past;

d)  The Court declare that Counterclaimants do not contribute to or induce infringement of the '903, '761, '234, '159 or '444 patents and Counterclaimants have not done so in the past, and that Counterclaimants therefore and otherwise do not indirectly infringe the '903, '761, '234, '159 or '444 patents and have not done so in the past;

e)  Counterclaimants be awarded their costs in this action;

f)  Counterclaimants be awarded their attorneys fees pursuant to 35 U.S.C. § 285; and

g)  Counterclaimants be awarded such other and further relief as this Court deems is just and proper.

Respectfully submitted,


By:    /s/ Allen F. Gardner
        Michael E. Jones
        Texas State Bar No. 10929400
        mikejones@potterminton.com
        Allen F. Gardner
        State Bar No. 24043679
        allengardner@potterminton.com
        **POTTER MINTON, P.C.**
        110 North College
        500 Plaza Tower
        Tyler, Texas 75702
        Telephone: (903) 597-8311
        Fax: (903) 593-0846

*Of Counsel:*

David S. Benyacar
Daniel L. Reisner
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY  10022-3598
(212) 836-8000


        *Attorneys for Time Warner Cable, Inc., Time Warner Cable LLC, Time Warner New York Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership*


Dated: May 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 16th day of May, 2007.  Any other counsel of record will be served by first class U.S. mail on this same date.


/s/ Allen F. Gardner

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

REMBRANDT TECHNOLOGIES, LP,

         Plaintiff,

   v.                            CASE NO. 2:06-CV-369 [TJW/CE]

TIME WARNER CABLE INC., TIME
WARNER CABLE LLC, TIME
WARNER NY CABLE LLC, TIME WARNER
ENTERTAINMENT COMPANY, L.P., and
TIME WARNER ENTERTAINMENT-
ADVANCE/NEWHOUSE PARTNERSHIP,

         Defendants.

## **DEFENDANTS' RULE 7.1 DISCLOSURE STATEMENT**

Pursuant to FRCP Rule 7.1, defendants state the following:

1.     Time Warner Cable Inc. states that it is a publicly held company. Time Warner Inc., a publicly held company, indirectly owns more than 10% of Time Warner Cable Inc.'s stock.

2.     Time Warner Cable LLC states that it is a Delaware limited liability company, which is owned by Time Warner Cable Inc. Time Warner Cable LLC is owned indirectly by Time Warner Inc. Time Warner Cable Inc. and Time Warner Inc. are publicly held companies.

3.     Time Warner NY Cable LLC states that it is a Delaware limited liability company, which is owned by TW NY Cable Holding Inc. Time Warner NY Cable LLC is owned indirectly by Time Warner Cable Inc. and Time Warner Inc., which are publicly held companies.

4.     Time Warner Entertainment Company, L.P. states that it is a Delaware limited partnership which is owned by Time Warner NY Cable LLC and, through indirect subsidiaries,

by Time Warner Cable LLC.  Time Warner Entertainment Company, L.P. is owned indirectly by

Time Warner Cable Inc. and Time Warner Inc., which are publicly held companies.

     5.     Time Warner Entertainment-Advance/Newhouse Partnership states that it is a

New York partnership which is owned by Time Warner NY Cable LLC and, through indirect

subsidiaries, by Time Warner Entertainment Company, L.P.  Time Warner Entertainment-

Advance/Newhouse Partnership is owned indirectly by Time Warner Cable Inc. and Time

Warner Inc., which are publicly held companies.

Date: May 16, 2007         By:    /s/ Allen F. Gardner
                          Michael E. Jones
                          Texas State Bar No. 10929400
                          mikejones@potterminton.com
                          Allen F. Gardner
                          State Bar No. 24043679
                          allengardner@potterminton.com
                          **POTTER MINTON, P.C.**
                          110 North College
                          500 Plaza Tower
                          Tyler, Texas 75702
                          Telephone: (903) 597-8311
                          Fax: (903) 593-0846

*Of Counsel:*

David S. Benyacar
Daniel L. Reisner
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY  10022-3598
(212) 836-8000

                          *Attorneys for Time Warner Cable, Inc., Time*
                          *Warner Cable LLC, Time Warner New York Cable*
                          *LLC, Time Warner Entertainment Company, L.P.,*
                          *Time Warner Entertainment-Advance/Newhouse*
                          *Partnership*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 16th day of May, 2007.  Any other counsel of record will be served by first class U.S. mail on this same date.


*/s/ Allen F. Gardner*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:06-CV-369-TJW-CE |
| v. | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| TIME WARNER CABLE INC., TIME | ) | |
| WARNER CABLE LLC, TIME | ) | |
| WARNER NEW YORK CABLE LLC, TIME | ) | |
| WARNER ENTERTAINMENT | ) | |
| COMPANY, LP, and TIME WARNER | ) | |
| ENTERTAINMENT-ADVANCE/NEWHOUSE | ) | |
| PARTNERSHIP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S REPLY TO COUNTERCLAIMS IN
## TWC'S ANSWER TO REMBRANDT'S FIRST AMENDED COMPLAINT

Plaintiff Rembrandt Technologies, LP ("Rembrandt") respectfully submits this Reply to

the counterclaims asserted in TWC's Answer to Rembrandt's First Amended Complaint filed

May 16, 2007.

### PARTIES

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

**JURISDICTION AND VENUE**

7.     Rembrandt admits that Defendants purport through their counterclaims to seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, but denies that Defendants are entitled to any relief.

8.     Admitted.

9.     Admitted.

10.    Admitted.

**FIRST COUNTERCLAIM**

11.    Rembrandt repeats and re-alleges its response to paragraphs 1-10 of the Counterclaims, and further incorporates by reference its allegations in its First Amended Complaint filed April 26, 2007.

12.    Denied.

**SECOND COUNTERCLAIM**

13.    Rembrandt repeats and re-alleges its response to paragraphs 1-12 of the Counterclaims, and further incorporates by reference its allegations in its First Amended Complaint filed April 26, 2007.

14.    Denied.

**PRAYER FOR RELIEF**

WHEREFORE, Rembrandt prays that the Court deny in all respects Defendants' prayer for relief, that the Court enter judgment against Defendants on all of their claims, and that the Court enter on behalf of Rembrandt:

(a)     a judgment dismissing Defendants' counterclaims with prejudice;

(b)     a judgment that the Rembrandt patents-in-suit are valid and enforceable;

758455v1.009758

(c)     a judgment that Defendants have infringed the Rembrandt patents-in-suit directly and/or indirectly by way of inducing infringement and/or contributing to the infringement of those patents;

(d)     a permanent injunction enjoining and restraining Defendants and their agents, servants, employees, affiliates, divisions and subsidiaries, and those in association therewith, from making, using, offering to sell, selling, and importing into the United States any product, or using, offering to sell, or selling any service, which falls within the scope of any claim of the patents-in-suit;

(e)     a judgment and order requiring Defendants to pay Rembrandt damages under 35 U.S.C. § 284, including treble damages for willful infringement as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of final judgment with an accounting as needed;

(f)     a judgment and order requiring Defendants to pay Rembrandt pre-judgment and post-judgment interest on the damages awarded;

(g)     a judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorney's fees as provided by 35 U.S.C. § 285; and

(h)     such other and further relief as the Court deems just and equitable.

DATED:  May 23, 2007.                    Respectfully submitted,


                                         /s/ Max L. Tribble, Jr._____
                                         Max L. Tribble, Jr.
                                         State Bar No. 20213950
                                         1000 Louisiana Street, Suite 5100

758455v1.009758

Houston, Texas 77002-5096
Telephone:  (713) 651-9366
E-mail: mtribbble@susmangodfrey.com

Attorney-in-Charge for Rembrandt
Technologies, LP

OF COUNSEL:

Brooke A.M. Taylor
State Bar No. 33190 (Washington)
E-mail:  btaylor@susmangodfrey.com
Matthew R. Berry
State Bar No. 37364 (Washington)
E-mail:  mberry@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington  98101-3000
Telephone:  (206) 516-3880
Fax:  (206) 516-3883

Tibor L. Nagy
State Bar No. 24041562
E-mail:  tnagy@susmangodfrey.com
SUSMAN GODFREY L.L.P.
590 Madison Avenue
New York, NY  10022-8521
Telephone:  (212) 336-8330
Fax:  (212) 516-3883

758455v1.009758

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means. I further served the foregoing document by e-mail on all counsel of record.

/s/ Max L. Tribble, Jr.
Max L. Tribble, Jr.

5

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-369-TJW-CE |
| | ) | |
| TIME WARNER CABLE INC., TIME | ) | |
| WARNER CABLE LLC, TIME | ) | |
| WARNER NEW YORK CABLE LLC, TIME | ) | |
| WARNER ENTERTAINMENT | ) | |
| COMPANY, LP, and TIME WARNER | ) | |
| ENTERTAINMENT-ADVANCE/NEWHOUSE | ) | |
| PARTNERSHIP | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-506-TJW-CE |
| | ) | |
| COMCAST CORPORATION, COMCAST | ) | |
| CABLE COMMUNICATIONS, LLC | ) | |
| COMCAST OF PLANO, LP | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:06-CV-507-TJW |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| CHARTER COMMUNICATIONS | ) | |
| OPERATING, LLC, COXCOM INC., CSC | ) | |
| HOLDINGS, INC., and CABLEVISION | ) | |
| SYSTEMS CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

**PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S NOTICE OF DISCLOSURE**

Plaintiff Rembrandt Technologies, LP hereby files this Notice to inform the Court that on

May 18, 2007, Rembrandt served its Disclosure pursuant to Paragraph 3(c) of the Discovery

Order on counsel for Defendants in the above-captioned cases.

Dated: May 23, 2007

Respectfully submitted,

/s/ Brooke A. M. Taylor
Max L. Tribble, Jr.
Lead Attorney
State Bar No. 20213950
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
E-mail: mtribbble@susmangodfrey.com

Brooke A.M. Taylor
State Bar No. 33190 (Washington)
E-mail: btaylor@susmangodfrey.com
Edgar Sargent
State Bar No. 28283 (Washington)
E-mail: esargent@susmangodfrey.com
Matthew R. Berry
State Bar No. 37364 (Washington)
E-mail: mberry@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Fax: (206) 516-3883

Tibor L. Nagy
State Bar No. 24041562
E-mail: tnagy@susmangodfrey.com
SUSMAN GODFREY L.L.P.
590 Madison Avenue
New York, NY 10022-8521
Telephone: (212) 336-8330
Fax: (212) 516-3883

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on May 23, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

                            <u>/s/ Brooke A. M. Taylor</u>
                            Brooke A. M. Taylor

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC., ET AL. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC., ET AL | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

**JOINT MOTION
TO AMEND DOCKET CONTROL ORDER
TO MOVE THE DATE FOR EXCHANGING PRIVILEGE LOGS**

The Docket Control Order in each of the above styled cases is the same. Currently, the

Docket Control Orders require that the parties exchange privilege logs on June 4, 2007, but not

produce documents until June 11, 2007. The parties in each case jointly move the Court to

1

759965v1/9758

amend the Docket Control Order in each case to move the date for exchanging privilege logs

from June 4 to July 10, 2007. Moving the date for the parties to exchange privilege logs will not

affect the Markman hearing dates or the initial trial setting.

DATED: June 4, 2007                     Respectfully submitted,

                                        /s/ Brooke A.M. Taylor
                                        Max L. Tribble, Jr.
                                        State Bar No. 20213950
                                        Tibor L. Nagy
                                        State Bar 24041562
                                        Email: mtribble@susmangodfrey.com
                                        Email: tnagy@susmangodfrey.com
                                        **SUSMAN GODFREY L.L.P.**
                                        1000 Louisiana Street, Suite 5100
                                        Houston, TX 77002
                                        Tel: 713-651-9366
                                        Fax: 713-654-6666

                                        **OF COUNSEL:**
                                        Edgar Sargent
                                        WA State Bar No. 28283
                                        Email: esargent@susmangodfrey.com
                                        **SUSMAN GODFREY L.L.P.**
                                        1201 Third Avenue, Suite 3800
                                        Seattle, WA 98101-3000
                                        Tel: 206-516-3880
                                        Fax: 206-516-3883

                                        Brooke A.M. Taylor
                                        WA State Bar No. 33190
                                        Email: btaylor@susmangodfrey.com
                                        **SUSMAN GODFREY L.L.P.**
                                        1201 Third Avenue, Suite 3800
                                        Seattle, WA 98101-3000
                                        Tel: 206-516-3880
                                        Fax: 206-516-3883

759965v1/9758

Robert M. Parker
State Bar No. 15498000
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Calvin Capshaw
State Bar No. 03783900
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
aspangler@mailbmc.com

Franklin Jones, Jr.
State Bar No. 00000055
**JONES & JONES, INC.**
201 W. Houston Street
P. O. Drawer 1249
Marshall, TX  75670
Telephone:  903-938-4395
Telecopier:  903-938-3360
maizieh@millerfirm.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

<u>/s/ Michael E. Jones</u>
Michael E. Jones
State Bar No. 10929400
Diane DeVasto
**POTTER MINTON, P.C.**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
Telephone:  (903) 597-8311
Telecopier:  (903) 593-0846
mikejones@potterminton.com

David S. Benyacar
Michael A. Rogoloff
**KAYE SCHOLER**
425 Park Avenue
New York, NY 10022
Tel: 212-836-8000
Fax: 212-836-8689
dbenyacar@kayescholer.com

**ATTORNEYS FOR DEFENDANT
TIME WARNER CABLE INC.**

4

<u>/s/ Jennifer Haltom Doan</u>
Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
**HALTOM & DOAN, LLP**
6500 N. Summerhill Road, Suite 1A
P. O. Box 6227
Texarkana, TX 75505-6227
Tel: 903-255-1000
Fax: 903-255-0800

Brian Ferrall
Leo Lam
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 9411-1704
Tel: 415-676-2235
Fax: 415-397-7188

**ATTORNEYS FOR DEFENDANTS**
**COMCAST CORPORATION,**
**COMCAST CABLE,**
**COMMUNICATIONS, LLC, and**
**COMCAST OF PLANO, LP**

759965v1/9758

/s/ Michael E. Jones
Bradford P. Lyerla, Attorney in Charge
blyerla@marshallip.com
Kevin D. Hogg
khogg@marshallip.com
William J. Kramer
wkramer@marhsllip.com
Paul B. Stephens
pstephens@marshallip.com
**MARSHALL, GERSTEIN & BORUN LLP**
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: 312-474-6300
Fax: 312-474-0448

Michael E. Jones
State Bar No. 10929400
**POTTER MINTON, PC**
110 North College
500 Plaza Tower
Tyler, TX 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANTS
CHARTER COMMUNICATIONS, INC.
CHARTER COMMUNICATIONS
OPERATING, LLC**

759965v1/9758

/s/ Michael E. Jones
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
**KILPATRICK STOCKTON LLP**
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309-4530
Tel: 404-815-6214
Fax: 404-815-6555

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
**POTTER MINTON, P.C.**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, TX 75710
Tel: 903-597-8311
Fax: 903-593-0846

**ATTORNEYS FOR DEFENDANT
COXCOM, INC.**

759965v1/9758

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 4th day of June, 2007.

/s/ Brooke A.M. Taylor
Brooke A.M. Taylor

759965v1/9758

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-223(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-224(TJW) |
| | § | |
| TIME WARNER CABLE, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-369(TJW) |
| | § | |
| TIME WARNER CABLE, INC., ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-506(TJW) |
| | § | |
| COMCAST CORPORATION, ET AL. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| V. | § | CIVIL NO. 2:06-CV-507(TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

**ORDER GRANTING JOINT MOTION
TO AMEND DOCKET CONTROL ORDER
TO MOVE THE DATE FOR EXCHANGING PRIVILEGE LOGS**

The parties in each of the above styled cases have moved the Court to amend the Docket

Control Order in each case and change the date for exchanging privilege logs from June 4, 2007

1

to July 10, 2007. The Court finds good cause for amending the Docket Control Order in this respect. The Court, therefore,

ORDERS that the Docket Control Order in each case be and is hereby amended to move the date for the parties to exchange privilege logs from the current date of June 4, 2007 to July 10, 2007.

SIGNED this 5th day of June, 2007.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
|     Plaintiff, | ) | Case No. 2:06-CV-369-TJW-CE |
| | ) | |
| v. | ) | JURY TRIAL REQUESTED |
| | ) | |
| TIME WARNER CABLE, INC., ET AL. | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
|     Plaintiff, | ) | Case No. 2:06-CV-506-TJW-CE |
| | ) | |
| v. | ) | JURY TRIAL REQUESTED |
| | ) | |
| COMCAST CORPORATION, ET AL. | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
|     Plaintiff, | ) | Case No. 2:06-CV-507-TJW-CE |
| | ) | |
| v. | ) | JURY TRIAL REQUESTED |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| ET AL. | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S NOTICE OF DISCLOSURE

Plaintiff Rembrandt Technologies, L.P. hereby files this Notice to inform the Court that on June 11, 2007, it complied with Paragraph 3(b) of the Discovery Order with respect to Defendants in the above-captioned cases.

Dated: June 12, 2007                      Respectfully Submitted,

                                         /s/ Matthew R. Berry
                                         Max L. Tribble, Jr.
                                         Lead Attorney
                                         State Bar No. 20213950
                                         1000 Louisiana Street, Suite 5100
                                         Houston, Texas 77002-5096
                                         Telephone: (713) 651-9366
                                         Fax: (713) 654-6666
                                         E-mail: mtribbble@susmangodfrey.com

                                         Brooke A.M. Taylor
                                         State Bar No. 33190 (Washington)
                                         E-mail: btaylor@susmangodfrey.com
                                         Edgar Sargent
                                         State Bar No. 28283 (Washington)
                                         E-mail: esargent@susmangodfrey.com
                                         Matthew R. Berry
                                         State Bar No. 37364 (Washington)
                                         E-mail: mberry@susmangodfrey.com
                                         SUSMAN GODFREY L.L.P.
                                         1201 Third Avenue, Suite 3800
                                         Seattle, Washington 98101-3000
                                         Telephone: (206) 516-3880
                                         Fax: (206) 516-3883

                                         Tibor L. Nagy
                                         State Bar No. 24041562
                                         E-mail: tnagy@susmangodfrey.com
                                         SUSMAN GODFREY L.L.P.
                                         590 Madison Avenue
                                         New York, NY 10022-8521
                                         Telephone: (212) 336-8330
                                         Fax: (212) 516-3883

                                         Charles Ainsworth

2

charley@pbatyler.com
Robert Christopher Bunt
rcbunt@pbatyler.com
Robert M Parker
rmparker@pbatyler.com
PARKER BUNT & AINSWORTH
100 E Ferguson, Suite 1114
Tyler, TX 75702
Telephone (903) 531-3535
Facsimile (903) 533-9687

Sidney Calvin Capshaw, III
ccapshaw@mailbmc.com
Elizabeth L DeRieux
ederieux@mailbmc.com
Andrew Wesley Spangler
aspangler@mailbmc.com
BROWN MCCARROLL- Longview
1127 Judson Rd., Ste 220
PO Box 3999
Longview, TX 75606-3999
Telephone (903) 236-9800
Facsimile (903) 236-8787

Otis W Carroll, Jr
Fedserv@icklaw.com
James Patrick Kelley
patkelley@icklaw.com
Collin Michael Maloney
fedserv@icklaw.com
IRELAND CARROLL & KELLEY
6101 S Broadway, Suite 500
Tyler, TX 75703
Telephone (903) 561-1600
Facsimile (903) 581-1071

Franklin Jones, Jr
JONES & JONES - Marshall
201 W Houston St
PO Drawer 1249
Marshall, TX 75670
903/938-4395
9039383360 (fax)
maizieh@millerfirm.com
Fax:  (212) 516-3883

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 12th day of June, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on this same date.

/s/   Matthew R. Berry
Matthew R. Berry

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-cv-369** |
| | § | |
| **TIME WARNER CABLE, INC., TIME** | § | |
| **WARNER CABLE LLC, TIME** | § | **(TJW/CE)** |
| **WARNER NEW YORK CABLE LLC,** | § | |
| **TIME WARNER ENTERTAINMENT** | § | |
| **COMPANY, LP, and TIME WARNER** | § | |
| **ENTERTAINMENT-ADVANCE/** | § | |
| **NEWHOUSE PARTNERSHIP** | § | |
| | § | |
| **Defendants.** | § | |

## <u>DEFENDANTS' NOTICE OF DISCLOSURES</u>

Defendant Time Warner Cable, Inc., Time Warner Cable LLC, Time Warner New York

Cable LLC, Time Warner Entertainment Company, LP and Time Warner Entertainment-

Advance/Newhouse Partnership ("the Time Warner Defendants") respectfully notify the

Court and all counsel herein that pursuant to P.R. 3-3, P.R. 3-4 and the Court's Docket

Control Order dated April 19, 2007, their Invalidity Contentions and accompanying

documents were served on June 11, 2007.  Defendants also notify the Court and all

counsel herein that on June 11, 2007 they provided applicable information as previously

discussed between the parties and as outlined in Paragraph 3 of the Court's Discovery

Order.  The Time Warner Defendants, due to the substantial amount of production

required and anticipated, are continuing to produce relevant documents post-June 11,

2007 as reflected in the attached correspondence, which is hereby incorporated by

reference.

{A48\7477\0004\W0328590.1 }

Dated: June 14, 2007                    Respectfully Submitted,


                                        /s/ Allen F. Gardner
                                        Michael E. Jones
                                        State Bar No. 10929400
                                        mikejones@potterminton.com
                                        Allen F. Gardner
                                        State Bar No. 24043679
                                        allengardner@potterminton.com
                                        POTTER MINTON, PC
                                        110 North College
                                        500 Plaza Tower
                                        Tyler, TX 75702
                                        Tel: 903-597-8311
                                        Fax: 903-593-0846

                                        ATTORNEYS FOR TIME WARNER
                                        CABLE, INC., TIME WARNER CABLE
                                        LLC, TIME WARNER NEW YORK
                                        CABLE LLC, TIME WARNER
                                        ENTERTAINMENT COMPANY, L.P.,
                                        TIME WARNER ENTERTAINMENT-
                                        ADVANCE/NEWHOUSE
                                        PARTNERSHIP


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the

Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 14th day of June, 2007.

Any other counsel of record will be served by First Class U.S. Mail on this same date.


                    /s/ Allen F. Gardner

# KAYE SCHOLER LLP

Daniel L. Reisner
212 836-8132
Fax 212 836-6432
dreisner@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

June 11, 2007

**VIA EMAIL AND FEDERAL EXPRESS**

Brooke A.M. Taylor
Susman Godfrey L.L.P.
Suite 3800
1201 Third Avenue
Seattle, Washington 98101-3000

> Re: *Rembrandt Tech., LP v. Time Warner Cable Inc., et al.*, Case No. 2:06-cv-369 [TJW]

Dear Brooke:

I have enclosed discs containing Defendants' Invalidity Contentions and prior art documents (bates numbered PARII 000001 - 015384) pursuant to P.R. 3-3 and 3-4(b) on behalf of all defendants in this action.

In addition, I have enclosed a copy of Time Warner Cable documents bates numbered TWC 00000001 - 00044154 pursuant to P.R. 3-4(a) and the initial disclosure requirements marked according to the protective order.

Because of the volume of documents being produced, Time Warner Cable will be producing additional documents later this week. Further documents will be produced on a rolling basis as they are identified. In addition, some quantity of documents have been collected and reviewed but are subject to third party confidentiality obligations. Many of these documents are being produced herein following notification to the third parties, however Time Warner Cable has not completed this process for many other third parties. Although there is a protective order in place, Time Warner Cable needs to contact these parties before producing any such documents.

Please let us know if you need anything else or if you have any questions, comments, or concerns about the above or the attached.

Sincerely,

Daniel L. Reisner

w/ enc.

31489183.WPD

Appendix K

Revised 1/24/02

FILED CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION
APPLICATION TO APPEAR PRO HAC VICE

2007 JUN 15 PM 3: 56

TEXAS EASTERN

BY_____

1.This application is being made for the following: Case #_____  2:06-cv-369 (TJW)

Style: Rembrandt Technologies, LP v. Time Warner Cable, Inc.

2. Applicant is representing the following party/ies: __Time Warner entities__

3.Applicant was admitted to practice in __NY__ (state) on __5/95__ (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:

____New York, S.D.N.Y., E.D.N.Y., Federal Circuit____

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, __Daniel Reisner__ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date 6/13/07          Signature _Daniel Reisner_

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### APPLICATION TO APPEAR PRO HAC VICE (Continued)

Name (please print)  __Daniel Reisner__

State Bar Number __2685543  (NYS Atty. Registration No.)__

Firm Name:  ___KAYE SCHOLER LLP___

Address/P.O. Box:  __425 Park Avenue__

City/State/Zip:  __New York, NY  10022__

Telephone #:  __212-836-8132__

Fax #:  __212-836-6432__

E-mail Address: __dreisner@kayescholer.com__

Secondary E-Mail Address: _____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above.  This

application has been approved for the court on: _____

_____

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

Appendix K

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL  DIVISION
## APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case #  2:06-cv-369 (TJW)

Style:  Rembrandt Technologies, LP v. Time Warner Cable Inc.

2. Applicant is representing the following party/ies:  Time Warner entities

3. Applicant was admitted to practice in  NY  (state) on  5/1992  (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle).   If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you.  Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:
 New York, S.D.N.Y., and Federal Circuit Court of Appeals

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

 I,  David S. Benyacar  do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date  6/18/07  Signature

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### APPLICATION TO APPEAR PRO HAC VICE (Continued)

Name (please print) David S. Benyacar

State Bar Number  2481794 (NYS Attorney Registration No.)

Firm Name:    Kaye Scholer LLP

Address/P.O. Box:    425 Park Avenue

City/State/Zip:  New York, NY 10022

Telephone #:    (212) 836-7763

Fax #:  (212) 836-8689

E-mail Address:  dbenyacar@kayescholer.com

Secondary E-Mail Address:


Applicant is authorized to enter an appearance as counsel for the party/parties listed above.  This

application has been approved for the court on:    **6/19/07**

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas


By

Deputy Clerk

IN THE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CIVIL NO. 2:06-CV-223 (TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC. ET AL., | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CIVIL NO. 2:06-CV-224 (TJW) |
| | § | |
| TIME WARNER CABLE, INC., ET AL | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CIVIL NO. 2:06-CV-369 (TJW) |
| | § | |
| TIME WARNER CABLE, INC. | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CIVIL NO. 2:06-CV-506 (TJW) |
| | § | |
| COMCAST CORPORATION, ET AL | § | |
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CIVIL NO. 2:06-CV-507 (TJW) |
| | § | |
| CHARTER COMMUNICATIONS, INC., ET AL. | § | |

## NOTICE OF MULTI-DISTRICT LITIGATION DEVELOPMENTS PURSUANT TO LOCAL RULE CV-42

All Defendants in the above-referenced actions respectfully provide this notice of developments in related cases, specifically of action by the Judicial Panel on MultiDistrict Litigation.

Please see the attached Transfer Order issued by the Judicial Panel on MultiDistrict

Litigation (Exhibit A).  Please be advised that the Judicial Panel on MultiDistrict Litigation has transferred the above referenced actions to the District of Delaware, and with the consent of that Court, assigned such actions to the Honorable Gregory M. Sleet for coordinated or consolidated pretrial proceedings (Exhibit A).

Please also see the attached file-stamped copy indicating that the Transfer Order has been filed in the United States District Court for the District of Delaware (Exhibit A).

 Dated: June 21, 2007                    Respectfully submitted,


                                         */s/ Allen F. Gardner*
                                         Michael E. Jones
                                         Texas State Bar No. 10929400
                                         mikejones@potterminton.com
                                         Diane V. DeVasto
                                         Texas State Bar No. 05784100
                                         dianedevasto@potterminton.com
                                         Allen F. Gardner
                                         Texas State Bar No. 24043679
                                         allengardner@potterminton.com
                                         POTTER MINTON, P.C.
                                         110 North College
                                         500 Plaza Tower
                                         Tyler, Texas 75702
                                         Telephone:  (903) 597-8311
                                         Facsimile:   (903) 593-0846

                                         **ATTORNEYS FOR CHARTER
                                         COMMUNICATIONS, INC., LLP,
                                         CHARTER COMMUNICATIONS
                                         OPERATING, LLC, COXCOM, INC.,
                                         AND TIME WARNER CABLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 21, 2007.  Any other counsel of record will be served by first class on this same date.

/s/ Allen F. Gardner

JUN 2 0 2007

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FILED
EASTERN DISTRICT OF TEXAS
JUN 2 2007
DAVID J MALAND CLERK

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 18 2007

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

**DOCKET NO. 1848**

07-md-1848

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# IN RE REMBRANDT TECHNOLOGIES, LP, PATENT LITIGATION

### BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR.,[*] KATHRYN H. VRATIL DAVID R. HANSEN AND ANTHONY J. SCIRICA, JUDGES OF THE PANEL

## TRANSFER ORDER

This litigation presently consists of the fifteen actions listed on Schedule A and pending in three districts as follows: seven actions in the Eastern District of Texas, six actions in the District of Delaware, and two actions in the Southern District of New York. Before the Panel is a motion, brought by CoxCom, Inc., pursuant to 28 U.S.C. § 1407, seeking centralization of all actions in the District of Delaware. The owner of the patents, Rembrandt Technologies, LP (Rembrandt), opposes centralization but, alternatively, suggests transfer to the Eastern District of Texas, if the Panel deems centralization appropriate. All other responding defendants expressing a position regarding centralization[1] support centralization in the District of Delaware. Two groups of defendants propose alternative transferee fora – the Southern District of New York[2] or the Eastern District of Pennsylvania,[3] should the Panel decide against centralization in the District of Delaware.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization in the District of Delaware will

---

[*] Judge Miller took no part in the decision of this matter

[1] The following debtor defendants expressed no opinion regarding whether the actions should be centralized: Adelphia Communications Corp.; Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Co., LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Co. I, LLC; Parnassos Distribution Co. II, LLC; Parnassos Holdings, LLC; and Western NY Cablevision, LP (collectively the Adelphia defendants).

Nevertheless, if the Panel decides that centralization is appropriate, the Adelphia defendants support transfer to the District of Delaware as their primary preference, as do the following defendants: Cablevision Systems Corp. and CSC Holdings, Inc. (collectively Cablevision); Charter Communications, Inc., and Charter Communications Operating, LLC; Comcast Corp., Comcast Communications, LLP, and Comcast of Plano, LP; Sharp Corp. and Sharp Electronics Corp.; and ABC, Inc., CBS Corp., NBC Universal, Inc., Fox Broadcasting Co., and Fox Entertainment Group, Inc

[2] Alternatively supporting transfer to the Southern District of New York are the Adelphia defendants and Cablevision.

[3] Cablevision alternatively supports transfer to the Eastern District of Pennsylvania.

FILED
JUN 2 1 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE



- 2 -

serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The nine patents involved in these actions relate to the provision of high-speed internet and related services using certain cable modems and equipment and the receipt and transmission of certain digital broadcast signals. Each of the fifteen MDL-1848 actions involves allegations of infringement and/or invalidity of one or more of the patents; specifically, each action involves allegations that compliance with one of two technical standards relating to cable high-speed internet technology and digital broadcasting – respectively, the Data-Over-Cable Service Interface Specifications and the Advanced Television Systems Committee Digital Television Standard – infringes certain Rembrandt patents. All actions can thus be expected to share factual questions concerning such matters as the technology underlying the patents, prior art, claim construction and/or issues of infringement involving the patents. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

In opposing centralization, Rembrandt variously argues that inconsistent rulings are unlikely to arise in the actions, unique questions of fact relating to each patent will predominate over common factual questions among these actions, and that cooperation among the parties is a preferable alternative to centralization. We are not persuaded by these arguments. Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings in a streamlined manner to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands. The transferee court will be able to formulate a pretrial program that allows any unique discovery in these actions to proceed concurrently on separate tracks with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976). The Panel is aware that proceedings in the first-filed MDL-1848 action (*Comcast I*) are somewhat further advanced than those in the other actions. It may well be that *Comcast I*, or other MDL-1848 actions, may be ready for trial in advance of the remaining MDL-1848 actions. If such is the case, nothing in the nature of Section 1407 centralization will impede the transferee court, whenever it deems appropriate, from recommending Section 1407 remand. *See* Rule 7.6, R.P.J.P.M.L., 199 F.R.D. 425, 436-38 (2001); *In re Acacia Media Technologies Corp. Patent Litigation*, 360 F.Supp.2d 1337 (J.P.M.L. 2005).

We are persuaded that this litigation should be centralized in the District of Delaware. By centralizing this litigation before Judge Gregory M. Sleet, who presides over all Delaware actions, we are assigning this litigation to a seasoned jurist in a readily accessible district with the capacity to handle this litigation.

- 3 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the District of Delaware are transferred to the District of Delaware and, with the consent of that court, assigned to the Honorable Gregory M. Sleet for coordinated or consolidated pretrial proceedings.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# SCHEDULE A

MDL-1848 -- In re Rembrandt Technologies, LP, Patent Litigation

### District of Delaware

*Rembrandt Technologies, LP v. Cablevision Systems Corp., et al.*, C.A. No. 1:06-635
*Coxcom, Inc. v. Rembrandt Technologies, LP*, C.A. No. 1:06-721
*Rembrandt Technologies, LP v. CBS Corp.*, C.A. No. 1:06-727
*Rembrandt Technologies, LP v. NBC Universal, Inc.*, C.A. No. 1:06-729
*Rembrandt Technologies, LP v. ABC, Inc.*, C.A. No. 1:06-730
*Rembrandt Technologies, LP v. Fox Entertainment Group, Inc., et al.*, C.A. No. 1:06-731

### Southern District of New York

*Rembrandt Technologies, LP v. Adelphia Communications Corp., et al.*,
Bky. Advy. No. 1:06-1739
*Rembrandt Technologies, LP v. Adelphia Communications Corp.*, C.A. No. 1:07-214

### Eastern District of Texas

*Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:05-443
*Rembrandt Technologies, LP v. Sharp Corp., et al.*, C.A. No. 2:06-47
*Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, C.A. No. 2:06-223
*Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-224
*Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, C.A. No. 2:06-369
*Rembrandt Technologies, LP v. Comcast Corp., et al.*, C.A. No. 2:06-506
*Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, C.A. No. 2:06-507

CERTIFIED: 6/21/07
AS A TRUE COPY:
ATTEST:
PETER T. DALLEO, CLERK
BY _Bey Duy_
Deputy Clerk

OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
DISTRICT OF DELAWARE

Peter T. Dalleo
CLERK

LOCKBOX 18
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6170

June 21, 2007

David Maland
Clerk, U.S. District Court
United States District Court
211 West Ferguson Street
Room 106
Tyler, TX 75702

RE:   **In Re Rembrandt Technologies LP Patent Litigation- MDL 1848**
      CA 07-402 GMS (D/DE)
      CA 2:06-369 (ED/TX)

Dear Mr. Maland:

In accordance with 28 U.S.C. §1407, enclosed is a certified copy of the *Order of Transfer* issued by the Judicial Panel on Multidistrict Litigation which references the above-captioned case in your District. Kindly forward the complete original file, together with a certified copy of the docket sheet, to the District of Delaware at the following address:

Clerk, U.S. District Court
Federal Building, Lockbox 18
844 N. King Street
Wilmington, DE 19801

If your case file is maintained in electronic format in CM/ECF, please contact Elizabeth Dinan at 302-573-4539.

RECEIVED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 2 5 2007

DAVID J. MALAND, CLERK

Sincerely,

Peter T. Dalleo, Clerk

By: Elizabeth Dinan
Elizabeth Dinan
Deputy Clerk

Enc.
cc:   Jeffrey N. Luthi, Clerk of the Panel